UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KIMBERLY CONSALVO,

**COMPLAINT**

Plaintiff,

Civil Action No.

- against -

**JURY TRIAL DEMANDED
PURSUANT TO RULE 38(B)
OF THE FEDERAL RULES
OF CIVIL PROCEDURE**

FUCCILLO FORD OF NELLISTON, INC. d/b/a FUCCILLO
AUTOPLEX, BEN GREEN, Individually and as General
Manager of Fuccillo Ford of Nelliston, Inc., RICK BELL,
Individually and as a Finance Manager of Fuccillo Ford of
Nelliston, Inc., JAMES AGARD, Individually and as Finance
Manager of Fuccillo Ford of Nelliston, Inc., RICHARD
ARUINI, Individually and as an employee of Fuccillo Ford of
Nelliston, Inc., GAGE MOSS, Individually and as an employee
of Fuccillo Ford of Nelliston, Inc., AND CHRISTOPHER
PIERCE, Individually and as an employee of Fuccillo Ford of
Nelliston, Inc.,

Defendants.

---

Plaintiff, Kimberly Consalvo, by and through her attorneys, Hinman Straub P.C.,

complaining of Defendants, respectfully alleges as follows:

1. This is an action for employment discrimination brought to secure relief both

legal and equitable for (1) discrimination and harassment on the basis of sex and retaliation in

willful violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as codified at 42

U.S.C. §§ 2000e *et seq.*, and New York Executive Law §§ 296 and 297, also known as the New

York Human Rights Law.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction by virtue of 28 U.S.C. §§ 1331 and

1343(a)(3) and (4) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3.     Venue in this Court is proper under 28 U.S.C. § 1391(b)(1) and (2), in that one or more of defendants reside within the jurisdiction of the Northern District of New York and the unlawful employment practices alleged herein were committed in the Northern District of New York, more particularly in the County of Montgomery.

## PARTIES

4.     Plaintiff, Kimberly Consalvo ("Ms. Consalvo" or "Plaintiff"), is a resident of the County of Montgomery and submits herself to the jurisdiction of this Court.

5.     Defendant Fuccillo Ford of Nelliston, Inc., d/b/a Fuccillo Autoplex ("Fuccillo Ford of Nelliston") is a for-profit corporation duly incorporated and existing pursuant to the laws of the State of New York and authorized to do business within the State of New York since February 25, 2004, with its headquarters located in the County of Jefferson.

6.     Upon information and belief, Defendant Fuccillo Ford of Nelliston was, at the time of the actions giving rise to the instant action, Plaintiff's employer, and had supervisory authority over her.

7.     Upon information and belief, Defendant Ben Green, is a resident of the State of New York.

8.     Upon information and belief, Defendant Green, at the time of the actions giving rise to the instant action, had supervisory authority over Plaintiff and was the General Manager of Defendant Fuccillo Ford of Nelliston.

9.     Upon information and belief, Defendant Rick Bell, is a resident of the State of New York.

10.     Upon information and belief, Defendant Bell, at the time of the actions giving rise to the instant action, had supervisory authority over Plaintiff and was the Finance Manager

of Defendant Fuccillo Ford of Nelliston.

11. Upon information and belief, Defendant James Agard, is a resident of the County of Montgomery.

12. Upon information and belief, Defendant Agard, at the time of the actions giving rise to the instant action, had supervisory authority over Plaintiff and was the Finance Manager of Defendant Fuccillo Ford of Nelliston.

13. Upon information and belief, Defendant Richard Arduini, is a resident of the County of Herkimer.

14. Upon information and belief, Defendant Arduini, at the time of the actions giving rise to the instant action, was employed by Defendant Fuccillo Ford of Nelliston as a Sales Specialist.

15. Upon information and belief, Defendant Gage Moss, is a resident of the State of New York.

16. Upon information and belief, Defendant Moss, at the time of the actions giving rise to the instant action, was employed by Defendant Fuccillo Ford of Nelliston as a Sales Specialist.

17. Upon information and belief, Defendant Christopher Pierce, is a resident of the State of New York.

18. Upon information and belief, Defendant Pierce, at the time of the actions giving rise to the instant action, was employed by Defendant Fuccillo Ford of Nelliston as a Sales Specialist.

## ADMINSTRATIVE PROCEEDINGS

19. On or about October 7, 2015, Ms. Consalvo contacted the New York State

Division of Human Rights ("NYSDHR") and filed a complaint (Case No. 10177937), alleging sexual harassment, discrimination and retaliation in violation of Title VII of Civil rights Act of 1964 ("Title VII"), as codified in 42 U.S.C. §§ 2000e *et seq*.

20.     Simultaneously, an Equal Employment Opportunity Commission ("EEOC") Charge Number was issued (16G-2016-00152) for Plaintiff's verified complaint.

21.     On March 22, 2016, the NYSDHR issued a Determination After Investigation, finding that probable cause existed to believe that the Defendants engaged in the unlawful discriminatory practices alleged in Plaintiff's verified complaint. A copy of the Determination After Investigation is attached as Exhibit "A."

22.     On June 7, 2016, the Plaintiff, through her attorneys, submitted a request for dismissal to the NYSDHR pursuant to the NYSDHR Rules of Practice § 465.5(e)(2)(vi), as the Plaintiff desired to initiate an action in another forum based on the same grievances, and upon the belief that dismissal would not contravene the election of remedies provisions contained in § 297.9 or § 300 of the Executive Law.

23.     On June 24, 2016, the NYSDHR issued a Notice and Final Order of dismissal for administrative convenience pursuant to the Plaintiff's request.

24.     On July 7, 2016, the Plaintiff, through her attorneys, notified the EEOC of her intention to initiate an action in another forum based on the same grievances.

25.     On September 2, 2016, the EEOC mailed Ms. Consalvo the Notice of Right to Sue. A copy of the Notice of Right to Sue is attached hereto as Exhibit "B."

26.     Pursuant to the aforementioned Notice of Right to Sue issued by the EEOC, Ms. Consalvo timely commenced the instant action.

27.     As such, Ms. Consalvo has satisfied all private, administrative, and judicial

requirements prior to the institution of this action and has exhausted her administrative remedies.

## NATURE OF CLAIM

28.     This claim seeks restitution to Ms. Consalvo of all rights, privileges, benefits, and income that Ms. Consalvo would have been entitled to and/or would have received, but for Defendants' unlawful discriminatory, harassing, and retaliatory practices.

29.     This action further seeks compensation and punitive damages, as allowed by law, together with attorneys' fees, for the harm done to Ms. Consalvo in connection with her sexual harassment claims.

## FACTS

30.     Ms. Consalvo began her employment with defendant Fuccillo Ford of Nelliston on or about January 11, 2012, holding the position of Sales Consultant. Within a few months, Ms. Consalvo became a Sales Specialist.

31.     Fuccillo Ford of Nelliston is an automobile dealership located on New York State Highway 5 in Nelliston, New York, alongside Fuccillo Chevrolet of Nelliston, Inc. and Fuccillo Chrysler Jeep Dodge Ram of Nelliston, Inc.  The three dealerships are collectively referred to as the "Fuccillo Autoplex."

32.     Upon information and belief, Fuccillo Ford of Nelliston is affiliated with or a subsidiary of the Fuccillo Automotive Group, Inc. ("Fuccillo Automotive Group"), which operates approximately thirty automobile dealerships across the State of New York.

### a.  Plaintiff excels at her employment with Fuccillo Ford of Nelliston

33.     From August 2, 2012 through July 15, 2015, Ms. Consalvo was supervised by Defendant Ben Green, who served as the former General Manager of Fuccillo Ford of

Nelliston. Ms. Consalvo was also supervised by Ron Randle, Bob Kemmer, and Arthur Guiles who each served as the Sales Managers, and Rick Bell and James Agard, who both served as Finance Managers during Ms. Consalvo's employment.

34.     During Ms. Consalvo's employment with Defendant, she was rated as either a competent and/or exemplary employee.

35.     Ms. Consalvo received multiple accolades and achievements resulting from her exemplary performance in selling vehicles for Defendant Fuccillo Ford of Nelliston.

36.     For example, Fuccillo Ford of Nelliston awards a bonus to Sales Specialists for selling twenty-four (24) cars in their first three (3) months of employment. Ms. Consalvo sold over twenty-four cars in her first three months and received a monetary bonus from Fuccillo Ford of Nelliston for this accomplishment. Upon information and belief, Ms. Consalvo was the first person to achieve this sales goal in several years.

37.     Further, Ms. Consalvo was responsible for generating creative ways to increase public awareness of the Fuccillo Ford of Nelliston brand, such as a successful offsite automobile sale in Cobleskill, N.Y.

38.     In 2015, Ms. Consalvo was named one of the Top 20 Sales Associates for sales achieved in 2014 throughout the entire Fuccillo Automotive Group—including dealerships located in larger metropolitan areas such as Syracuse, Rochester, Albany, and Schenectady. A copy of the "Top 20" list of salespeople in the Fuccillo Automotive Group is annexed as Exhibit "C."

39.     Fuccillo Ford of Nelliston was located in a much smaller market in comparison to several other dealerships that were owned and operated by Fuccillo Automotive Group.

40.     On or about February 22, 2015 through February 28, 2015, Ms. Consalvo was

awarded an all-expense paid trip to Jamaica by Fuccillo Ford of Nelliston as congratulations for her outstanding sales performance in 2014. Ms. Consalvo was joined on the Jamaica trip by other top Sales Specialists within the Fuccillo Automotive Group.

41.     While Ms. Consalvo was on the Jamaica trip, she was personally acknowledged by Billy Fuccillo Sr., who at the time owned Fuccillo Automotive Group, when he remarked to a group of honorees that Ms. Consalvo won the trip to Jamaica from Nelliston and "if any of you can do that, let me know," or words that effect. Mr. Fuccillo's comment highlighted the extraordinariness of Ms. Consalvo's sales achievement given her performance in a smaller market.

42.     During her employment with Defendant Fuccillo, Ms. Consalvo never received any formal or informal discipline as a result of her performance and actions.

**b.   Plaintiff is subjected to severe and pervasive sexual harassment**

43.     During her employment with Defendant Fuccillo Ford of Nelliston, Ms. Consalvo was continuously subjected to and/or witnessed harassment, discrimination, and a hostile work environment due to the actions of the Defendants and other male employees with regard to her sex.

44.     The working environment at Fuccillo Ford of Nelliston was male-dominated and consisted of a culture that objectified women.

45.     During Ms. Consalvo's tenure, she was one of three females working in the Sales Department. Upon information and belief, the other two (2) female sales consultants worked for Fuccillo Ford of Nelliston for less than a month before ending their employment.

46.     Throughout Ms. Consalvo's employment, she was continuously subjected to severely sexually charged comments, unwelcomed advances, and lewd gestures made by male

7

co-workers and supervisors.

47.    In approximately May or June of 2012, Ms. Consalvo was discussing sales skills

and strategies with a co-worker, Christopher Pierce. Mr. Pierce asked about the "back room"

and whether there was any chance that Ms. Consalvo would like to go back and have sex with

him, or words to that effect. Ms. Consalvo was horrified at his suggestion and rebuked Mr.

Pierce's advances.

48.    Upon information and belief, Fuccillo Ford of Nelliston maintains an employee

handbook, which contains, among other things, a policy on providing equal employment

opportunities to all employees without regard to any status protected by law and a prohibition

on sexual harassment and discrimination for any reason. An excerpt of said policy is annexed

as Exhibit "D."

49.    Upon information and belief, Fuccillo Ford of Nelliston's

"Discrimination/Harassment Policy" provides, in relevant part:

> The Company prohibits discrimination, harassment, or retaliation
> on the basis of…gender…or any characteristic protected by
> applicable law. Any employee who engages in
> discrimination/harassment/retaliation will be subject to disciplinary
> action up to and including possible termination of employment.

> The Company maintains a "zero tolerance" policy with regard to
> sexual harassment. Any employee—regardless of level within the
> company—who engages in any activity that violates the
> Company's sexual harassment policy will be subject to disciplinary
> action up to and including the possible termination of employment.
> Any employee who feels he/she has been a victim of sexual
> harassment should report the incident to his/her immediate
> supervisor. The supervisor/manager who received the complaint is
> responsible to notify the Human Resources Department, which will
> then conduct a thorough and confidential investigation.

50.    Based upon the discriminatory and harassing actions of Mr. Pierce, Ms.

Consalvo immediately reported this conduct to her supervisor, Rick Bell, who was then the Finance Manager of Fuccillo Ford of Nelliston. Thus, Ms. Consalvo complied with the terms set forth in Fuccillo Ford of Nelliston's sexual harassment policy. In response, Mr. Bell told Ms. Consalvo that Mr. Pierce had merely made a joke and to forget it, or words to that effect. Ms. Consalvo did not understand Mr. Pierce's comments to not be a joke at the time he made the remarks and was extremely offended by his conduct. Upon information and belief, Mr. Bell did not report Mr. Pierce's conduct to Human Resources and no investigation into his behavior was conducted—in violation of Fuccillo Ford's sexual harassment policy.

51.     Shortly thereafter, in approximately May or June of 2012, Ms. Consalvo was in the Sales Office with Larry White, a Fuccillo Ford of Nelliston Salesperson, Mr. Bell, and Mr. Pierce.

52.     Mr. Pierce remarked that his back itched and asked Ms. Consalvo to come over and scratch it for him. Mr. Pierce did not ask any of the other men in the room to scratch his back. Mr. White indicated that he had enough of Mr. Pierce's behavior and left the office. Upon information and belief, Mr. White was aware of Mr. Pierce's behavior towards Ms. Consalvo and the pervasive and ongoing harassment she was subjected to in the workplace.

53.     Despite Ms. Consalvo's previous verbal complaint regarding Mr. Pierce to Mr. Bell as set forth above, and Mr. Bell observing first-hand Mr. Pierce's inappropriate conduct, Mr. Bell took no action in response to this harassing conduct. Thus, Mr. Bell violated Fuccillo Ford of Nelliston's discrimination and harassment policy by failing to take any action to investigate a report of sexual harassment.

54.     Upon information and belief, Mr. White reported Mr. Pierce's conduct to the former manager of the Fuccillo Autoplex, Ralph Catrambone.

55. Upon information and belief, Mr. Catrambone reported the conduct to Mr. Green, but Mr. Green did not take sufficient action to remedy the situation. Thus, Mr. Green also violated Fuccillo Ford of Nelliston's sexual harassment policy and procedures in place to protect against sexual harassment by failing to report the incident to Human Resources or initiating any investigation into complained of conduct.

56. Upon information and belief, Mr. Pierce was transferred to a dealership within the Fuccillo Autoplex, which allowed him to have continued contact with Ms. Consalvo because sales employees were permitted to sell vehicles from all three dealerships within the Fuccillo Autoplex.

57. In approximately April of 2015, Ms. Consalvo's co-worker, Kevin Abrams, who worked at Fuccillo Chevrolet of Nelliston, slapped Ms. Consalvo's buttocks with his hand. The touching was neither consensual nor provoked, and it was entirely inappropriate and unprofessional. Mr. Abrams' conduct left Ms. Consalvo feeling humiliated.

58. Following this incident, Ms. Consalvo reported Mr. Abrams' conduct to Mr. Green. In response, Mr. Green said, "What do you want me to do about it?" or words to that effect. Upon information and belief, Mr. Green did not take any action in response to Ms. Consalvo's complaint in further violation of Fuccillo Ford of Nelliston's policy against sexual harassment.

59. Thereafter, Ms. Consalvo reported the incident with Mr. Abrams slapping her buttocks to Fuccillo Automotive Group's Human Resources office. Upon information and belief, Human Resources did not take any action in response to Ms. Consalvo's complaint against Mr. Abrams. Pursuant to Fucillo Ford of Nelliston's policy against sexual harassment, Human Resources was required to conduct an investigation and take disciplinary action against

the employees involved. Human Resources failed to conduct any investigation whatsoever in violation of its policy.

60.     In or around May 2015, Defendant Fuccillo Ford of Nelliston hired Gage Moss.

61.     Prior to Mr. Moss' hire, he had visited Fuccillo Ford of Nelliston to purchase a vehicle and Ms. Consalvo had attempted to provide customer service.

62.     While Mr. Moss was looking at a vehicle, he repeatedly flirted with Ms. Consalvo and hit on her. Ms. Consalvo did not reciprocate Mr. Moss' conduct and it made Ms. Consalvo extremely uncomfortable.

63.     Before a final hiring decision was made with respect to Mr. Moss, Ms. Consalvo told Mr. Green her reservations and discomfort with Mr. Moss being hired because she knew she would have to work with him. Despite Ms. Consalvo's concerns, Mr. Moss was hired by the Defendants to work alongside Ms. Consalvo.

64.     To add insult to injury, despite the fact that Ms. Consalvo voiced her reservations and discomfort with Mr. Moss to Mr. Green, Ms. Consalvo was then given the responsibility of training Mr. Moss.

65.     Once hired to work for Fuccillo Ford of Nelliston, Mr. Moss would make sexual gestures and remarks to Ms. Consalvo during sales. This made Ms. Consalvo extremely uncomfortable and embarrassed in front of potential clients.

66.     For example, on one occasion while Ms. Consalvo was talking with a client, Mr. Moss made a sexual gesture with his hips (i.e., humping against a wall), directed at Ms. Consalvo. Upon information and belief, no male employees were subjected to similar treatment.

67.     In addition, shortly after Mr. Moss was hired in 2015, Ms. Consalvo was in an

employee break room and looking for a straw for a drink. She asked a group of her coworkers if they had a straw. In reply, Mr. Moss said, "I have a straw that you can use." When Ms. Consalvo inquired where, Mr. Moss said: "here, in my pants." Another co-worker, Josh Bailey, who overheard Mr. Moss' lewd comment immediately said, "Oh my God, I cannot believe you said that," or words to that effect.

68.     Again, Ms. Consalvo reported this instance of harassment by Mr. Moss to Mr. Green. However, Ms. Consalvo never received a response or learned of any resolution to the harassing and discriminatory behavior. Thus, once again, Mr. Green violated Fuccillo Ford of Nelliston's policy against sexual harassment by not reporting the incident to Human Resources and no investigation was conducted.

69.     During Ms. Consalvo's employment with the Defendant Fuccillo Ford of Nelliston, she also worked with Richard Arduini. Mr. Arduini made constant remarks of a sexual nature toward Ms. Consalvo and indirectly in her presence.

70.     For instance, Mr. Arduini consistently used the dealership's showroom loud speaker to say: "Kim can swallow," when referencing Ms. Consalvo's name due to the similarity with the pronunciation of her last name.

71.     Upon information and belief, Mr. Green heard these comments and it was well-known throughout Fuccillo Ford of Nelliston that Mr. Arduini terrorized Ms. Consalvo in this manner.

72.     Mr. Arduini also made sexually charged comments in Ms. Consalvo's presence regarding customers. This made Ms. Consalvo extremely uncomfortable and embarrassed.

73.     For example, after a male customer purchased a compact vehicle, Mr. Arduini remarked to Ms. Consalvo about the customer: "small cock on you now," or words to that

effect.

74.    Mr. Arduini also harassed Ms. Consalvo on the basis of her gender with respect to her job performance. On several occasions, Mr. Arduini compared Ms. Consalvo's performance to her husband, who was employed by Fuccillo Chevrolet of Nelliston. For example, Mr. Arduini stated: "Maybe you should take lessons from your husband on how to sell [cars]." To date, Mr. Arduini continues to make derogatory and sexist comments to Ms. Consalvo's husband regarding Ms. Consalvo, who continues to be employed by the Fuccillo Automotive Group.

75.    The aforementioned specific incidents were encouraged and condoned by the failure of Mr. Green to take any action to curb the culture that objectified and discriminated against women. Further, the foregoing instances serve as examples of the severe and pervasive comments and behavior that resulted in a hostile work environment on the basis of Ms. Consalvo's sex and are not an exhaustive list of all instances of harassment.

c.    **Plaintiff is subjected to disparate treatment versus male employees**

76.    In addition to the persistent inappropriate sexual comments and conduct engaged in by Ms. Consalvo's co-workers and supervisors at Fuccillo Ford of Nelliston, Ms. Consalvo was treated in a disparate manner with respect to the operations of the Sales Department and was denied promotional opportunities.

77.    For example, Ms. Consalvo was constantly yelled at and berated by Mr. Agard regarding sales and client interactions. Upon information and belief, no male employees of Fuccillo Ford of Nelliston, were treated similarly by Mr. Agard.

78.    Upon information and belief, Mr. Agard's menacing and disrespectful conduct toward Ms. Consalvo was in retaliation for her complaints of sexual harassment against several

employees of Fuccillo Ford of Nelliston.

79.    In one particular instance in 2014, Mr. Agard was out sick and Ms. Consalvo fielded a client that was originally contacted by Mr. Agard.  Ms. Consalvo had received permission from the former Sales Manager, Bob Kemmer, before talking with this client.  Mr. Kemmer said that it does not matter who had previously called the client and instructed Ms. Consalvo to sell this client an automobile.

80.    Upon information and belief, Mr. Green, unbeknownst to Ms. Consalvo, called Mr. Agard and informed Mr. Agard that Ms. Consalvo was attempting to sell an automobile to the client.

81.    In reality, Ms. Consalvo was not attempting to capitalize on the sale to Mr. Agard's client.  Mr. Agard's name was on the all of the paperwork and he would receive credit for the sale.

82.    In response to Mr. Green's phone call, Mr. Agard drove to the dealership and began screaming at Ms. Consalvo in front of her coworkers and customers, in addition to Fuccillo Ford of Nelliston's managerial staff—Mr. Green, Mr. Bell, and Mr. Kemmer.

83.    In response to Mr. Agard's public attack, Ms. Consalvo suffered a mental breakdown and was reduced to tears.

84.    Fuccillo Ford of Nelliston's managerial staff sent Ms. Consalvo home for the day because she was so upset from Mr. Agard's verbal assault. Ms. Consalvo was informed that it was a "conflict of interest" for her to stay at work, or words to that effect.

85.    Upon information and belief, no male employees were treated in this manner by Mr. Agard while Ms. Consalvo was employed at Fuccillo Ford of Nelliston, or was such behavior condoned by Mr. Green, Mr. Bell, and Mr. Kemmer if directed at a male employee.

14

86.    In approximately late June or early July of 2015, Mr. Agard became Finance Manager of Fuccillo Ford of Nelliston.

87.    After Mr. Agard became the Finance Manager, he consistently thwarted Ms. Consalvo's sales and criticized her work and performance without justification. On several occasions, when Ms. Consalvo's clients selected a vehicle for purchase and needed financing, Mr. Agard would use his position as Finance Manager to inexplicably delay speaking with the client for an exorbitant amount of time thereby sabotaging the transaction.

88.    For example, in July of 2015, Ms. Consalvo had a client interested in purchasing a Jeep Wrangler. After the client selected the particular vehicle and requested to be reviewed for financing, Mr. Agard, without justification, made the customer sit in the waiting room for over an hour. The customer got frustrated and left the dealership. Ms. Consalvo lost the deal on the vehicle.

89.    This trend continued for weeks with several other instances where Mr. Agard failed to see Ms. Consalvo's customers to finance a deal. Upon information and belief, no male Sales Specialists were treated in the same manner.

90.    Mr. Agard's interference with Ms. Consalvo's sales resulted in lost commissions and pay. Ms. Consalvo was compensated on a commission basis. Thus, if Ms. Consalvo did not make any sales in a week, she would end up owing the company money for that week's pay. Upon information and belief, Mr. Agard interfered with Ms. Consalvo's sales in retaliation for her complaints of sexual harassment against several employees of Fuccillo Ford of Nelliston.

91.    In addition, on several occasions, Mr. Agard made inappropriate comments of a sexual nature to undermine Ms. Consalvo's success as a Sales Specialist. He intimated that Ms.

Consalvo's success was not merely due to her sales skills. For example, Mr. Agard asked Ms. Consalvo: "What are you doing? Sexual favors for your customers?" or words to that effect. He would further remark about Ms. Consalvo's manner of dress and the jewelry that Ms. Consalvo wore to allude that she was engaging in inappropriate or flirtatious behavior to sell vehicles. Upon information and belief, Mr. Agard did not make similar comments to other similarly situated male employees.

92.    Upon information and belief, Mr. Agard subjected Ms. Consalvo to such conduct in retaliation for her complaints of sexual harassment against several employees of Fuccillo Ford of Nelliston.

93.    At numerous points throughout her employment with Defendant Fuccillo Ford of Nelliston, Ms. Consalvo received promises from Fuccillo Ford of Nelliston's management, including Mr. Green and Mr. Guiles, that she would be awarded a managerial position.

94.    Ms. Consalvo possessed the necessary qualifications for a manager position and was consistently one of the highest performing Sales Specialists. Ms. Consalvo completed Ford's internal manager tests that were perquisites to be promoted to General Manager, Sales Manager, and Finance Manager. Ms. Consalvo also obtained her New York State Inspector Certificate in order to have all the necessary qualifications to serve as a manager of Ford of Fuccillo.

95.    Ms. Consalvo also went above and beyond her explicit job criteria. In addition to her duties as a Sales Specialist, Ms. Consalvo inspected vehicles as needed, set up a gross sheet for the entire dealership, opened and closed the dealership on short notice when other employees failed to do so in a timely manner; and assisted other Sales Specialists to close deals. Ms. Consalvo did not receive additional compensation for this work, but performed

them because she was committed to supporting Fuccillo Ford of Nelliston.

96.    However, despite Ms. Consalvo's qualifications, sales performance and being a team player, she was passed over for a promotion at Fuccillo Ford of Nelliston in favor of an underperforming male employee.

97.    Upon information and belief, Ms. Consalvo was denied this promotional opportunity in retaliation for her complaints of sexual harassment against several employees of Fuccillo Ford of Nelliston.

98.    In late June or early July of 2015, Mr. Green promoted Mr. Agard to a manager position, despite the fact that Mr. Agard and Ms. Consalvo had the same seniority and Ms. Consalvo's sales performance consistently exceeded Mr. Agard's sales performance.

### d.   **Plaintiff is transferred from Fuccillo Ford of Nelliston**

99.    As a result of the aforementioned harassing conduct, the failure of Mr. Green to respond to any of Ms. Consalvo's complaints, and the denial of Ms. Consalvo's promotion, Ms. Consalvo's work environment became so hostile that she requested a transfer from Fuccillo Ford of Nelliston to another dealership within the Fuccillo Autoplex.

100.    In response, Mr. Green originally denied Ms. Consalvo's request to transfer and threw it away.

101.    After a follow-up request by Ms. Consalvo, on July 15, 2015, Ms. Consalvo was transferred to another dealership, Fuccillo Chrysler, Jeep, Dodge of Amsterdam ("Fuccillo CJD of Amsterdam") in Amsterdam, N.Y.

102.    Fuccillo CJD of Amsterdam is located approximately an hour from Ms. Consalvo's home.

103.    As a result of Ms. Consalvo's transfer to Fuccillo CJD of Amsterdam, Ms.

Consalvo lost her entire client base.

104. Once Ms. Consalvo began working at Fuccillo CJD of Amsterdam, Ms. Consalvo observed several employees under the influence of drugs while speaking with customers, use drugs on the premises, and sell drugs while on the dealership lot. As a result, Ms. Consalvo feared for her safety while at work. The dealership also lacked an established work schedule and employees appeared to come and go as they pleased.

105. In addition, employees at Fuccillo CJD of Amsterdam were aware of Ms. Consalvo's excellent sales performance at Fuccillo Ford of Nelliston. As a result, several Fuccillo CJD of Amsterdam employees sought to prevent Ms. Consalvo from making sales and would interrupt her from speaking with customers and interfere with her sales transactions. As a result, Ms. Consalvo was unable to continue working at Fuccillo CJD of Amsterdam.

106. Ms. Consalvo's transfer constituted an adverse employment action and act of retaliation following her numerous complaints of harassment against Fuccillo Ford of Nelliston.

107. On July 30, 2015, Ms. Consalvo, while on vacation, wrote an email to Mary Bertollini with Human Resources in which she stated that working at Fuccillo CJD of Amsterdam had become physically and mentally unbearable.

108. On August 1, 2015, Ms. Consalvo ceased working at Fuccillo CJD of Amsterdam.

109. Due to Mr. Green's failure to address Ms. Consalvo's harassment and discriminatory treatment, Ms. Consalvo firmly believed that she had no viable recourse by way of complaint or remedy with respect to the actions of her male coworkers at Defendant Ford of Nelliston or the pervasive hostile work environment to which she was subjected. Mr. Green's inaction created a viable fear of further continued harassment and discrimination.

18

110.    As a direct and proximate result of the constant and pervasive comments and behavior of her male coworkers at Fuccillo Ford of Nelliston, Ms. Consalvo suffered from and continues to suffer from, mental and emotional conditions.

## AS AND FOR A FIRST CLAIM AGAINST DEFENDANTS FOR DISCRIMINATION AND HARRASSMENT BASED UPON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

111.    Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "110" above, as though the same were set forth herein at length.

112.    Plaintiff, a female, is a covered person under Title VII.

113.    Plaintiff, at all times relevant herein, was qualified to perform her job as a Sales Specialist for Fuccillo Ford of Nelliston.

114.    Defendants, at all times relevant herein, subjected Plaintiff to a pattern and practice of discrimination and harassment as a result of a hostile, offensive, and intimidating work environment created by male supervisors and employees.

115.    Defendants' statements and employment decisions, as well as their application of their policies and procedures, singled out the Plaintiff on the prohibited grounds of sex and gender.

116.    Throughout Plaintiff's employment, she was subjected to unwanted sexual comments, gestures, and advances by a number of male employees.

117.    Further, Defendant treated Plaintiff differently than similarly situated male employees in terms of job duties and responsibilities, lack of compensation, and lack of promotion due to the Plaintiff's gender.

118.    Defendant gave preferential treatment to male employees by sabotaging Plaintiff's automobile sales and denying her a managerial promotion in favor of a less deserving male employee.

119.    At multiple points throughout her employment, Plaintiff made a good faith complaint of discrimination, harassment, and hostile work environment to her supervisors, Mr. Green and Mr. Bell, as well as Fuccillo Automotive Group Human Resources, in accordance with Fuccillo Ford of Nelliston's sexual harassment policy.

120.    Defendants took no action to remedy the misconduct, harassment, and illegal retaliatory actions of the Defendants—in violation of their own employment policies.

121.    Defendant Fuccillo Ford of Nelliston condoned or otherwise ratified the individual Defendants' conduct when it failed to take action to stop the harassment and/or otherwise failed to protect Plaintiff from the individual Defendants through its policies, practices and/or procedures.

122.    Defendants further altered Plaintiff's terms and conditions of her employment with Defendant Fuccillo Ford of Nelliston and continued to subject her to a severe, pervasive, hostile work environment after she complained about the discriminatory treatment she received from Defendants.

123.    Defendants' action, alleged herein, violated Title VII.

124.    That the said actions of defendants against Plaintiff, all in violation of the herein-mentioned laws, Plaintiff has suffered monetary damages including, but not limited to, a loss of income, including past salary, future salary, and company-sponsored benefits as well as non-monetary damages, including physical, mental, and emotional injury requiring medical

treatment, damage to her personal and professional reputation in the community, loss of self-esteem, pain and suffering, and other damages all to her detriment.

## AS AND FOR A SECOND CLAIM AGAINST DEFENDANTS FOR RETALIATION BASED UPON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

125.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "1" through "124" above as though the same were set forth in full herein.

126.    Through the aforementioned acts and omissions, the defendants retaliated against Plaintiff for complaining of multiple instances of sexual harassment committed by Fuccillo Ford of Nelliston employees.

127.    Through the aforementioned acts and omissions, the defendants retaliated against plaintiff after she complained about said sexual harassment, including by altering the compensation, terms, conditions and/or privileges of her employment and by taking tangible employment actions against her, by permitting and/or facilitating continued harassment.

128.    Defendants ultimately transferred Plaintiff based upon her sex and/or gender and in retaliation for her good faith complaints and in furtherance of Defendants' unlawful harassment of Plaintiff.

129.    Defendant's transfer of Plaintiff to Fuccillo CJD of Amsterdam constituted an adverse employment action against Plaintiff.

130.    As a result of the aforementioned acts and omissions, defendants unlawfully retaliated against plaintiff in violation of Title VII of the Civil Rights Act.

131.    As a direct and proximate result of defendants' conduct, plaintiff sustained economic injury in the form of loss of wages, loss of benefits, irreparable damage to her

reputation, severe emotional distress, physical and mental health problems and legal expenses to date, which all have caused permanent economic injury.

## AS AND FOR A THIRD CLAIM AGAINST DEFENDANTS FOR HARASSMENT AND DISCRIMINATION BASED UPON SEX IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

132.    Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "131" above, as though the same were set forth herein at length.

133.    Plaintiff is a female covered by the New York State Human Rights Law.

134.    Defendants is a covered employer pursuant to the New York State Human Rights Law (Executive Law § 292).

135.    Plaintiff, at all times relevant herein, was qualified to perform her job as the Sales Consultant.

136.    Plaintiff, at all times relevant herein, was qualified to perform her job as a Sales Specialist for Fuccillo Ford of Nelliston.

137.    Defendants, at all times relevant herein, subjected Plaintiff to a pattern and practice of discrimination and harassment as a result of a hostile, offensive, and intimidating work environment created by male supervisors and employees.

138.    Defendants' statements and employment decisions, as well as their application of their policies and procedures, singled out the Plaintiff on the prohibited grounds of sex and gender.

139.    Throughout Plaintiff's employment, she was subjected to unwanted sexual comments, gestures, and advances by a number of male employees.

140.    Further, Defendant treated Plaintiff differently than similarly situated male employees in terms of job duties and responsibilities, lack of compensation, and lack of promotion due to the Plaintiff's gender.

141.    Defendant gave preferential treatment to male employees by sabotaging Plaintiff's automobile sales and denying her a managerial promotion in favor of a less deserving male employee.

142.    At multiple points throughout her employment, Plaintiff made a good faith complaint of discrimination, harassment, and hostile work environment to her supervisors, Mr. Green and Mr. Bell, as well as Fuccillo Automotive Group Human Resources, in accordance with Fuccillo Ford of Nelliston's sexual harassment policy.

143.    Defendants took no action to remedy the misconduct, harassment, and illegal retaliatory actions of the Defendants—in violation of their own employment policies.

144.    Defendant Fuccillo Ford of Nelliston condoned or otherwise ratified the individual Defendants' conduct when it failed to take action to stop the harassment and/or otherwise failed to protect Plaintiff from the individual Defendants through its policies, practices and/or procedures.

145.    Defendants further altered Plaintiff's terms and conditions of her employment with Defendant Fuccillo Ford of Nelliston and continued to subject her to a severe, pervasive, hostile work environment after she complained about the discriminatory treatment she received from Defendants.

146.    Defendants retaliated against Plaintiff for her good faith complaints of harassment and hostile work environment on the basis of her gender.

147.     Defendants ultimately transferred Plaintiff based upon her sex and/or gender and in retaliation for her good faith complaints and in furtherance of Defendants' unlawful harassment of Plaintiff.

148.     Defendant's transfer of Plaintiff to Fuccillo CJD of Amsterdam constituted an adverse employment action against Plaintiff.

149.     Defendants harassed and/or discriminated against Plaintiff as a result of her sex and age and retaliated against her in violation of the New York State Human Rights Law

150.     That the said actions of Defendants against Plaintiff, all in violation of the herein-mentioned laws, Plaintiff has suffered monetary damages including, but not limited to, a loss of income, including past salary, future salary, and company-sponsored benefits and non-monetary damages, including physical, mental, and emotional injury requiring medical treatment, damage to her personal and professional reputation in the community, loss of self-esteem, pain and suffering, and other damages all to her detriment.

## AS AND FOR A FOURTH CLAIM AGAINST DEFENDANTS FOR RETALIATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

151.     Plaintiff repeats and re-alleges the allegations contained in paragraphs "1" through "150" above as though the same were set forth in full herein.

152.     As a result of the aforementioned acts and omissions of the defendants, defendants unlawfully retaliated against plaintiff in violation of the NYSHRL.

153.     Defendants ultimately transferred Plaintiff based upon her sex and/or gender and in retaliation for her good faith complaints and in furtherance of Defendants' unlawful harassment of Plaintiff.

154. Defendant's transfer of Plaintiff to Fuccillo CJD of Amsterdam constituted an adverse employment action against Plaintiff.

155. Upon information and belief, defendants' retaliation against plaintiff was negligent and in violation of federal and state law. As a direct and proximate result of defendants' conduct, plaintiff sustained economic injury in the form of loss of wages, loss of benefits, irreparable damage to her reputation, severe emotional distress, physical and mental health problems and legal expenses to date, which all have caused permanent economic injury.

**WHEREFORE**, Plaintiff respectfully prays for the following:

1. Declaring that defendants' actions and practices violated Title VII of the Civil Rights Act and the NYSHRL;

2. Awarding damages for lost wages, lost benefits, reimbursement for any and all lost benefits, and reimbursement for any and all past and future medical expenses for injuries (mental or otherwise) caused or exacerbated by defendants, together with applicable interest thereon from the time of the initial loss until satisfaction of judgment, as well as post-judgment interest thereon;

3. Directing defendants to pay plaintiff compensatory damages for her emotional distress caused by defendants' unlawful employment practices;

4. Directing defendants to pay plaintiff punitive damages sufficient to punish defendants' unlawful employment practices and deter continuation of defendants' unlawful employment practices;

5. Assessing civil fines and penalties pursuant to the New York State Human Rights Law § 297.

6.     Awarding plaintiff reasonable attorneys' fees, expert fees and all other costs and

disbursements associated with this action; and

7.     Granting such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: Albany, New York
       November 28, 2016

HINMAN STRAUB P.C.

By: _____
    Benjamin Wilkinson
    (Bar Roll No.: 519844)

*Attorneys for Plaintiff*
121 State Street
Albany, New York 12207
Tel: (518) 436-0751
Fax: (518) 436-4751
E-mail: bwilkinson@hinmanstraub.com

# VERIFICATION

STATE OF NEW YORK }
} ss.:
COUNTY OF ALBANY }

**BENJAMIN WILKINSON**, being duly sworn, deposes and says: I am an associate of the law firm of Hinman Straub P.C., attorneys for the Plaintiff in the within action; that I have read the foregoing Verified Complaint and know the contents thereof; that the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true. This verification is made by me and not by the Plaintiff because Plaintiff does not reside within the county in which my office is located.

The grounds of deponent's belief as to all matters not stated upon his knowledge are as follows: communications and conferences with the Plaintiff and review of documents relevant to this case.

_____
BENJAMIN WILKINSON

Sworn to before me this 28th
day of November, 2016

_____
NOTARY PUBLIC

LEANNE R KONTOGIANNIS
Notary Public, State of New York
No. 01KO5025348
Qualified in Albany County
Commission Expires May 15, 2018

27

EXHIBIT "A"



**Division of
Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

KIMBERLY CONSALVO,

                     Complainant,

         v.

CHRISTOPHER PIERCE, KEVIN ABRAMS, BEN
GREEN, GAGE MOSS, RICK ARDUINI, JAMES
AGARD, FUCCILLO FORD OF NELLISTON, INC.,
D/B/A FUCCILLO AUTO PLEX,

                    Respondents.

---

**DETERMINATION AFTER
INVESTIGATION**

Case No.
10177937

Federal Charge No. 16GB600152

On 10/13/2015, Kimberly Consalvo filed a verified complaint with the New York State
Division of Human Rights ("Division"), charging the above-named Respondents with an
unlawful discriminatory practice relating to employment because of sex in violation of N.Y.
Exec. Law, art. 15 ("Human Rights Law").

After investigation, the Division has determined that it has jurisdiction in this matter and
that <u>PROBABLE CAUSE</u> exists to believe that the Respondents have engaged in or are engaging
in the unlawful discriminatory practice complained of.

Pursuant to the Human Rights Law, this matter is recommended for public hearing. The parties will be advised of further proceedings.

Dated:     MAR 2 2 2016
           Rochester, New York

STATE DIVISION OF HUMAN RIGHTS

By: _Julia B Day_____
    Julia B. Day
    Regional Director

## Information to the Parties
## Following Determination of Probable Cause

The New York State Division of Human Rights ("Division") is the administrative agency charged with enforcing the New York State Human Rights Law. The Division investigates complaints of discrimination, determines whether there is probable cause to believe that discrimination has occurred, and conducts a public hearing of the complaint where probable cause is found. Probable cause has been found in this case, and the matter will now proceed to a public hearing before an Administrative Law Judge.

If a Complainant does not have a private attorney, the Division will assign an attorney to present the case in support of the complaint. The Division attorney at all times represents the Division, not the Complainant personally. Substitutions and reassignments of Division attorneys and Administrative Law Judges are within the Division's discretion.

The Division generally schedules public hearings for two consecutive days, which may be allocated with one day each for the presentation of Complainant's and Respondent's cases. There is no formal discovery. Parties may exchange document and witness lists at the preliminary conference, which will take place during the first hour of the first day of the public hearing.

Prior to receiving the notice setting out the date and time of the public hearing, parties may receive notice of a Pre-Hearing Settlement Conference, which will be scheduled several weeks before the public hearing. If Respondent wishes to make an offer of settlement prior to that time, Respondent should contact the Division at question@dhr.ny.gov. If you do not have access to electronic mail, you may call the Hearing Attorneys Unit at (718) 741-8398.

The Division has its own Rules of Practice which can be found on the Division's website, www.dhr.ny.gov. The New York Civil Practice Law and Rules and the Federal Rules of Procedure and Evidence are inapplicable to Division proceedings. Please cite to New York State case law wherever possible in all submissions to the Division.

The parties have a continuing obligation to keep the Division advised as to any changes in the case including:

1.  Changes in name, address and/or telephone number of the parties and successors in interest.
2.  Commencement of proceedings in another forum.
3.  Settlement of the case.

Any of the above information should be timely provided to the Division, IN WRITING on the attached form to the following by mail or fax:

**New York State Division of Human Rights**
**Attn: Chief Calendar Clerk**
**One Fordham Plaza, 4th Floor**
**Bronx, New York 10458**
**Fax: (718) 741-8273**

If the Complainant wishes to seek dismissal of this matter to proceed in an alternate forum, an application should be filed with the Chief Calendar Clerk at the above listed address, preferably within twenty (20) days of the date of this determination.

The parties also have a continuing obligation to maintain certain information, records, etc., as follows:

1. Parties must keep track of the whereabouts of their witnesses.

2. Parties are obligated to identify and preserve all evidence relating to the case, including evidence relating to any incidents which relate to the case that occur after the Division makes a finding of probable cause, and including all evidence whether for or against that party's interests.

3. Parties are responsible for recording and keeping evidence relating to any increase or reduction in damages.

Finally, if you would like to request a copy of the investigation file, please do so promptly. Put your request in writing to:

> **New York State Division of Human Rights**
> **Attn: FOIL Officer**
> **One Fordham Plaza, 4th Floor**
> **Bronx, New York 10458**
> **Fax: (718) 741-3217**
> **Email: foil@dhr.ny.gov**

Please note that your request for documents, or the Division's response or date of response thereto, will not affect the date of the hearing, and cannot be used to request a postponement or rescheduling of the hearing. Costs for copying, established by statute, will apply.

# FREQUENTLY ASKED QUESTIONS

The New York State Human Rights Law and the Division's Rules of Practice outline the policies and procedures that govern hearings administered by the New York State Division of Human Rights. The Law and the Rules are available on the Division's website at www.dhr.ny.gov. Parties may consult with their own attorneys on questions about and interpretations of the Law and/or the Rules. The following are general responses to frequently asked questions. The responses are not legal advice, and should be used for informational purposes only.

## Before the Public Hearing

1. **I recently received a "Determination After Investigation" letter from the Division, stating that there is probable cause to believe that discrimination has occurred in my case and that the case will be scheduled for a public hearing. What does this mean and when will the case be scheduled for a hearing?**

   Where the Division finds probable cause after investigation, the Human Rights Law requires that the entire case be heard at a public hearing before an administrative law judge, where all relevant evidence is presented and the testimony of witnesses is taken under oath and subject to cross-examination. You will receive written notice from the Division of the hearing date, time, and location of the hearing. The hearing usually is scheduled to occur 4 to 6 weeks from the date of the written notice. Prior to receiving this notice, you may receive notice of a Pre-Hearing Settlement Conference, where your case will come before an Administrative Law Judge for the purpose of exploring settlement.

2. **Do we pick the dates for the hearing?**

   No. The Division selects dates for a public hearing, and notifies the parties in writing through the notice of hearing.

3. **What do I bring to the hearing, such as documents, witnesses, etc.?**

   The parties should identify and bring all documents and witnesses relevant to their claims and/or defenses. The parties should review the notice of hearing, which is issued via mail.

4. **Now that the case is scheduled for a hearing, what happens next?**

   The case proceeds to a public hearing on the scheduled date. The Complainant may consult with his or her own attorney. If Complainant does not have an attorney, please wait to be contacted by a Division attorney, who will present the case in support of the complaint. Further, the parties should review the notice of hearing, which is issued via mail.

5. **When should an answer be filed and can it be faxed?**

   An answer should be served by the respondent(s) on all parties and the Administrative Law Judge at least two (2) business days before the public hearing. This is a statutory requirement. All formal papers, including but not limited to the answer, must be submitted via personal service, mail, or fax (with an original to follow) for proper docketing and timely filing. Formal papers submitted via electronic mail are deemed courtesy copies and do not constitute proper service.

## Adjournments

6. **What should I do if I have a conflict with the hearing date that is scheduled?**

   You should submit, as early as possible, a written request for an adjournment of the hearing, stating the basis for your request, to all parties and the Administrative Law Judge.

7. **On what basis will the judge grant an adjournment? Will I receive a letter with new dates?**

   Adjournment of a public hearing is granted only for actual engagement before a higher tribunal on the specific dates of the public hearing, or for other good cause shown as determined by the Division. If a case is adjourned, the Division will schedule a new hearing date.

## Public Hearing

8. **What happens if I do not appear for the hearing?**

   A complainant's failure to appear at a public hearing may result in a dismissal of a complaint, and a respondent's failure to appear may result in a default finding against a respondent.

9. **How long is the hearing?**

   Public hearings are generally scheduled for two (2) days.

10. **Can I speak with the Judge?**

    *Ex parte* communication (*i.e.*, by only one party) with the judge assigned to the case is strictly prohibited. The parties may jointly request a conference with a judge through the Office of Administrative Law Judges.

## Additional Information

11. **I have more questions. Where can I call for more information?**

    If necessary, you may call Shirese Taylor, Chief Calendar Clerk, at (718) 741-8400. We do request that you call <u>only if the situation is urgent</u>. Please do not call to ask the status of your case; the Division will contact *you* at the appropriate time. Frequent telephone contact can interfere with the prompt processing of your hearing. Please do not call your regional office; they will not have information on the hearing process.

**IF YOU MOVE, SETTLE, OR INTEND TO CHANGE FORUM**
**Complete and return this form to:**

**New York State Division of Human Rights**
**Attn: Chief Calendar Clerk**
**One Fordham Plaza, 4th Floor**
**Bronx, New York 10458**
**Fax: (718) 741-8273**

Re:     Kimberly Consalvo v. Christopher Pierce, Kevin Abrams, Ben Green, Gage Moss, Rick
        Arduini, James Agard, Fuccillo Ford of Nelliston, Inc., d/b/a Fuccillo Auto Plex
        Case No. 10177937

**New name, address, and/or telephone:**

NAME: _____

ADDRESS: _____

_____

TELEPHONE: _____

I WILL BE AT MY NEW ADDRESS ON OR AFTER: _____

Please indicate below the name, address, and telephone number of a person who may be
contacted and will know your whereabouts if the Division cannot locate you:

_____

_____

_____

**Commencement of proceedings in another forum, or settlement:**
Below please indicate, for other proceedings, the name of the forum and the name, address, and
telephone number of the attorney handling the matter.  For settlement, please explain briefly the
circumstances under which the case was settled, and whether the terms have been complied with,
and give a contact telephone number and sign below.

_____

_____

_____

_____          _____
Telephone Number                      Signature

# NEW YORK STATE

# DIVISION OF HUMAN RIGHTS

TO:    Files                                 REGION: Rochester

FROM:  Julia B. Day                       DATE: March 16, 2016
            Regional Director

SDHR CASE NO: 10177937-15-E-S-E

Federal Charge No. 16GB600152

SUBJECT:    Kimberly Consalvo v. Christopher Pierce, Kevin Abrams, Ben Green, Gage
                Moss, Rick Arduini, James Agard, Fuccillo Ford of Nelliston, Inc., d/b/a Fuccillo
                Auto Plex

---

## FINAL INVESTIGATION REPORT AND BASIS OF DETERMINATION

### I.    CASE SUMMARY

This is a verified complaint, filed by complainant, Kimberly Consalvo, on Tue 10/13/2015. The complainant who is female, charges the respondents with unlawful discriminatory practices in relation to employment because of sex.

### II.    SUMMARY OF INVESTIGATION

Complainant's Position:

Complainant states that during her tenure with Respondent, she was one of three females working in the sales department. Complainant further alleges that the other two female sales consultants worked for Respondent for less than a month before ending their employment. Complainant maintains that the work environment was male dominated and consisted of a culture that objectified women. Complainant alleges that throughout her employment, she was subjected to sexual comments and gestures by male coworkers. Complainant states that she reported this conduct to her supervisor, who was the General Manager, yet nothing was done. Complainant also contends that the General Manager witnessed some of the sexual harassment, yet failed to take any action to stop the behavior. Complainant asserts that none of the male sales consultants were subjected to the same treatment that she was, including stealing customers for potential sales. Complainant says that despite her qualifications and promises from management, she was never promoted to manager. Complainant says that a male coworker, James Agard, was promoted to a manager position, even though they had started around the same time and her sales generally exceeded his. Complainant says that she had completed the internal manager training for Ford and also obtained her NYS Inspector Certificate in order to have all of the necessary

qualifications for a manager position. Complainant further states that she requested a transfer, which was initially denied and then was granted in July of 2015 when she was sent to the Amsterdam store. However, Complainant maintains that she lost her entire client base when she made that transfer and questions why she was the one that had to move locations.

Respondents' Position:

Respondents deny discriminating against Complainant. Respondents state that Complainant was hired as a Sales Consultant and remained in that position during her entire tenure with the company. Respondents say that Complainant requested a transfer, which was granted, to Fuccillo Chrysler, Jeep, Dodge of Amsterdam, Inc. effective July 15, 2015. According to Respondents, Complainant indicated in her transfer request that she wanted to work with the General Manager at that location. Respondents also state that since the Amsterdam location was bigger, Complainant had the opportunity to increase her sales and earn more money. Respondents further deny all of Complainant's allegations of sexual harassment and discrimination on the basis of sex. Respondents also deny that Ben Green failed to respond to any complaints brought to his attention by Complainant during her tenure with the company and asserts that her complaints were immediately dealt with. Respondents state that the two other females referenced in the complaint resigned voluntarily and never raised concerns with sexual harassment or sex discrimination. Respondents also maintain that Complainant was never promised a management position and that she was not qualified for the position of Finance Manager at the time of her transfer to the Amsterdam location. Respondents deny that Complainant was subjected to disparate treatment in any manner due to her sex; according to Respondents, Complainant and James Agard engaged in mutual accusations of stealing customers and that these issues were addressed. Respondents state that Complainant acknowledged receipt of the handbook and has completed training for harassment and discrimination, so she is well aware of the policies against both, as well as the open door policy and process for reporting such issues. Respondents state that on July 30, 2015, Complainant contacted the Director of Human Resources by email indicating that the Amsterdam store was not for her and she did not feel like she fit there. Respondents say that during a subsequent telephone conversation, Complainant indicated she retained an attorney and was going to sue for five million dollars. Respondents state that the Director of Human Resources asked Complainant to send an email outlining the exact issues she was complaining of and to hold off on resigning her position until they had an opportunity to review the issues and meet upon Complainant's return from vacation. Respondents state that although Complainant agreed to do so, there has been no further communication from Complainant. Respondents state that when a letter from Complainant's attorney was received, counsel was advised that Complainant could return at any time to a position at the Amsterdam store, but to date she has not done so.

Investigator's Observations:

Complainant alleges that she was subjected to sexual comments and conduct throughout her employment and that some of these incidents were witnessed by Respondent's General Manager. According to Complainant, some of the specific incidents occurred as follows:

1. Complainant asserts that around 2012/2013, coworker Christopher Pierce asked if she would like to go to the back room and have sex with him. She maintains that she

reported this to Rick Bell, the Finance Manager at the time, who responded that it was a joke and to forget it. Respondents deny these allegations and maintain that when Complainant complained about Christopher Pierce, she refused to file a formal complaint but he was still transferred to another location and had no additional contact with Complainant. Respondents state that Christopher Pierce left Fuccillo employment on December 24, 2012 and thus, these allegations are untimely.

2. Complainant alleges that shortly after the incident above, Christopher Pierce told her to come over and scratch his back; she asserts that this happened in front of Rick Bell and another employee. Complainant asserts that this was reported to Ben Green, General Manager, but the only action was to transfer Christopher Pierce to another dealership in the same autoplex. Complainant states that this remedy was ineffective, as she still had to interact with him, as sales consultants could sell in any of the three dealerships. Respondents reiterate their response indicated in the paragraph above to the allegations against Christopher Pierce.

3. Complainant contends that in April of 2015, coworker Kevin Abrams smacked her butt with his hand. Complainant says that although she reported this to General Manager Ben Green and corporate human resources, nothing was done. Respondents deny the allegations relating to a lack of appropriate action taken when a complaint was brought forward regarding Kevin Abrams. Respondents assert that the situation was addressed immediately, that Complainant was advised of the outcome, and no further complaints about Kevin Abrams were raised by Complainant.

4. Complainant maintains that around May of 2015, Gage Moss, a customer of Respondent's, was hired. Complainant says that he had made her uncomfortable when looking at vehicles, as he tried to flirt with her. Complainant states that she reported her concerns to Ben Green prior to Gage Moss being hired, but he was still hired. Complainant says that after he was hired, Gage Moss made a comment about having a straw that she can use that was in his pants. Complainant states that she reported this to Ben Green, but never received a response. Complainant states that despite reporting her concerns about Gage Moss, she was assigned to train him. Complainant maintains that during the training, Gage Moss made sexual comments and gestures to her in front of potential clients. Respondents assert that upon being made aware of the incident involving Gage Moss, Ben Green dealt with the situation and Gage Moss' managers were directed to write him up for the incident. Respondent notes that the document cannot be located and Gage Moss' manager is no longer employed by Respondent. Respondents stated that Complainant volunteered to train Gage Moss and that no further complaints about him were raised by Complainant.

5. Complainant asserts that coworker Rick Arduini made comments over the loud speaker "Kim can swallow," due to the similarity with the pronunciation of her last name. Complainant states that Ben Green heard these comments, yet failed to take action. Respondents deny these allegations and maintain that Rick Arduini is a long-term employee with a spotless record. Respondents state that there have been no complaints made about Rick Arduini by Complainant or anyone else.

6. Complainant alleges that James Agard made sexual comments to her, such as asking if she did sexual favors for her customers and implied that she engaged in flirtatious behavior with customers in order to sell vehicles. Respondents deny these allegations and also deny that any complaints were made concerning James Agard of a sexual nature.

Respondents maintain that any argument between James Agard and Complainant were over handling of customer deals and mutual accusations of stealing each other's deals. Respondents maintain that these complaints were dealt with accordingly.

Complainant also alleges that she was subjected to differential treatment when James Agard berated her in front of others, yet did not speak to the male sales consultants in that manner. She further maintains that after James Agard became Finance Manager, he consistently thwarted her sales and unjustly criticized her work performance. Respondents deny all of Complainant's allegations of disparate treatment based on sex.

Investigation showed that in July of 2015, Complainant was transferred to the Amsterdam store, although the parties characterize the transfer differently. Complainant asserts that she requested the transfer because of the sexual harassment and discriminatory treatment due to her sex, while Respondents maintain that Complainant requested the transfer because she missed working with the current General Manager of the Amsterdam location. If Complainant transferred due to discriminatory conduct that was allowed to continue, that could suggest condonation by Respondents.

Submitted by
Jami Kaplan
Human Rights Specialist II

## III.    BASIS FOR DETERMINATION

The parties dispute whether or not Complainant was subjected to sexual conduct and comments during her employment with the company and whether Complainant ever reported her concerns to management. If true as alleged by Complainant, the conduct complained of may rise to the level of severe or pervasive so as to alter the terms and conditions of her employment. Although some of the allegations appear to have occurred more than one year prior to filing her complaint, there is a question of fact as to whether the conduct complained of could be construed as a continuing violation. Moreover, if Complainant had reported the alleged sexual harassment to management or if management witnessed the behavior as Complainant alleges, Respondent would have had an obligation to take prompt and corrective action to resolve the problem. The parties also disagree as to whether Complainant was subjected to differential treatment compared to her male coworkers. Complainant asserts that she requested a transfer to another location because she could no longer tolerate the conduct, while Respondents contend that Complainant indicated that she wanted to work in Amsterdam because she missed working with the General Manager at that location. Shortly after her transfer, Complainant resigned her employment. There are issues of material fact remaining, including but not limited to, whether Complainant was subjected to conduct that was so severe or pervasive so as to rise to the level of sexual harassment, and if so, whether Respondents knew or should have known of the alleged conduct; whether Respondents failed to take prompt and effective action to resolve Complainant's concerns of sexual harassment; whether Complainant was treated differently than comparably situated male employees because of her sex; whether Complainant's transfer was voluntary or whether it was due to an environment of sexual harassment and/or bias towards females; and

whether Complainant's subsequent resignation could be construed as a constructive discharge. These issues of material fact are best resolved in the context of a full public hearing, where there is sworn testimony and the opportunity for cross-examination. Therefore, there is probable cause to support the allegations of the complaint.

Reviewed & Approved: _____

Jami Kaplan
Human Rights Specialist II

## IV. DETERMINATION

Based on the foregoing, I find Probable Cause to support the allegations of the complaint.

_____

Julia B. Day
Regional Director

**NY DHR**
**EVENT HISTORY WITH COMMENTS**

Name: Kimberly Consalvo v Fuccillo Ford of Nelliston, Inc., d/b/a Fuccillo Auto Plex; Christopher Pierce; Kevin Abrams; Ben Green; Gage Moss; Rick Arduini; James Agard (1)

| Complaint ID | Complaint Code | Date Filed | Investigating Office | HRS |
|---|---|---|---|---|
| 10177937 | 15-E-S-E | 10/13/2015 | Rochester | Jami Kaplan |

Name: Kimberly Consalvo v Fuccillo Ford of Nelliston, Inc., d/b/a Fuccillo Auto Plex; Christopher Pierce; Kevin Abrams; Ben Green; Gage Moss; Rick Arduini; James Agard (f)

## Events (23)

| Unit | Regional |
|---|---|
| Type | Complaint Filed |
| SubType | |
| Date | Tue 10/13/2015 |
| Status | Completed |
| Date Completed | 10/14/2015 |
| Comments | |

| Unit | Regional |
|---|---|
| Type | Serve Complaint on Respondent |
| SubType | |
| Date | Tue 10/13/2015 |
| Status | Completed |
| Date Completed | 10/14/2015 |
| Comments | |

| Unit | EEOC Contracts |
|---|---|
| Type | Review Intake (BCU) |
| SubType | |
| Date | Tue 10/13/2015 |
| Status | Completed |
| Date Completed | 10/15/2015 |
| Comments | |

| Unit | All |
|---|---|
| Type | Administrative Amendment Generated |
| SubType | |
| Date | Tue 10/27/2015 |
| Status | Completed |
| Date Completed | 10/27/2015 |
| Comments | |

| Unit | All |
|---|---|
| Type | Serve Amendment |
| SubType | |
| Date | Tue 10/27/2015 |
| Status | Completed |
| Date Completed | 10/27/2015 |
| Comments | |

| Unit | Regional |
|---|---|
| Type | Response Due Date |
| SubType | |
| Date | Thu 11/12/2015 |
| Status | Completed |
| Date Completed | 11/12/2015 |
| Comments | 3 wk ext request but 2 wks granted. |

Name: Kimberly Consalvo v Fuccillo Ford of Nelliston, Inc., d/b/a Fuccillo Auto Plex; Christopher Pierce; Kevin Abrams; Ben Green; Gage Moss; Rick Arduini; James Agard (1)

**Events (23)**

| | |
|---|---|
| Unit: | Regional |
| Type: | Response Received from Respondent |
| SubType: | |
| Date: | Thu 11/12/2015 |
| Status: | Completed |
| Date Completed: | 11/12/2015 |
| Comments: | |

| | |
|---|---|
| Unit: | Regional |
| Type: | Rebuttal Requested |
| SubType: | |
| Date: | Thu 11/12/2015 |
| Status: | Completed |
| Date Completed: | 11/12/2015 |
| Comments: | |

| | |
|---|---|
| Unit: | Regional |
| Type: | Rebuttal Due Date |
| SubType: | |
| Date: | Fri 11/27/2015 |
| Status: | Completed |
| Date Completed: | 12/3/2015 |
| Comments: | |

| | |
|---|---|
| Unit: | Regional |
| Type: | Complainant Contact |
| SubType: | Phone and Mail |
| Date: | Thu 12/3/2015 |
| Status: | Completed |
| Date Completed: | 12/3/2015 |
| Comments: | Called CP-had to leave a message, asked her to call as we are checking on her rebuttal.  I mailed the No Rebuttal Letter to her & her attorney. |

| | |
|---|---|
| Unit: | Regional |
| Type: | Rebuttal Received |
| SubType: | |
| Date: | Thu 12/3/2015 |
| Status: | Completed |
| Date Completed: | 12/3/2015 |
| Comments: | |

| | |
|---|---|
| Unit: | All |
| Type: | Serve Amendment |
| SubType: | |
| Date: | Fri 12/11/2015 |
| Status: | Completed |
| Date Completed: | 12/11/2015 |
| Comments: | |

Name: Kimberly Consalvo v Fuccillo Ford of Nelliston, Inc., d/b/a Fuccillo Auto Plex; Christopher Pierce; Kevin Abrams; Ben Green; Gage Moss; Rick Arduini; James Agard (I)

## Events (23)

| | |
|---|---|
| Unit: | All |
| Type: | Administrative Amendment Generated |
| SubType: | |
| Date: | Fri 12/11/2015 |
| Status: | Completed |
| Date Completed: | 12/11/2015 |
| Comments: | Respondent has been added |

| | |
|---|---|
| Unit: | Regional |
| Type: | Respondent Contact |
| SubType: | Fax |
| Date: | Thu 12/24/2015 |
| Status: | Completed |
| Date Completed: | 12/24/2015 |
| Comments: | Received NOA stating that Claudia Ryan has been retained to represent the additional respondents. She requested a two week extension, which was granted; amended response due 1/12/16. |

| | |
|---|---|
| Unit: | Regional |
| Type: | Complainant Contact |
| SubType: | Telephone |
| Date: | Tue 1/5/2016 |
| Status: | Completed |
| Date Completed: | 1/5/2016 |
| Comments: | C called with some questions. I answered her general questions regarding DHR procedure, the amendment she received in the mail from our office, dual filing and time frame until determinations, but advised her that any case specific questions as to what she should/should not submit has to come through her attorney, since she is represented by counsel. She also stated she is finding it difficult to find work because potential employers know about her complaint; she was advised of her right to file a complaint against those entities on the basis of opposed discrimination if she believes she was not hired due to her DHR complaint. |

| | |
|---|---|
| Unit: | Regional |
| Type: | Respondent Contact |
| SubType: | Fax and mail |
| Date: | Tue 1/12/2016 |
| Status: | Completed |
| Date Completed: | 1/14/2016 |
| Comments: | Response received to the amended complaint naming individual respondents. |

| | |
|---|---|
| Unit: | All |
| Type: | Serve Amendment |
| SubType: | |
| Date: | Wed 3/16/2016 |
| Status: | Pending |
| Date Completed: | |
| Comments: | |

| | |
|---|---|
| Unit: | All |
| Type: | Administrative Amendment Generated |
| SubType: | |
| Date: | Wed 3/16/2016 |
| Status: | Completed |
| Date Completed: | 3/16/2016 |
| Comments: | |

Name: Kimberly Consalvo v Fuccillo Ford of Nelliston, Inc., d/b/a Fuccillo Auto Plex; Christopher Pierce; Kevin Abrams; Ben Green; Gage Moss; Rick Arduini; James Agard (1)

**Events (24)**

| | |
|---|---|
| Unit: | Regional |
| Type: | Respondent Contact |
| SubType: | E-mail |
| Date: | Wed 3/16/2016 |
| Status: | Completed |
| Date Completed: | 3/16/2016 |
| Comments: | Requested the home addresses and phone numbers for the individual named Respondents. |

| | |
|---|---|
| Unit: | Regional |
| Type: | Supervisory approval submitted |
| SubType: | |
| Date: | Thu 3/17/2016 |
| Status: | Completed |
| Date Completed: | 3/17/2016 |
| Comments: | |

| | |
|---|---|
| Unit: | Regional |
| Type: | FIRABOD Submitted to Supervisor |
| SubType: | |
| Date: | Thu 3/17/2016 |
| Status: | Completed |
| Date Completed: | 3/17/2016 |
| Comments: | |

| | |
|---|---|
| Unit: | Regional |
| Type: | Respondent Contact |
| SubType: | E-mail |
| Date: | Fri 3/18/2016 |
| Status: | Completed |
| Date Completed: | 3/18/2016 |
| Comments: | R's attorney provided addresses for the individual Respondents. |

| | |
|---|---|
| Unit: | All |
| Type: | Determination Due Date |
| SubType: | |
| Date: | Fri 4/8/2016 |
| Status: | Pending |
| Date Completed: | |
| Comments: | |

| | |
|---|---|
| Unit: | All |
| Type: | Commissioner's Order Due Date |
| SubType: | |
| Date: | Tue 12/27/2016 |
| Status: | Pending |
| Date Completed: | |
| Comments: | |

Report complete. Number of main records listed: 1

EXHIBIT "B"

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Kimberly Consalvo<br>390 Blaine Road<br>Canajoharie, NY 13317 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2016-00152 | Holly M. Woodyard,<br>State & Local Program Manager | (212) 336-3643 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other (briefly state)  **Charging Party wishes to pursue matter in Federal District Court.**

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_[signature]_

SEP 0 2 2016

| Enclosures(s) | Kevin J. Berry,<br>District Director | (Date Mailed) |
|---|---|---|

cc:  Claudia A. Ryan, Esq.

Attn: Director of Human Resources
FUCCILLO FORD OF NELLISTON, INC., D
10524 U.S. Route 1
Adams, NY 13605

Joseph M. Dougherty, Esq.
Hinman Straub, P.C.
121 State Street
Albany, NY 12207-1693

EXHIBIT "C"



# TOP SALESPEOPLE
## FINAL 2014

| | | | |
|---|---|---|---|
| 1. | Mark Lima | 337 | Cape Kia |
| 2. | Harold Wood | 312 | Corp |
| 3. | Larry Kulhanek | 307 | Cape Kia |
| 4. | Jerimiah Trusty | 293 | Cape Kia |
| 5. | Tim Brunette | 280 | Sch Hyun |
| 6. | Dave Denero | 252 | Sch Hyun |
| 7. | Mario Dominguez | 247 | Cape Kia |
| 8. | Ron Davenport | 243 | Cape Kia |
| 9. | Tom Kulzer | 241 | Sch Kia |
| 10. | Ernest Brown | 237 | Clay Niss |
| 11. | Adelso Ramirez | 231 | Cape Kia |
| 12. | Kenny Ventura | 222 | Nell Chrys |
| 13. | Bill Sowers | 220 | Cape Kia |
| 14. | Desean Kittle | 211 | Sch Kia |
| 15. | Tree Henry | 209 | Cape Kia |
| 16. | Ryan Joslin | 208 | Syr Hyun |
| 17. | Heath Boyle | 207 | Sch Kia |
| 18. | Rich Hope | 202 | Clay Niss |
| 19. | Kim Consalvo | 201 | Nell Ford |
| 20. | Matt DiManno | 197 | Grc Kia |

EXHIBIT "D"

# WELCOME!

Welcome to the Fuccillo Automotive Group! As a member of our team, you help to differentiate us from the competition by providing excellent customer service and contributing to the Company's growth. We wish you success in your new position, and we hope that you will take pride in being a member of our team.

The Employee Handbook was developed to assist you in becoming familiar with our organization, and to outline the policies, programs, and benefits that are available to you as an employee of the Fuccillo Automotive Group. Please take the time to read this handbook thoroughly, as you will find answers to many of the questions you may have as a new employee. Should you need further clarification of any of the information provided to you throughout this handbook, please feel free to contact the Human Resources Department @ 315-232-3222, x410, 414, 417.

At times, it may become necessary to change and/or update the policies/procedures contained in this handbook. The Company reserves the right to do so, and will communicate the changes to employees as they occur.

This handbook does not create a contract of employment between the Fuccillo Automotive Group and any of its employees. All employment with the Fuccillo Automotive Group is on an "at will" basis. Employment "at will" means you have the right to terminate your employment with the Fuccillo Automotive Group at any time without cause or reason. The Fuccillo Automotive Group holds these rights as well.

We are pleased that you have made us your employer of choice! Best wishes for a challenging and successful career with our company.

## Company Philosophy

At Fuccillo Automotive Group, our employees are considered to be our most valuable asset. The Company understands its overall success depends on the contributions of each and every one of them. Fuccillo Automotive Group supports an "open door" atmosphere, and welcomes the efforts and ideas of all employees. The company recognizes the importance of open communication as it continues to grow and to provide greater benefits and opportunities for all.

## Employee Behavior

Employees are expected to perform their assigned duties to the best of their abilities and in the best interests of the Company. Employees are expected to treat everyone with respect, displaying courtesy and professionalism at all times. Each employee is expected to resolve differences in a professional, non-abusive manner and is responsible for his/her own behavior and understanding how others may perceive his/her conduct in the workplace.

It is important to remember that the Company is in business because of its customers. Customers should never be made to feel they are inconveniencing us. Employees must always display a pleasant attitude and professional demeanor while interacting with a customer. Employees must remember that our purpose is to solve our customers' problems in a manner that will result in a "win-win" situation for both the customer and the Company.

## Equal Employment Opportunity

Fuccillo Automotive Group is an equal employment opportunity employer, and does not discriminate against any employee, applicant, customer or vendor on the basis of race, color, gender, sexual orientation, age, religion, national origin, disability, or any characteristic protected by applicable law.

## Discrimination/Harassment Policy

The Company prohibits discrimination, harassment, or retaliation on the basis of race, color, gender, sexual orientation, age, religion, national origin, disability, or any characteristic protected by applicable law. Any employee who engages in discrimination/harassment/retaliation will be subject to disciplinary action up to and including possible termination of employment.

An individual who believes he/she is the victim of discrimination/harassment/retaliation is required to immediately report the inappropriate conduct to a manager or officer of the Company – or he/she may call the Human Resources Department @ 315-232-3222 x417. All complaints will be immediately addressed, and they will be investigated and resolved in a thorough and confidential manner.

## Sexual Harassment

The Company maintains a "zero tolerance" policy with regard to sexual harassment. Any employee – regardless of level within the company - who engages in any activity that violates the Company's sexual harassment policy will be subject to disciplinary action up to and including the possible termination of employment. Examples of inappropriate behaviors include but are not limited to:

- Unwelcome physical contact – unwanted sexual advances
- Abusive/obscene language or gestures
- Verbal/non-verbal or physical disrespectful behaviors
- Offensive jokes or stories
- Displaying of sexually explicit photographs/reading materials

Any employee who feels he/she has been a victim of sexual harassment should report the incident to his/her immediate supervisor. The supervisor/manager who receives the complaint is responsible to notify the Human Resources Department, which will then conduct a thorough and confidential investigation. All situations will be resolved in a timely manner with a fair and consistent resolution. If an employee is not comfortable reporting an incident to his/her supervisor, he/she may contact Human Resources directly @ 315-232-3222 x417.

## Fraternization Policy

The Fuccillo Automotive Group strongly believes that an environment where supervisors/salaried managers/Human Resources employees/or anyone else in sensitive or influential positions maintain clear boundaries between personal and business interactions is most effective for conducting business.

Effective immediately, employees in salaried management/supervisory/Human Resources roles are not permitted to date or enter into a personal relationship with any other employee within the organization. Employees currently in roles outlined above and currently involved in a personal relationship with another employee must disclose the existence of any relationship that has progressed beyond a platonic friendship. Disclosure must be made to their immediate supervisor and to Human Resources. This will enable the Company to determine whether any conflict of interest exists, and to work with the parties involved to consider options for resolving the situation. In some cases, certain measures may be necessary such as a transfer to other positions/dealerships. Additionally, any dealership looking to hire a relative of an existing employee of the Fuccillo Automotive Group must contact Human Resources prior to doing so, in order to insure that there will be no resulting situations that could be deemed as inappropriate or a conflict of interest.

Employees who allow personal relationships with co-workers to affect the working environment will be subject to the Company's disciplinary process. Failure to change behavior and maintain expected work responsibilities is viewed as a disciplinary matter.

Refusal by an employee of reasonable alternatives will be deemed a voluntary resignation. Continued failure to work with the Company to resolve such a situation may ultimately be deemed as insubordination and therefore serve as cause for immediate termination.

The provisions of this policy apply regardless of sexual orientation of the parties involved. Any employee who feels this policy is not being adhered to may contact the Corporate Human Resources Department.

## Open Door Communication

Fuccillo Automotive Group encourages all employees to bring any questions/concerns to its attention. Initially, employees are to bring their questions/concerns to their immediate supervisor. If an employee feels he/she did not receive an appropriate response or that his/her situation has gone unresolved, it may be brought to the attention of a member of the corporate management team and/or the Human Resources Department. The Company believes in open communication and appreciates its employees giving it the opportunity to resolve issues in a manner that reflects the best interests of all concerned.

## Supervision

Each employee is assigned to a direct reporting relationship. The individual an employee reports to is known as the employee's direct supervisor. Initially, an employee's direct supervisor will work closely with him/her to teach and train all of the aspects of the employee's new position as well as the policies and procedures of the Company. The Company encourages all employees to ask questions and seek whatever assistance is necessary in order to succeed in his/her position. While co-workers are available to assist, it is the direct supervisor that will play a vital role in providing assistance and guidance while on the job.

## Substance Abuse Policy

Fuccillo Automotive Group is committed to providing a safe and productive environment for its employees and customers. This includes a workplace that is free of the problems and risks associated with the use/abuse of alcohol, illegal drugs or non-prescribed controlled substances.

Employees are prohibited from being under the influence of alcohol or drugs while on the job, on company property, or in vehicles owned by the Company.

Selling, distributing, offering, possessing, transferring or purchasing of illegal drugs while on the job, on company property, in company vehicles or while conducting company business is strictly prohibited. Such actions will result in disciplinary action to include termination of employment. Additionally, these actions will be reported to the appropriate law enforcement officials.

Prescription drugs are to be used only by the person for which they are prescribed. An employee must notify a member of management prior to his/her work shift if he/she is taking any drug/medication that may inhibit his/her ability to work or operate equipment in a safe manner. Management – in conjunction with the Human Resources Department – will then make a decision regarding possible alternative work arrangements for the duration of the time the employee will be taking the drug/medication.

The Company drug tests all employees prior to their being promoted into a management position. Refusal to take the drug test, or failure of the drug test by the employee will result in the termination of his/her employment.

The Company reserves its right to modify its drug testing policy at any time.

Failure to adhere to these policies will result in immediate discharge.

4.

## Smoking Policy

The Fuccillo Automotive Group is committed to providing a healthy, smoke-free environment for its employees and customers. Smoking is permitted in designated outside areas only. Smoking is prohibited inside all company facilities/buildings. If an employee is unsure of where the designated area is for the facility he/she works at, his/her immediate supervisor or a member of the management team will be more than happy to direct the employee to the appropriate area. **The same applies to the use of Electronic Cigarettes and chewing tobacco.**

## Employee's "Right to Know"

All employees have the right to know about hazardous substances that are being used at the work facility or that they may encounter on the job. For further information and/or instructions please contact your supervisor or a member of the management team.

## Safety

It is important to maintain a safe working environment for employees and customers alike. Employees must follow the Company's safety standards to ensure the safety and wellbeing of all employees and customers. Every employee must take personal responsibility and ownership for safety. Please take precautions and use materials and equipment carefully. Keep your work site free from hazards.

**EVERY** accident or injury (no matter how minor an employee may perceive it to be) must be reported to the employee's supervisor immediately. An Incident Report must be completed and sent to Human Resources immediately.

Required safety procedures are as follows:

1. Smoking or use of any torch or open flame is not permitted in areas where flammable liquids, gases or combustible materials are being used or stored.

2. All combustible materials should be kept in designated areas only.

3. Always use protective eyewear and safety devices when using grinding tools or when necessary for safety's sake.

4. Do not attempt to repair or clean any electrical device WITHOUT FIRST ENSURING THAT THE POWER HAS BEEN TURNED OFF.

5. Do not attempt to use any power device that is need of repair. Disable and tag the device and immediately report the issue to the supervisor.

5.

6. Do not discard oil rags or other combustible materials in a regular trash container. Place them in the containers specifically designed for combustibles.

7. Do not climb up a ladder until you have ensured that the ladder is secured.

8. Waste materials (paper, boxes, rags or other) should be placed in a trash receptacle immediately. They should never be thrown on the floor, and proper disposal should never be delayed.

9. No heavy lifting alone – ask for assistance.

10. Drive vehicles in a safe and responsible manner.

11. Report unsafe conditions to your supervisor IMMEDIATELY. Do not assume that another employee has already reported the issue.

12. Be sure to clean up all spills immediately and in the appropriate manner.

## Driver's License

All employees who are required to drive for the Fuccillo Automotive Group are required to have a valid, unexpired driver's license. If said employee should lose his/her driver's license at any time during his/her employment, the employee must immediately report the loss to the supervisor.

Should an employee find his/her license has been suspended/revoked due to a DWI or other traffic related incident, he/she will be prohibited from operating company vehicles. The employee's immediate supervisor will inform him/her of the restrictions as they pertain to the individual's job.

The Company will perform license verification checks on a quarterly basis.

## Company Vehicles

Any employee who is assigned a company vehicle is responsible for the condition and cleanliness of that vehicle. Employees who are assigned to a vehicle are required to fill out a condition report prior to assuming responsibility for the vehicle. If a vehicle incurs damage as the result of misuse or mistreatment on the part of the employee who has been assigned to it, the repairs will be the personal responsibility of that employee. The employee will be invoiced for the required repairs. The exception is in the case of a reported accident or mechanical malfunction. In the event of a reported accident with an assigned company vehicle, the employee will be liable for all company incurred costs to repair the vehicle including

but not limited to any deductible under the company's insurance policy (current deductible limit is $1,000.00).

<u>IN THE EVENT OF AN ACCIDENT:</u>

1. Notify the police and your supervisor immediately.
2. File an accident report with the police.
3. Obtain the name, address, and telephone number of any other party involved.
4. Never drive a damaged vehicle. Call the supervisor and request a tow truck to return the vehicle to the dealership.
5. Complete a detailed accident report with your immediate supervisor. Forward the report to the corporate offices upon completion.

Employees must be 25+ years old in order to be allowed to drive a company vehicle. (Exceptions based on the business needs of individual dealerships for the following: putting gas in a vehicle, moving vehicles in/out of recon or around the lot as necessary).

Employees are prohibited from smoking in a company vehicle or a customer's vehicle.

While operating a company vehicle, all employees must abide by all local, state, and federal laws and are personally responsible for any traffic or parking tickets or fines.

The use of a company vehicle is a privilege. Misuse and/or abuse of company vehicles may result in the loss of that privilege.

## Personal Calls/Business Telephone Usage

Fuccillo Automotive Group recognizes that circumstances may result in the occasional need for employees to place or receive personal telephone calls (whether on company telephone systems or personal cell phones). However, it should be noted that the company telephone systems are intended primarily for use in conducting company business, and personal cell phone calls are not to be made while on the clock with the exception of urgent/emergency matters. It is imperative that personal telephone usage not interfere with company business. If an employee must make a personal telephone call, it should be done during non-working hours, and the length and number of the calls should be kept to a minimum. Calls utilizing company telephone systems will only be approved for emergency situations.

## Employee Personnel Files

Every employee is responsible for notifying the Human Resources Department in the event that there are changes to his/her name, address, telephone number, marital status, number of dependents or any other necessary information that pertains to the employee's record. Incomplete or outdated information could result in incorrect tax withholding, interrupted benefits for the employee and his/her family, or difficulty notifying the correct individual(s) in the event of an emergency.

Personnel files are the property of the company, and access to the information contained in them is restricted. Only those officials and representatives of the Company who have a legitimate business need to review information in a file are permitted to do so.

## Employee Communications

All required legal postings, notices, and policy changes that affect employment at Fuccillo Automotive Group are posted on the bulletin boards located in each facility. Each employee is responsible to be aware of policy changes and to stay up to date on all notices and regulations as they are posted and/or distributed.

## Introductory Period

The first 90 days of employment at Fuccillo Automotive Group is considered an introductory period for all new employees. During the introductory period, employees' qualifications are carefully evaluated by the Company. It is important that newly hired employees are able to perform the required functions of their job. Additionally, the Company believes that employees should be satisfied with the job and the work environment that they have chosen, and this introductory period gives the employee time to adjust to these as well. The successful completion of the introductory period does not – in any way – imply that there is an employment contract now in place.

## Employment Categories

It is the Company's intent to define employment classifications clearly so that every employee understands his/her employment status and benefit eligibility.
Every position is designated as exempt or non-exempt pursuant to federal and state wage and hour laws. Non-exempt employees are entitled to overtime pay under the specific provisions of these laws. Exempt employees are excluded from such overtime pay requirements.

Fuccillo Automotive Group consists of the following employment categories:

Full-time Regular – Employees who work a minimum of 35 hours per week

Part-time Regular – Employees who regularly work at least 20 hours per week but fewer than 35 hours per week.

Temporary/Seasonal – Employees who work for a specific period of time not to exceed 6 (six) consecutive months. Their hours worked are flexible.

## Work Schedules

Work schedules vary throughout the company, based on the operational needs of the business. As a result, there may be differences in starting and ending times, as well as the total number of hours scheduled to work each day and week. An employee's immediate supervisor will advise the employee of his/her individual work schedule. All employees are expected to be ready to begin work at their work stations at their scheduled time. Employees are also expected to return from breaks and lunches on time.

In order to meet the needs of our customers, it sometimes becomes necessary to work overtime. Working overtime when required is a condition for continued employment. The Company expects employees to

work overtime when requested. The Company will pay its employees for any additional hours beyond the basic work week, in accordance with federal and state laws. Supervisors reserve the right to require verification before releasing an employee from necessary overtime work.

**All overtime worked by an employee must be approved in advance by his/her immediate supervisor. Time paid for vacation or personal/sick time is not taken into consideration when calculating overtime.**

## Pay Periods and Pay Checks

The pay period runs every Wednesday through the following Tuesday. All employees will be paid by check/Direct Deposit each Friday for hours worked the previous week.

Pay checks will be distributed by 5:00pm each Friday to employees who appear in person. If an employee is unable to pick up his/her own check, it can be released to a relative provided the relative shows written authorization from the employee to do so, and has proof of identification with him/her.

## Time Cards

Employees are required to clock in/out on a daily basis. Employees must clock in at the beginning of the assigned work shift, clock out for lunch, clock in after lunch, and clock out at the end of the work shift.

Clocking in or out for another employee or allowing another employee to clock in or out for you will result in disciplinary action, to include the termination of employment.

Any hand written times (missed-punches) must be authorized by the employee's General Manager that day. Hand written time cards must be kept to a minimum.

All time cards are to be kept where the time clock is located at the store from which an employee is paid.

## Career Advancement at Fuccillo Automotive Group

Fuccillo Automotive Group makes every effort to recognize and reward individual performance. Increases in an employee's rate of pay or promotion to a new position at a higher level depends in part on the employee's level of performance in his/her current position.

Performance evaluations may be conducted at any time an employee's supervisor deems it appropriate. An employee's performance will be evaluated by his/her immediate supervisor and reviewed by the department manager. A written performance evaluation is completed to assess work performance and will not necessarily result in a wage or salary adjustment.

All matters concerning salaries paid to employees are considered to be strictly confidential. If an employee has questions or concerns regarding his/her pay, he/she should speak directly to the manager of the facility in which they are assigned to work. Employees may also contact Human Resources @ 315-232-3222 if they wish to do so.

9.

## Conduct and Discipline

Fuccillo Automotive Group is committed to a high standard of ethical and professional conduct. The Company understands that employees need to be informed of what is expected of them as employees of the Company, and that there are consequences when policies, procedures, and work rules are not adhered to.

When policies, procedures and/or work rules are violated, disciplinary action will result. Examples of disciplinary action include but are not limited to: verbal coaching, written coaching/counseling, administrative leave, and termination of employment with the company. The severity of the violation as well as the employee's overall work record is taken into consideration when considering the appropriate action to be taken.

## Employee Conduct and Work Rules

The Fuccillo Automotive Group has established reasonable rules of conduct that are necessary for the orderly, efficient, and safe operation of the business.

The list below serves only as a guideline for identifying conduct that may result in immediate termination. This list is not intended to be all-inclusive:

1. Disclosing confidential or proprietary information to unauthorized individuals.
2. The use of rude, abusive or obscene language while on company property.
3. Initiating or participating in physical altercations or offensive, threatening conduct.
4. Participating in gambling activity with other employees or with an outside 3rd party while on company property and/or during working time.
5. Treating a coworker or customer in an abusive, threatening, inflammatory or disrespectful manner.
6. Falsifying a company document – altering, falsifying, destroying, or misusing any company document to include time clock records.
7. Acts of dishonesty or theft
8. Damaging company owned machinery or equipment, wasting materials, or defacing company property.
9. Being flagrantly insubordinate; refusing to perform assigned work tasks or follow directions unless doing so would clearly violate Company policy or the law.
10. Failure to adhere to the policies of the Company with regard to harassment, alcohol and substance abuse, smoking, and safety.
11. Taking any action that would result in a complaint from a customer, supplier, or manufacturer, or that would affect the Company's reputation or business.

The list below serves as a guideline for conduct which will result in disciplinary action to include possible termination of employment depending upon the seriousness of the offense. This list is not intended to be all inclusive:

1. Repeated unexcused absences and/or tardiness
2. Failure to follow work rules or procedures
3. Failure to complete assigned work tasks in a timely manner
4. Loafing, loitering
5. Leaving the work area while on the clock without permission from/notification to the immediate supervisor.

6. Negligence or carelessness
7. Unauthorized or improper use of company property or machinery, to include the company telephone system.
8. Abuse of break or meal period privileges.
9. Refusal to accept assigned overtime.
10. Unsatisfactory work performance
11. Personal use of online social networking sites or other sites not work related while on the clock, and/or the posting of comments that disparage the Company or reveal confidential information.

Depending on the type and severity of the offense, management may give a verbal coaching to the employee to give him/her the opportunity to correct the situation before escalating through a progressive written disciplinary process. Any verbal coaching given will be documented and become part of the employee's file. All written warning notices will become part of the employee's file and be taken into consideration for the purposes of promotion, transfer, future disciplinary action, and/or continued employment.

## Violence in the Workplace

The Company will not tolerate acts of violence or threats of violence by employees in its facilities, on its property, or at company sponsored events/trips. Employees are prohibited from bringing guns or other weapons onto company property or to company sponsored events/trips including – but not limited to – weapons in vehicles in the parking lots. Violation of this policy will result in disciplinary action to include possible termination of employment. If a non-employee enters a company facility with a weapon, the authorities will be called immediately.

Participating in any physical/verbal altercation or threatening another person with bodily harm is forbidden, and will result in disciplinary action to include termination of employment. Any employee who has been a victim of workplace violence or who is aware of such conduct, should report it to his/her immediate supervisor or to Human Resources. All incident reports will be promptly investigated.

## Outside Employment

Employees of Fuccillo Automotive Group are discouraged from engaging in outside employment. If an employee chooses to work for another employer in addition to Fuccillo Automotive Group, and it is determined that this employment is adversely affecting his/her work performance or that it is in competition with Fuccillo Automotive Group, the employee will be notified that he/she is to discontinue the outside employment. If the employee does not comply, he/she will be required to forfeit his/her employment with Fuccillo Automotive Group.

## Confidential Information

During the normal course of employment, employees may come into contact with information that is confidential. This information is not to be discussed with other employees or with any individual outside the Company. Even casual conversation between employees can be overheard, and as a result may violate our clients' right to privacy. Employees must be particularly careful regarding conversation in dining areas and other public gathering places within the company. Employees are never to give personal opinions to anyone regarding a customer's condition or treatment. Should an employee receive an inquiry from anyone regarding a confidential matter, he/she is to refer the inquiring individual to the general manager of the facility.

# Dress Code

The Fuccillo Automotive Group is a professional sales and service organization. As such, it is expected that all employees will dress in a clean, professional and businesslike manner. Employees who are supplied with uniforms are required to wear them. Poor grooming and personal hygiene is not acceptable. If an employee should report to work in attire that is not acceptable, he/she may face disciplinary action and/or be asked to leave the premises for the purpose of changing his/her attire.

The following is **NOT** considered acceptable attire:

Torn or patched clothing
Halter, tube, tank tops or muscle shirts -- sleeves are required for both men and women.
Strapless dresses
Skirts and shorts must reach mid-thigh in length or longer
Shirts with slogans or large letter advertising written across the front or back


Exercise apparel -- no sweat suits, warm-up suits, or sweat pants
Suggestive clothing
Novelty buttons
No visible tattoos or body piercings
Male employees must refrain from wearing earrings during work hours
Any other attire deemed inappropriate for the business environment by management
Hair should be combed, neatly trimmed and clean
Facial hair for men should be clean and neatly trimmed .

If an employee is uncertain as to the acceptability of a piece of his/her clothing, he/she may ask the management at his/her facility if it is acceptable.

# Attendance and Punctuality

To provide the level of service that the Company's customers expect and deserve, all employees are expected to report for work at their assigned time, ready to perform their assigned tasks, and to work their schedule as written. In the event of an emergency or an illness or injury, the call-out procedure described below is to be followed:

**Absence:** It is every employee's responsibility to notify his/her supervisor PERSONALLY each day within 30 minutes of their scheduled shift. If the supervisor is not available, the employee must speak with the switchboard operator. Employees must leave a call back number where the supervisor can reach him/her, as well as the reason for the absence and an estimated return to work date. DO NOT LEAVE A MESSAGE WITH A CO-WORKER OR A FRIEND. SENDING A TEXT MESSAGE IS NOT AN ACCEPTABLE FORM OF COMMUNICATING AN IMPENDING ABSENCE OR LATENESS.

**Tardiness:** Every employee must notify both the supervisor and the switchboard operator prior to his/her scheduled starting time. Advise them of the reason for the lateness and the time you expect to arrive.

The switchboard operator should be aware of all employees' whereabouts at all times. If an employee leaves for lunch, leaves for the day prior to the end of his/her normally scheduled shift, or leaves the premises for an appointment, it is his/her responsibility to notify the operator as well as the supervisor.

Employees are required to personally call in to report absence or tardiness. Failure to do so is considered a violation of company policy and the absence/tardy will be considered unauthorized. Violations of the attendance policy may result in disciplinary action up to and including possible termination of employment. Calls from 3rd parties on behalf of an employee are ONLY acceptable in emergency situations.

Should an employee call out or arrive late repeatedly, management reserves the right to request documentation verifying the reason for the absences and/or tardiness. Failure to provide the requested documentation will result in termination of employment.

If an employee is absent without notifying the company for three (3) or more consecutive workdays, it will be considered job abandonment.

## Solicitation and/or Distribution of Literature

Solicitation and/or distribution of materials by outside organizations or individuals on company property (buildings or surrounding grounds) is forbidden.

Employees may distribute information only after obtaining the approval of the facility manager, and only during non-working hours in non-work areas.

This policy applies to all forms of solicitation and distribution and is in place to protect the privacy of our employees and the productivity of the Company. Any questions regarding this policy may be referred to the Human Resources Department.

Violation of this policy by outside individuals will subject them to arrest. Employees who are in violation of this policy will be subject to disciplinary action up to and including termination.

## Company Benefits

Fuccillo Automotive Group is pleased to provide the following benefits to eligible employees. Eligibility requirements for each benefit are listed in the individual policies.

Please contact Human Resources for additional information regarding the plans and benefits available, as well as the conditions for participation.

## Medical Insurance

All full-time regular employees are eligible to enroll in the medical insurance plan with an effective date of the first of the month following 60 days of service. Coverage is available for employees and their dependents. For additional questions regarding the medical plan, employees should contact Human Resources @ 315-232-3222.

## Continuation of Coverage (COBRA)

In certain situations, most employers who sponsor group medical plans are required by federal law to offer employees and their families group rates for the temporary extension of medical coverage (COBRA) where coverage under the plan would otherwise end.

At the time an employee enrolls in the plan and again when coverage would normally cease, Fuccillo Automotive Group will provide additional information regarding continuation coverage. If an employee would like additional information regarding COBRA regulations, please contact the Human Resources Department.

## Dental Coverage

Dental coverage is available to all full-time employees on the first of the month following 90 days of service. The employee is responsible for 50% of the premium. For additional information about the plan, employees may contact the Human Resources Department.

## Life and AD&D Insurance

Group Life Insurance is provided for all eligible employees. Coverage amounts will be explained at the time the employee becomes eligible for coverage.

All full-time regular employees are eligible for coverage following 90 days of continuous employment. Fuccillo Automotive Group pays 100% of the cost for this coverage.

## 401(K) Plan

Fuccillo Automotive Group has established a qualified defined contribution 401(K) employee savings plan to provide a retirement benefit and/or an opportunity to save for retirement on a tax deferred basis for eligible employees. Employees' contributions to the plan are 100% vested. Fuccillo Automotive Group also provides an Employer matching contribution of 10% of the first 5% of a participant's elected salary deferral contribution. Employer match contributions become 100% vested over a five year vesting schedule.

All employees who are at least 21 years of age are eligible to participate in the plan after completing one year of service. Employees will be notified as they become eligible to participate, and can obtain information about the Plan from the HR Department and the Plan Administrator.

The assets of the Plan are held in a trust which is completely separate from the Fuccillo Automotive Group. The Plan is designed to meet requirements of the Internal Revenue Service to provide tax deferral treatment of participants' contributions and investment earnings. Compliance with IRS regulations pertaining to contributions, investment options, distributions, and rollovers is required.

## Short Term Disability

If an employee is unable to work for more than seven (7) days as the result of an illness or injury unrelated to his/her employment, he/she may be eligible to receive partial replacement of lost wages. The illness/injury must be verified by a physician and the appropriate disability insurance paperwork must be completed in a timely manner.

**While an employee is out on leave, it is his/her responsibility to make arrangements with the Company to continue paying his/her share of the medical insurance premium.** The Company will

maintain an employee's medical insurance coverage for a period of 12 weeks if the employee is qualified under the Family Medical Leave Act. If the employee is not qualified under the Act, the company will maintain the employee's medical insurance coverage for the remainder of the month in which the employee first went out on disability. At the end of that time period, the employee will be given the opportunity to continue his/her medical coverage per COBRA regulations.

## Workers' Compensation

Each employee is protected by the Workers' Compensation Act of New York State. If an employee suffers a work related injury or illness, he/she is eligible for partial income replacement and for payment of medical costs incurred as a result. Fuccillo Automotive Group pays the full premium for this coverage as part of the employee benefits program.

While an employee is out on Workers' Compensation leave, **it is his/her responsibility to make arrangements with the Human Resources Department to continue paying his/her share of the medical insurance premium.**

The Company will maintain an employee's medical insurance coverage for a period of 12 weeks if he/she qualifies under the FMLA. If an employee does not qualify under FMLA, the Company will maintain the employee's medical insurance for the remainder of the month in which he/she first went out on Workers' Compensation. At the end of that time period, the employee will be given the opportunity to continue his/her medical coverage through COBRA regulations.

## Vacation

Fuccillo Automotive Group recognizes the importance of a work life balance. The Company understands that employees need time to rest and relax and, as such, offers paid vacation time to eligible employees.

Full-time regular employees are eligible for paid vacation time as follows:

Vacation is allocated each year on the anniversary of an employee's date of hire. Vacation is based on the employee's length of service on the anniversary date. A paid vacation day is based on the number of hours normally worked in one day. Employees are eligible for vacation based on the following schedule:

| Completed Years of Service | Vacation Days Allowed |
|---|---|
| 1 year | 5 days |
| 2 years | 10 days |
| 7 years | 15 days |
| 15 years | 20 days |

If a designated holiday falls during an employee's vacation period, the employee will be entitled to another vacation day equal to the number of hours the employee normally works in a day. If an employee becomes ill or disabled during his/her vacation period, it is not permissible to substitute sick time for vacation time unless the employee becomes hospitalized.

Employees are encouraged to take at least five (5) consecutive days of vacation in the same timeframe.

Employees must submit vacation requests to their supervisor as early as possible. In the event of conflicting requests, the supervisor will exercise his/her discretion in scheduling the vacations, taking into consideration the date of the request, seniority and length of employment, and business need.

Employees are required to take at least five (5) physical vacation days per year. Per an employee's request, vacation earned but not taken above the initial five (5) days and up to a maximum of fifteen (15) days can be paid out prior to the employee's anniversary date. Requests for vacation payouts must be made in advance to the Human Resources Department. Management will determine when the payment will be made. Vacation cannot be carried forward into the next anniversary year.

Unused vacation time will not be paid to an employee upon termination of employment – voluntary or otherwise.

## Holidays

Fuccillo Automotive Group observes the following holidays:

New Year's Day
Easter
Memorial Day
4th of July
Labor Day
Thanksgiving Day
Christmas Day

In addition to the holidays listed, Fuccillo Automotive Group is only open for a ½ day on Christmas Eve.

 If any of these days fall on an employee's regularly scheduled day off, no additional holiday pay will be given.
If any employee wishes to be scheduled off on a holiday that is not listed above, he/she must put in a request for time off through his/her supervisor and use Personal/Sick or Vacation time they have accrued. After 90 days of continuous employment, all full-time employees will be paid for designated holidays according to the following guidelines:

1). Holiday pay shall be equivalent to the amount of base pay you normally would have earned on that day – **not to exceed 8 hours maximum.**

2). In order to be paid for a holiday, you must be at work on the scheduled workday before and the scheduled workday after the holiday, unless on a pre-approved paid day off. (Ie: if you call in sick the day before or the day after a holiday, you will not be paid for the holiday.)

3). Pay in Lieu of the holidays will not be granted.

## Personal/Sick Pay

Fuccillo Automotive Group grants paid time off to employees so they may tend to personal business, illness, or injury. Personal/sick time is available to all full time employees after 90 days of continuous employment. Time is pro-rated according to the following schedule:

**Hire Date:**                        **Personal/Sick Time Allowance**

| | |
|---|---|
| **January-March** | **5 days** |
| **April-June** | **4 days** |
| **July-August** | **1 day** |

Thereafter, on January 1st of each year, all full-time regular employees will receive five (5) days of personal/sick time for use during the calendar year (once the employee has completed 90 days of service as a full-time employee – service as a part-time or temporary employee will not count toward the 90 day period). This time is to be used during the workweek to accomplish personal business that cannot be taken care of during non-work time, or for illness or injury. It is not intended as time to be saved and used as vacation or in conjunction with a holiday.

Personal/sick time must be arranged in advance with a supervisor and cannot be carried over to the following year. The company will not make payment in lieu of taking time off. Unused personal/sick time will not be paid out at time of termination of employment – voluntary or otherwise.

## Bereavement Leave

Fuccillo Automotive Group provides employees with up to three (3) days of paid time off to attend the funeral services of an immediate family member. Immediate family member is defined as spouse or domestic partner, parent, in-laws, child, grandparent, grandchild, brother, sister, step-parent or stepchild.

In the event of the death of an extended family member, an employee will be granted one (1) day of paid time off to attend funeral services for approval from management.

All employees are eligible for bereavement pay upon completion of 90 days of continuous employment from date of hire. Part-time employees will be allowed a pro-rated amount of time when taken on a regularly scheduled workday. The amount of time will be based on the number of work hours that had been scheduled for that day.

Employees are to notify their immediate supervisor of the need to take bereavement leave as soon as possible. Management reserves the right to request documentation supporting the request, (ie: a copy of the obituary).

## Jury Duty

In the event that any employee – FT or PT – is summoned to report for jury duty, the employee must provide the company with a copy of the summons. Absence for jury duty will be considered an excused absence. The company will pay the required stipend for the first three (3) days of jury duty if those days are scheduled work days for the employee. If the employee is required to report for jury duty for more than three (3) days, the required stipend will be paid by the court. The employee is required to report to work for the remainder of any day that he/she is not required to be present in court.

## Military Leave

Employees who serve in the uniformed services of the United States will be given time off to fulfill their obligation and will retain all of their employment rights at Fuccillo Automotive Group. They may also use available vacation time during their absence but are not required to do so.

Employees intending to take military leave must notify their supervisor right away. Documentation (such as military orders) will be required. Company benefits will continue during military leave, the same as they

would under the leave of absence policy listed in this handbook. At the time an employee requests his/her military leave, he/she will be notified of his/her responsibilities for continuing his/her benefits while out on leave.

In order to re-apply for employment, an employee must have been honorably discharged as outlined in the Uniformed Services Employment and Reemployment Rights Act and submit written intent to do so. For further information regarding military leave, employees may contact the Human Resources Department.

## The Family and Medical Leave Act of 1993

The FMLA entitles eligible employees to take up to 12 workweeks of unpaid, job protected leave in a 12 month period for specified family and medical reasons, or for any "qualifying exigency" arising out of the fact that a covered military member is on active duty, or has been notified of an impending call or order to active duty, in support of a contingency operation. The FMLA also allows eligible employees to take up to 26 workweeks of job-protected leave in a "single 12 month period" to care for a covered service member with a serious injury or illness.

To be eligible for FMLA benefits, an employee **must**:

-Work for a covered employer
-Have worked for the employer for a total of 12 months
-Have worked at least 1,250 hours over the previous 12 months
-Work at a location where at least 50 employees are employed by the employer within 75 miles

Fuccillo Automotive Group grants eligible employees up to a total of 12 workweeks of unpaid leave during any 12 month period for one or more of the following reasons:

-Birth and care of a newborn child of the employee
-For placement with the employee of a son or daughter for adoption or foster care
-To care for a spouse, son, daughter or parent with a serious health condition
-To take medical leave when the employee is unable to work because of a serious health condition
-For qualifying exigencies arising out of the fact that the employee's spouse, son, daughter, or parent is on active duty or call to active duty status as a member of the National Guard or Reserves in support of a contingency operation.

Employees seeking to use FMLA leave are required to provide 30 day advance notice of the need to take FMLA leave when the need is foreseeable and such notice is practicable -- generally either the same or next business day. When the need for leave is not foreseeable, the employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case.

Fuccillo Automotive group may require that an employee's requests for FMLA leave due to a serious health condition affecting the employee or a covered family member be supported by a certification from a health care provider. The Company may require second or third medical opinions (at the Company's expense) and periodic recertification of a serious health condition. The Company may use a human resource professional or a member of management (other than the employee's direct supervisor) to authenticate or clarify a medical certification of a serious health condition. Failure on the part of the

employee to obtain a second or third medical opinion when requested, will result in denial of the request for leave.

Leave may be granted on an intermittent or reduced-schedule basis if the nature of the medical condition and the scheduling of medical treatment requires it. For example, chemotherapy or radiation treatment for cancer patients.

Leave to care for a new child must be completed within 12 months of the birth or placement of the child. If a husband and wife are both employed by Fuccillo Automotive Group at the time of the birth or placement of a child, no more than a total of 12 weeks of leave will be granted to the couple. This also holds true when leave is required to care for an ill parent.

The Company will maintain group health insurance coverage for an employee on FMLA leave. The Company will pay its share of the employee's health care premium, and the employee must make arrangements with the Human Resources Department to continue paying his/her share of the premium. Failure on the part of an employee to pay his/her share of the premium could result in the loss of the employee's health insurance benefits while on leave.

Employees are required to use available sick/personal, vacation, or banked time while on leave to care for a new child. If the leave is to care for a sick child, parent, or spouse or for the employee's own illness, available sick time must be used. If the leave is taken because of the employee's own serious health condition for which he/she is receiving workers' compensation, disability, or other income replacement benefits, paid leave cannot be used.

While on leave, employees are required to contact Human Resources at least once every two (2) weeks.

When leave is taken as a result of an employee's illness, he/she must present a "release to work" from the attending physician in order to return to work.

Upon return from FMLA leave, an employee will be returned to his/her original job or to an equivalent job with equivalent pay, benefits, and other terms and conditions of employment. The only exception to this policy of restoration may be made for salaried employees who are within the top 10% most highly compensated employees of Fuccillo Automotive Group.

Whenever there is a question of definition of a term used in this policy, the definitions used in FMLA regulations will apply.

## Conclusion

Separation from Employment:

Should an employee decide to resign from Fuccillo Automotive Group, the Company requests at least 2 weeks' written notice be given. Employees who resign or are discharged will receive their final paycheck on the next scheduled pay. No payment will be made for unused vacation or personal/sick time.

If you have a question that is not addressed in this handbook or if you would like further information regarding any of the policies/procedures contained within this handbook, please reach out to your immediate supervisor or to the Human Resources Department @ 315-232-3222 x410, 414, 417, or 408.