UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TRISHAUNA WALSH o/b/o
S.J.W.
SSN: XXX-XX-2899,

                Plaintiff,

**COMPLAINT**

      -against-

**Civ. No.**

CAROLYN W. COLVIN, in her Official
Capacity as Acting Commissioner of the
Social Security Administration,

                Defendant.

_____

Plaintiff, by his attorneys, the Legal Aid Society of Northeastern New York, Inc., comes before this Court and alleges:

### I.  Preliminary Statement

1.  This is an action brought by an applicant for Supplemental Security Income benefits. Plaintiff seeks a reversal of a final decision of the defendant denying plaintiff benefits under Title XVI of the Social Security Act in that the decision of the Administrative Law Judge was not based on substantial evidence and because the Administrative Law Judge committed errors of law.

### II.  Jurisdiction

2.  Jurisdiction is conferred upon this Court by 42 U.S.C. Sections 405(g) and 1383(c)(3), as there has been a final decision by the defendant, the Commissioner of the Social Security Administration, made after a hearing to which the Commissioner was a party, which bears the following caption:

In the case of:

S.J.W.                                          Supplemental Security Income
                                                XXX-XX-2899
                                                (Social Security Number)

3.     This action is brought in the District Court for the judicial district in which the plaintiff resides.

### III.  Parties

4.     Plaintiff, S.J.W. (SSN: XXX-XX-2899), is a citizen of the United States and a resident of the Town of Milton, County of Saratoga, State of New York 12020.

5.     Defendant, Carolyn W. Colvin, is the Acting Commissioner of the Social Security Administration and is responsible for deciding the eligibility of claimants for disability benefits pursuant to 42 U.S.C. Section 3583(c)(1) and Section 405(b), which is made applicable to Title XVI by Section 1383(d)(1).

### IV.  Factual Allegations

6.     Plaintiff is a twelve year old child whose date of birth is in 2004.

7.     Plaintiff filed an application for Supplemental Security Income benefits under Title XVI on or about November 25, 2009.

8.     The Social Security Administration denied the application on or about March 8, 2010.

9.     On or about March 12, 2010, plaintiff filed a timely request for a hearing before an Administrative Law Judge to challenge the denial and on March 30, 2011, plaintiff had a hearing before Administrative Law Judge Carl E. Stephan in Albany, New York.  Plaintiff and his mother appeared at the hearing, although plaintiff refused to speak and offered no testimony

in support of the claim.

10.     By decision dated April 25, 2011, the Administrative Law Judge upheld the decision of the Social Security Administration denying plaintiff's application for Supplemental Security Income benefits.  Attached as Exhibit A is a copy of the April 25, 2011, decision.

11.     On or about June 8, 2011, plaintiff made a timely request to the Appeals Council of the Social Security Administration to review the decision of the Administrative Law Judge.

12.     By Notice of Appeals Council Action and Order of Appeals Council, dated April 3, 2012, and received by plaintiff's attorneys on April 10, 2012, the request for review was denied.   A the Notice and Order with date stamp is attached as Exhibit B.

13.     Plaintiff filed a civil action in the Northern District of New York on June 8, 2012. By Decision and Order and Judgment, dated March 25, 2014, and authored by District Judge William G. Young, the unfavorable decision was reversed and the matter was remanded for further administrative proceedings. Judge Young directed the hearing officer to consider the opinions of the plaintiff's pediatrician, Eugene Merecki, M.D. and Alison Guerin, M.S., CCC-SLP, a NYS Licensed Speech and Language Pathologist, in light of the treating source rule; to re-evaluate the credibility of plaintiff's mother Trishauna Walsh; and to re-evaluate whether the plaintiff's hearing impairment medically equals section 102.10(B)(3).

14.     A second administrative hearing was held in this matter on June 2, 2015, before Administrative Law Judge Carl E. Stephan in Albany, New York.  Plaintiff and his mother testified at the hearing.   By decision dated August 13, 2016, the Administrative Law Judge upheld the decision of the Social Security Administration denying plaintiff's application for Supplemental Security Income benefits. Attached as Exhibit C is a copy of the August 13, 2015,

decision.

15. On or about September 17, 2015, plaintiff filed written exceptions to the August 13, 2015, decision. By letter and Order of Appeals Council, dated September 16, 2016, mailed on September 27, 2016, and received by plaintiff's counsel on September 30, 2016, the Appeals Council refused to accept jurisdiction, making the decision dated August 13, 2015, the final decision of the Commissioner of Social Security. A copy of the letter and Order with date stamp and envelope is attached as Exhibit D.

16. Plaintiff has exhausted his administrative remedies.

17. Plaintiff has been diagnosed with mild to moderately severe bilateral hearing loss which has resulted in hearing difficulty and delayed speech pattern. Plaintiff's hearing loss is permanent and most likely due to nerve damage which cannot be corrected by surgery.

18. In conjunction with the remand proceeding, plaintiff was examined on February 23, 2014, by John Cevera, MD and Julie C. Hanson, AuD, CCC-A, of Capital Region Otolaryngology Head and Neck Group, LLP, located in Albany, New York. The testing performed included Air, Bone, Speech Reception Threshold (SRT), Speech Discrimination and Tympanometry. Test results were described as follows:

> Bilateral results showed moderate to moderately-severe in the right ear and mild to moderate in the left ear, sensorineural loss from 500 to 8000 Hz. A Speech Reception Threshold (SRT) was obtained at 45 dB in the right ear and 45 dB in the left ear. Speech discrimination ability was 100% in the right ear and 100% in the left ear. Tympanometry revealed a type As tympanogram in the right ear and a type As tympanogram in the left ear.

19. Education records and the testimony of plaintiff's mother at both the March 30, 2011, and June 2, 2015, hearings indicate plaintiff needs multiple accommodations in the

classroom to assist him academically. He has an FM system to assist him to hear instructions; he has preferential seating at the front of the classroom; his teachers must stand facing him and not be standing in front of a window so he can read their lips; he has a one-on-one aide who finger spells in sign language to him and pulls him out of the classroom to assist him with the material; he is given extra time for testing and tested in a separate location for tests over thirty minutes. His Individualized Education Program (IEP) for the 2014-2015 school year placed him in a 12:1:1 classroom for language arts and math; pulled him out of class for speech/language therapy two times per week; and provided hearing services both in the classroom and at a special location. Despite these accommodations, his academic performance has been consistently below grade level expectations or inconsistently meeting grade level expectations.

20. As a result of plaintiff's hearing disorder, his expressive language skills are poor and he has difficulty with sentence structure. Plaintiff requires continued intervention to develop his articulation and expressive language skills. Testing of his expressive language skills placed plaintiff in the 1 percentile and his core language skills in the 2 percentile. The Clinical Evaluation of Language Fundamentals - Fourth Edition (CELF-4) administered October 9, 2010, and again on October 1, 2013, demonstrated plaintiff's expressive language and language structure skills were two standard deviations below the mean.

21. In the Confidential Psychoeducational Reevaluation report dated 10/13/2010, plaintiff's verbal intelligence quotient (VIQ) of 72 fell within the borderline range indicating significant difficulty with his ability to understand, retrieve, reason and express himself through oral language. When retested three years later, plaintiff's full scale IQ score of 82 continued to place him in the low average range and crystallized knowledge score of 79 placed him in the 8th

percentile and borderline range of intelligence. Administration of the Wechsler Individual Achievement Test®–Third Edition (WIAT®–III) on 09/20/2013, demonstrated plaintiff "performed within the below average range for all areas of achievement."

## FIRST CLAIM FOR RELIEF

22. The Administrative Law Judge committed reversible error in failing to find plaintiff's hearing loss and speech and language delays when combined with plaintiff's borderline intellectual functioning establishes medical equivalence with the listing found at 20 CFR Part 404, Subpart P, App. 1 at Section 102.10(B)(3).

## SECOND CLAIM FOR RELIEF

23. Although the Administrative Law Judge correctly found plaintiff has marked impairment in the domain of interacting and relating with others, the Administrative Law Judge committed reversible error in failing to find plaintiff has marked impairment in the domain of acquiring and using information.

## THIRD CLAIM FOR RELIEF

24. The Administrative Law Judge committed error in failing to seek clarification from plaintiff's pediatrician Eugene Merecki, M.D. of any inconsistencies in his medical source statements of January 6, 2010, and March 25, 2010, and in failing to seek an explanation from Dr. Merecki of his assessment plaintiff was delayed in several domains.

## FOURTH CLAIM FOR RELIEF

25. The Administrative Law Judge committed error in failing to address and re-evaluate the credibility of plaintiff 's mother who believes her son's hearing loss, speech and language delays and cognitive functioning support a finding of disability.

## FIFTH CLAIM FOR RELIEF

26.    The decision of the Administrative Law Judge is against the substantial weight of the evidence and is incorrect as a matter of law.

WHEREFORE, plaintiff respectfully requests that this Court:

a.    Reverse the decision of the defendant denying plaintiff Supplemental Security Income benefits pursuant to Title XVI of the Social Security Act and order a calculation of benefits in accordance with the requirements of the Social Security Act;

b.    Alternatively, vacate the decision of the Administrative Law Judge and remand the matter for a de novo hearing;

c.    Grant the plaintiff reasonable attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412(d)(1)(a); and

d.    Order such other and further relief as it may deem just and proper.

Dated: November 28, 2016

Mary M. Withington, Esq., of Counsel
LEGAL AID SOCIETY OF NORTHEASTERN
    NEW YORK, INC.
Attorneys for Plaintiff
Bar Code No. 301226
40 New Street
Saratoga Springs, New York 12866
(518) 587-5188

Refer To: ████2899

Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
6th Floor
74 North Pearl Street
Albany, NY 12207

Date: April 25, 2011

Trishauna L Walsh on behalf of

████████

Ballston Spa, NY 12020

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

### If You Disagree With My Decision

If you disagree with my decision, you may file an appeal with the Appeals Council.

### How To File An Appeal

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

> Appeals Council
> Office of Disability Adjudication and Review
> 5107 Leesburg Pike
> Falls Church, VA 22041-3255

### Time Limit To File An Appeal

You must file your written appeal within 60 days of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

Exhibit A
See Next Page

Form HA-L76-OP2 (03-2010)



## What Else You May Send Us

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal.** Sending your written statement and any new evidence with your appeal may help us review your case sooner.

## How An Appeal Works

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

## The Appeals Council May Review My Decision On Its Own

The Appeals Council may review my decision even if you do not appeal. If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

## When There Is No Appeals Council Review

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

## New Application

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all. If you disagree with my decision, you should file an appeal within 60 days.

## If You Have Any Questions

We invite you to visit our website located at www.socialsecurity.gov to find answers to general



Form HA-L76-OP2 (03-2010)



questions about social security. You may also call (800) 772-1213 with questions. If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office. Please have this notice and decision with you. The telephone number of the local office that serves your area is (866)964-1296. Its address is:

Social Security
One Broadway Center
8th Floor
Schenectady, NY 12305

Carl E Stephan
Administrative Law Judge

Enclosures:
Decision Rationale
Form HA-L39 (Exhibit List)

cc:    Mary Withington
       112 Spring Street
       Suite 109
       Saratoga Springs, NY 12866

SOCIAL SECURITY ADMINISTRATION
Office of Disability Adjudication and Review

DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| ████████ | Supplemental Security Income |
| (Claimant) | |
| | ████2899 |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On November 25, 2009, an application for supplemental security income was filed on behalf of the claimant, a child under age 18, with an alleged disability onset date of November 25, 2009. The claim was denied initially on March 8, 2010. Thereafter, the claimant filed a written request for hearing on March 12, 2010 (20 CFR 416.1429 *et seq.*). Trisauna Walsh, the claimant's mother, appeared and testified on behalf of the claimant at a hearing held on March 30, 2011, in Albany, NY. The claimant is represented by Mary Withington, an attorney.

## ISSUES

The issue is whether the claimant is disabled under section 1614(a)(3)(C) of the Social Security Act. An individual under the age of 18 will be considered disabled if he has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Notwithstanding the above, no individual under the age of 18 who engages in substantial gainful activity may be considered to be disabled.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912(d).

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act since November 25, 2009, the date the application was filed.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled (20 CFR 416.924(a)).

See Next Page


At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity. Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in substantial gainful activity (20 CFR 416.974 and 416.975). If the claimant engages in SGA, he is not disabled regardless of his medical condition(s), age, education, or work experience (20 CFR 416.924(b)). If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.924(a)). For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations (20 CFR 416.924(c)). If the claimant does not have a severe medically determinable severe impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment(s), the analysis proceeds to the third step (20 CFR 416.924(a)).

At step three, the undersigned must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing, or that functionally equals the listings. In making this determination, the undersigned must consider the combined effect of all medically determinable impairments, even those that are not severe (20 CFR 416.923, 416.924a(b)(4), and 416.926a(a) and (c)). If the claimant has an impairment or combination of impairments that meets, medically equals or functionally equals the listings, and it has lasted or is expected to last for a continuous period of at least 12 months, he is presumed to be disabled. If not, the claimant is not disabled (20 CFR 416.924(d)).

In determining whether an impairment or combination of impairments functionally equals the listings, the undersigned must assess the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. In making this assessment, the undersigned must compare how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments. To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain (20 CFR 416.926a(d)).

In assessing whether the claimant has "marked" or "extreme" limitations, the undersigned must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe (20 CFR 416.926a(a)). The undersigned must consider the interactive and cumulative effects of the claimant's impairment or multiple impairments in any affected domain (20 CFR 416.926a(c)).





Social Security regulation 20 CFR 416.926a(e)(2) explains that a child has a "marked limitation" in a domain when his impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. A child's day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. The regulations also explain that a "marked" limitation also means:

1.  A limitation that is "more than moderate" but "less than extreme."

2.  The equivalent of functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

3.  A valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score.

4.  For the domain of health and physical well-being, frequent episodes of illnesses because of the impairment(s) or frequent exacerbations of the impairment(s) that result in significant, documented symptoms or signs that occur: (a) on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more; (b) more often than 3 times in a year or once every 4 months, but not lasting for 2 weeks; or (c) less often than an average of 3 times a year or once every 4 months but lasting longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

Social Security regulation 20 CFR 416.926a(e)(3) explains that a child has an "extreme" limitation in a domain when his impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities. A child's day-to-day functioning may be very seriously limited when his impairment(s) limits only one activity or when the interactive and cumulative effects of his impairments(s) limit several activities. The regulations also explain that an "extreme" limitation also means:

1.  A limitation that is "more than marked."

2.  The equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean.

3.  A valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score.

See Next Page


4. For the domain of health and physical well-being, episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

1. The claimant was born on ▬▬▬▬2004. Therefore, he was a preschooler on November 25, 2009, the date application was filed, and is currently a preschooler (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since November 25, 2009, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairment: moderately severe bilateral neural hearing loss (20 CFR 416.924(c)).

The medical evidence of record shows that the claimant was born on October 30, 2004 with a moderate hearing loss. The claimant has been wearing hearing aids since age 2. On September 28, 2006, he was fitted with new hearing aids. Real ear speech mapping was performed and showed appropriate gain measures (Exhibit 3F).

In report dated January 6, 2010, Dr. Eugene Merechi, his primary care physician, stated that the claimant's bilateral neural hearing loss has been moderate since birth documented on CT scan of the temporal bones. He has a delayed speech pattern and he is unable to speak clearly. He has temper tantrums out of frustration with not being able to hear and understand. Dr. Merechi stated that his sensory abilities, communication skills, and emotional skills are delayed. However, his cognitive skills and fine/gross motor skills are age-appropriate (Exhibit 4F).

In 2009-2010, the claimant was in regular classes in kindergarten and he participates with related services of speech/language therapy, and teacher of the deaf and hard of hearing services. He also receives academic intervention services in reading. He is currently classified as a student with a Hearing Impairment. He wears hearing aids in both ears and his teachers use an FM system to facilitate his hearing.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals Listing 102.10 of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

4. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).

Based on the requirements of 20 CFR 416.924a(a) and SSR 09-2p, the undersigned has considered all of the relevant evidence in the case record. "All of the relevant evidence" includes objective medical evidence and other relevant evidence from medical sources; information from





other sources, such as school teachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all settings (i.e., at home, at school, and in the community).

As provided in 20 CFR 416.926a(b) and (c) and explained in SSR 09-1p, the undersigned has evaluated the "whole child" in making findings regarding functional equivalence. The undersigned has first evaluated how the child functions in all settings and at all times, as compared to other children the same age who do not have impairments. The undersigned has also assessed the interactive and cumulative effects of all of the claimant's medically determinable impairment(s), including any impairments that are not "severe" in all of the affected domains. In evaluating the claimant's limitations, the undersigned has considered the type, extent, and frequency of help the claimant needs to function.

In determining the degree of limitation in each of the six functional equivalence domains, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929, SSRs 96-4p and 96-7p. The undersigned has considered the opinion evidence in accordance with 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant's mother testified that the claimant has a hearing loss and speech delays, and he can hear with hearing aids that he wears most of the time. She further testified that he received Early Intervention at two years old and was classified as special education not learning disabled. She alleged that his speech is understandable but he is hard to understand when he gets excited and laughs. She reported that he receives speech therapy at school and occupational therapy as well as assistance in reading. She alleged that he has friends at school and eats lunch with everyone. She testified that he bowls and plays video games. She alleged that he does not get along with his brothers because of communication problems. She reported that he wets his bed. She testified that an audiologist stated that his hearing would not get better but could get worse and that "surgery is not an option."



While the claimant did not "testify", he could hear and understand me. He nodded and shook his head when I spoke to him. He was shy, but he heard what was going on.

Although the claimant's mother testified that an audiologist stated that his hearing would not get better and could get worse, this is speculative in nature. Dr. Cevera, State agency physician, considered his current hearing loss as moderately severe in both ears, but noted that there was some improvement with his hearing aids. Dawn Grasso-Megyeri, speech and language pathologist, noted only mild articulation delay. She stated that he appears to receive benefit from his hearing aids and he was able to understand and follow directions during the evaluation. Indeed, she felt that speech and language therapy services were not recommended at this time. Furthermore, despite the alleged problems getting along with his brothers due to communication problems, school records and reports from his teachers indicate that he has no problems getting along with his peers at school and teachers. The claimant's mother alleged that he was classified as special education, but the record shows that in kindergarten he was in regular classes and he continues to be in regular classes with assistance in reading and speech therapy. Individualized Education Program 2010-2011 classified him as Hearing Impaired.

On February 9, 2010, the claimant underwent speech and language evaluation by Dawn Grasso-Megyeri, M.S. CCC-SLP. At the time of the evaluation, the claimant was 5 years, 3 months old. His speech and language developmental milestones were reported to have been met within normal limits with his ability to begin using small words at one year of age. He currently wears bilateral Oticon Vigo hearing aids and his hearing is checked every six months at Audiological Department in Sunnyview Rehabilitation Hospital. He also uses an FM system. In a quiet setting, with his hearing aids on, he was able to respond appropriately through audition only. The Preschool Language Scale, Fourth Addition (PLS-4) was administered to assess receptive and expressive language skills. He received the following results: auditory comprehension standard score of 91, 27th percentile, age equivalent of 4 years 9 months; expressive communication standard score of 87, 19th percentile and age equivalent of 4 years, 5 months; and total language standard score of 88, 21st percentile, and age equivalent of 4 years, 7 months. Ms. Grasso-Megyeri stated that the results obtained at this time indicated that his expressive and receptive language skills are developing within normal limits. He was cooperative and attentive through testing, and the results obtained at this time appear to be true and valid. The Goldman-Fristoe Test of Articulation-2 was also administered to assess articulation skills at the work level. He obtained a Raw Score of 60 and Standard Score of 93, 26th percentile, and age equivalent of 4 years, 1 month. The substitutions and admissions were noticeable in his speech; however, they did not significantly impact on his intelligibility at the time of his evaluation in both known and unknown context. Both in and out of context, his speech intelligibility was considered very good at 95% of the time.

In a medical source statement, Ms. Grasso-Megyeri opined that at the time of the evaluation, he was able to communicate effectively, using appropriate vocal quality, fluency, and articulation. He was able to understand and follow directions and make his wants and needs known. He appears to have received good benefit from his hearing aids. The results obtained on language testing indicated that he his expressive and receptive language skills are developing within normal limits. He did present with some articulation errors; however, they did not significantly impact on his intelligibility at this time. Therefore, the results obtained at this time do not appear





to be significant and, as such, are not consistent with the claimant's allegations. Ms. Grasso-Megyeri rendered a diagnosis of mild articulation and his prognosis is judged to be good (Exhibit 6F).

As for the opinion evidence, significant weight is given to the opinion of Dawn Grasso-Megyeri, M.S. CCC-SLP since her opinion is consistent with reports from his first grade teacher and reading teacher, and the March 17, 2011 report from Kathy Hyndman, BOCES, Teacher of Deaf/HH. The claimant's first grade report card shows that he has been very responsive to a 1:1 situation with sign language; and his first grade teacher is hoping to see him utilize the sign language more in the classroom setting. Ms. Hyndman has recommended increasing the services of the teacher of the Deaf/Hard of Hearing, utilizing receptive and expressive signing both in the classroom and in 1:1 work outside the classroom. The recommendation is to go from three 30 minutes per week in the classroom to six 30 minutes per week, and from three 30 minutes per week outside of the classroom to four 30 minutes per week (Exhibit 12E).

I have considered the October 2010 speech and language evaluation by Ms. Guerin, speech pathologist, who indicated that his problems with intelligibility were based on errors in conversational speech that negatively affect his speech intelligibility. However, Ms. Guerin noted that he spoke very low, which contributed to his decreased intelligibility. Furthermore, Ms. Grasso-Megyeri noted that although the substitutions and omissions in initial, medial, and final sounds were noticeable in his speech, they did not significantly impact on his intelligibility in both known and unknown context. She assessed his speech intelligibility both in and out of context as very good at 95% of the time. It is also noteworthy that the testing by Ms. Grasso-Megyeri was done in a quiet setting and he was able to respond appropriately with his hearing aids only.

In terms of the six functional equivalence domains, the undersigned finds the following regarding limitations caused by the claimant's impairments:

### a. Acquiring and Using Information

Acquiring and using information concerns how well a child is able to acquire or learn information, and how well a child uses the information he has learned. This domain involves how well children perceive, think about, remember, and use information in all settings, which include daily activities at home, at school, and in the community (20 CFR 416.926a(g) and SSR 09-3p).

Social Security rules provide that a preschooler (i.e., a child age 3 to attainment of age 6) without an impairment should begin to learn and use the skills that will help him to read and write and do arithmetic when he is older. For example, listening to stories, rhyming words, and matching letters are skills needed for learning to read. Counting, sorting shapes, and building with blocks are skills needed to learn math. Painting, coloring, copying shapes, and using scissors are some of the skills needed in learning to write. Using words to ask questions, give answers, follow directions, describe things, explain what he means, and tell stories allow the child to acquire and share knowledge and experience of the world around him. The child should be able to understand the order of daily routines (e.g., breakfast before lunch), understand and remember



his own accomplishments, and begin to understand increasingly complex concepts such as time, as in yesterday, today, and tomorrow. All of these are called "readiness skills," and the child should have them by the time he begins first grade (20 CFR 416.926a(g)(2)(iii) and SSR 09-3p).

Social Security regulation 20 CFR 416.926a(g)(3) and SSR 09-3p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in acquiring and using information are: (i) does not understand words about space, size, or time (e.g., in/under, big/little, morning/night); (ii) cannot rhyme words or the sounds in words; (iii) has difficulty recalling important things learned in school yesterday; (iv) does not use language appropriate for age; (v) is not developing "readiness skills" the same as peers (e.g., learning to count, reciting ABCs, scribbling); (vi) has difficulty comprehending written or oral directions; (vii) struggles with following simple instructions; (viii) has difficulty solving mathematics questions or computing arithmetic answers; or (ix) talks only in short, simple sentences, and has difficulty explaining what he means.

<u>The claimant has less than marked limitation in acquiring and using information.</u>

Academic achievement levels in February 2010 revealed that he was performing in the low average range in reading and he needed help identifying middle sounds. He was performing in the average range in math. He needed worked modeled for him, then he was able to do the work independently. He had difficulty writing without teacher prompts or brainstorming. He needed support to put ideas to paper and to spell correctly. His first grade reading teacher noted that during the second marking, he was making very nice progress. He recognized all of the letters of the alphabet, upper and lower case, with the exception of confusing lower case b and d. He was reading more fluently and with more expression. He needed continued practice with decoding longer words and words that contain silent letters. He was recognizing more high-frequency words at a faster rate, but he needed practice writing high-frequency words accurately (Exhibit 12E).

Dawn Grasso-Megyeri, M.S. CCC-SLP noted that both in and out of context, his speech intelligibility was considered very good at 95%. At the time of the evaluation on February 9, 2010, he was able to communicate effectively, and he used appropriate vocal quality, fluency, and articulation. Ms. Grasso-Megyeri stated that he appears to receive good benefit from his hearing aids and his expressive and receptive language skills are developing within normal limits. Diagnosis was mild articulation delay (Exhibit 6F). Furthermore, his first grade reading teacher noted he is making very good progress. He is reading more fluently and recognizing more high frequency words at a faster pace.

Based on the recommendations of Kathy Hyndman, BOCES, Teacher of Deaf/HH on March 17, 2011, he would receive an increase in working with the teacher of the Deaf/HH in receptive and expressive signing both in the classroom and 1:1 work outside the classroom. It appears that the claimant will likely make continued improvement with these increased services. Indeed, his first grade teacher noted that he is very responsive to a 1:1 situation and his spelling words, as well as





new vocabulary/concepts are reinforced with sign language. She stated that he would benefit from utilizing signing more to help with discrimination difficulties. She also noted that in December 2010, he achieved 100% on his list of review sight words from kindergarten (37/37 words). His first grade teacher noted that the first marking quarter, he received B+ in sound-letter relationship, B+ in decodable words, and B+ in high frequency words. It is also noteworthy that he showed improvement recently on the Bracken Basic Concept Scale-Revised testing. He also has a new digital behind his hearing aids and with the recommended streamlining services, he will be able to stay in the classroom more (Exhibit 12E).

On January 12, 2010, the Goldman Fristoe Test of Articulation-II was administered and he received a standard score of 91 in articulation, 21st percentile for males his age. He receives speech services individually twice a week and once a week in a small group. It was noted that his hearing disability affects his expressive language skills. He has difficulty with sentence structure, grammar, and vocabulary. On January 5, 2010, the Clinical Evaluation of Language Fundamentals-Preschool-2 was administered and he received a score of 65 in expressive language, 1st percentile (Exhibit 7E).

On January 8, 2010, his kindergarten teacher, Kirstin A. Scott, completed a Teacher Questionnaire in which she indicated that he has a slight problem in understanding school and content vocabulary; reading and comprehending written material; understanding and participating in class discussions; expressing ideas in written form; and recalling and applying previously learned material. He has an obvious problem in comprehending oral instructions. He has a FM system used to aid with hearing. He needs adult support at times to repeat directions and help him get started with work. His reading ability is in the low average range (Exhibit 5E).

On October 9, 2010, the claimant underwent speech/language reevaluation at Central School District Speech and Language Department by Alison Guerin, M.S., CCC-SLP, speech-language pathologist. Regarding his current performance, he is using his speech sound production skills 94% of the time in the therapy room, given verbal prompts and occasional visual cues. He has been working on improving his understanding and use of grammatical structures. Given models and repetition of new information, he has started making progress on the school. Ms. Guerin stated that that the results of the evaluation are judged to be a reliable estimate of his expressive and receptive language skills. He was administered the Peabody Picture Vocabulary Test-4 to evaluate his receptive language skills. He obtained a standard score of 76 in receptive language skills which is below the average range for his age. However, he was able to identify common nouns and verbs. He demonstrated the most difficulty identifying less common or more abstract nouns. The Expressive Vocabulary Test-2 was administered to determine his expressive language skills. He received a standard score of 89, 20 third percentile, which correlates with the low average range. The CELF-4 was also administered to provide a measure of his general language ability. The results of this test demonstrated significant difficulty following multi-step directions. His receptive language skills were considerably higher than his expressive language skills. This is an area of strength for him. It was noted that he is often on the right track, but needs models and prompts to clearly express his thoughts. When shown pictures/visual cues, he was able to easily identify the relationship between pictures. The Goldman Fristoe Test of Articulation-2 was administered and he obtained a standard score of 85, which was below average for his age and gender. However, she stated that the nature and frequency of his errors,



combined with his low speech volume, negatively impacted his speech intelligibility (Exhibit 12E).

On October 4, 2010, the Wechsler Preschool and Primary Scale of Intelligence-Third Edition (WPPSI-III was administered and the claimant's full-scale IQ fell within the upper end of the borderline range with a standard score of 78. However, Renee M. Kernan, M.S., Certified School Psychologist, stated that it is important to review his performance on each cognitive index, as it will provide more insight into the cognitive processes that influences academic achievement and behavioral functioning. He obtained a standard score of 97 in processing speed. Ms. Kernan stated that although his processing speed skills fell within the average range and are an area of relative strength, his crystallized knowledge and language-based reasoning skills as well as his reasoning skills are areas of weakness. His performance IQ fell within the low average range with a standard score of 82 indicating some difficulties related to nonverbal reasoning and drawing inferences. His verbal IQ fell within the borderline range with a standard score of 75 indicating significant difficulty with retrieving/using background knowledge to solve problems as well as difficulties in his ability to understand, retrieve, reason, and express himself through oral language. The Woodcock Johnson Tests of Achievement-Third Edition (J-III) was also administered to access his reading, math, and writing language skills. Academic testing revealed overall average range in broad reading, math, and written language skills. These skills fell significantly above expectations given his cognitive profile. He demonstrated a relative skill weakness, within the low average range on the passage comprehension subtest. He also displayed significant difficulty on fluency tests for reading and writing, despite having average processing speed abilities (Exhibit 12E).

### b.  Attending and Completing Tasks

This domain considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities. Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and his ability to prioritize competing tasks and manage his time (20 CFR 416.926a(h) and SSR 09-4p).

Social Security rules provide that a preschooler without an impairment should be able to pay attention when he is spoken to directly, sustain attention to his play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. The child should also be able to focus long enough to do many more things independently, such as gathering clothes and dressing, feeding, or putting away toys. The child should usually be able to wait his turn and to change his activity when a caregiver or teacher says it is time to do something else. The child should be able to play contentedly and independently without constant supervision (20 CFR 416.926a(h)(2)(iii) and SSR 09-4p).

Social Security regulation 20 CFR 416.926a(h)(3) and SSR 09-4p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in attending and completing





tasks are: (i) is easily startled, distracted, or over-reactive to everyday sounds, sights, movements, or touch; (ii) is slow to focus on, or fails to complete, activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; (v) requires extra supervision to remain engaged in an activity; or (vi) cannot plan, manage time, or organize self in order to complete assignments or chores.

<u>The claimant has less than marked limitation in attending and completing tasks.</u>

The claimant's kindergarten teacher completed a Teacher Questionnaire in which she indicated that he had no problem or a slight problem in this domain. He has a slight problem in refocusing to tasks when necessary; and carrying out multi-step instructions. He has no problem paying attention when spoken to directly; sustaining attention; focusing long enough to finish assigned activity; carrying out single-step instructions; waiting to take turns; changing from one activity to another without being disruptive; organizing his school materials; completing class/homework assignments; completing work accurately without careless mistakes; working without distracting self or others; and working at a reasonable pace/finishing on time (Exhibit 5E).

His first grade reading teacher noted that when he consistently wears his hearing aids, he is very engaged in the learning of the group. When aids are not present, he tends to be unfocused and silly and redirection and prompting is required more than usual. He has learned finger spelling strategies to assist with the decoding and sequencing of sounds in words. He is challenged by this because of his hearing needs. However, he has a good site work bank that he uses when he reads text at his level (Exhibit 12E).

At the time of the Psychoeducational re-evaluation on October 13, 2010, the claimant was a first grade student. During the re-evaluation, he required prompts to stay on tasks and to listen to directions. He presented with a high motor activity and distractibility level and his answering style was impulsive at times. During his conversation, he often jumped from subject to subject. He required repeated directions and examples to facilitate his problem solving. His task persistence level and frustration tolerances were impacted by his distractibility. However, in general, he put forth his best effort. It was noted that his scores should be reviewed cautiously, particularly his scores on language-based tests, as his impulsivity and/or language/auditory processing difficulties impaired his ability to answer language-based questions correctly (Exhibit 12E).

### c. Interacting and Relating with Others

This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. Interacting and relating with others relates to all aspects of social interaction at home, at school, and in the community. Because communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community (20 CFR 416.926a(i) and SSR 09-5p).

See Next Page


Social Security rules provide that a preschooler without an impairment should be able to socialize with children as well as adults. The child should begin to prefer playmates and start developing friendships with children who are his own age. The child should be able to use words instead of actions to express himself, and also be better able to share, show affection, and offer to help. The child should be able to understand and obey simple rules most of the time, and sometimes asks permission. The child should be able to relate to caregivers with increasing independence, choose his own friends, and play cooperatively with other children, one-at-a-time or in a group, without continual adult supervision. The child should be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and unfamiliar listeners can understand what he says most of the time (20 CFR 416.926a(i)(2)(iii) and SSR 09-5p).

Social Security regulation 20 CFR 416.926a(i)(3) and SSR 09-5p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty that children could have in interacting and relating with others are: (i) does not reach out to be picked up and held by caregiver; (ii) has no close friends, or all friends are older or younger than the child; (iii) avoids or withdraws from people he knows, or is overly anxious or fearful of meeting new people or trying new experiences; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others (e.g., in using verbal and nonverbal skills to express himself, in carrying on a conversation, or in asking others for assistance); or (vi) has difficulty speaking intelligibly or with adequate fluency.

<u>The claimant has no limitation in interacting and relating with others.</u>

The claimant's kindergarten teacher indicated in a Teacher Questionnaire that the claimant has no problems interacting and relating with others. He plays cooperatively with other children, makes and keeps friends, seeks attention appropriately, expresses anger appropriately, asks permission appropriately, follows classroom rules, respects and obeys adults in authority, uses adequate vocabulary and grammar to express his thoughts in everyday conversation, interprets meanings or facial expression and body language, and introduces and maintains relevant and appropriate topics of conversation (Exhibit 5E).

Psychoeducational re-evaluation on October 13, 2010 revealed that his social-health history was updated by Erika Grevelding, school social worker, and his mother. It was noted that he has adjusted well to the change in school and home. He gets along with peers and adults. He reported liking school. His personality is described as outgoing and happy and his favorite activities are riding his bike and scooter. Behavioral observations during the re-evaluation revealed that he engaged in spontaneous conversation using appropriate eye contact (Exhibit 12E).

Individualized Education Program 2010-2011 from Wood Road Elementary School revealed that he gets along well with his peers. He is pleasant and has a good sense of humor (Exhibit 7E).





His first grade reading teacher noted that he is respectful, kind, and hard-working. He is eager to please and consistently tries his best. He works well with other students, and he is an active participant in their group (Exhibit 12E).

### c. Moving About and Manipulating Objects

This domain considers how well a child is able to move his body from one place to another and how a child moves and manipulates objects. These activities may require gross motor skills, fine motor skills, or a combination of both. Limitations in this domain can be associated with musculoskeletal and neurological impairments, other physical impairments, medications or treatments, or mental impairments (20 CFR 416.926a(j) and SSR 09-6p).

Social Security rules provide that a preschooler without an impairment should be able to walk and run with ease. The child's gross motor skills should let him climb stairs and playground equipment with little supervision, and let him play more independently (e.g., swing by himself and ride a tricycle). The child's fine motor skills should also be developing. The child should be able to complete puzzles easily, string beads, and build with an assortment of blocks. The child should be showing increasing control of crayons, markers, and small pieces in board games, and should be able to cut with scissors independently and manipulate buttons and other fasteners (20 CFR 416.926a(j)(2)(iii) and SSR 09-6p).

Social Security regulation 20 CFR 416.926a(j)(3) and SSR 09-6p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in moving about and manipulating objects are: (i) difficulty with motor activities (e.g., stumbling, unintentionally dropping things) because of muscle weakness, joint stiffness, or sensory loss (e.g., spasticity, hypotonia, neuropathy, or paresthesia); (ii) difficulty with balance or climbing up and down stairs, or jerky or disorganized locomotion; (iii) difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike); (iv) difficulty with sequencing hand or finger movements (e.g., using utensils or manipulating buttons); (v) difficulty with fine motor movement (e.g., gripping or grasping objects); or (vi) poor eye-hand coordination when using a pencil or scissors.

<u>The claimant has no limitation in moving about and manipulating objects.</u>

The claimant's motor developmental milestones were reported to have been met within the normal limits with sitting between 3-6 months, standing at 10 months, and walking at one year of age.

On July 11, 2006, the Peabody Developmental Motor Scales-2 was administered and his fine and gross motor skills were average for a child of 20 months of age (Exhibit 10F). The Peabody Developmental Motor Scales-2 was administered on October 21, 2008 and he obtained a standard score of 94 in fine motor quotient, 35% (Exhibit 7E).

See Next Page



His kindergarten teacher noted no problem in this domain. She noted that he is able to stand, balance, shift weight, bend, kneel, crouch, walk, run, jump, and climb. He is able to move and manipulate things and demonstrates strength, coordination, and dexterity in activities. He is able to integrate sensory input with motor output, and plan, remember, and execute controlled motor movements (Exhibit 5E).

### d. Caring for Yourself

This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways. This includes how the child copes with stress and changes in the environment and how well the child takes care of his own health, possessions, and living area (20 CFR 416.926a(k) and SSR 09-7p).

Social Security rules provide that a preschooler without an impairment should want to take care of many of his own physical needs (e.g., putting on shoes, getting a snack), and also want to try doing some things that he cannot do fully (e.g., tying shoes, climbing on a chair to reach something up high, taking a bath). Early in this age range, it may be easy for the child to agree to do what his caregiver asks. Later, that may be difficult for the child because he wants to do things his way or not at all. These changes usually mean that the child is more confident about his ideas and what he is able to do (e.g., wants to use toilet, feed self independently). The child should also begin to understand how to control behaviors that are not good for himself (e.g., crossing the street without an adult) (20 CFR 416.926a(k)(2)(iii) and SSR 09-7p).

Social Security regulation 20 CFR 416.926a(k)(3) and SSR 09-7p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in caring for themselves are: (i) continues to place non-nutritive or inedible objects in the mouth (e.g., dirt, chalk); (ii) often uses self-soothing activities that are developmentally regressive (e.g., thumb-sucking or re-chewing food); (iii) does not feed, dress, toilet, or bathe self age-appropriately; (iv) engages in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take medication), or ignores safety rules; (v) does not spontaneously pursue enjoyable activities or interests (e.g., listening to music, reading a book); (vi) has restrictive or stereotyped mannerisms (e.g., head banging, body rocking); or (vii) has disturbances in eating or sleeping patterns.

<u>The claimant has less than marked limitation in the ability to care for himself.</u>

The Adaptive Behavior Assessment System-Second Edition (ABAS-II) was administered on October 13, 2010. This test assesses his ability to perform self-help skills and function independently within the school environment. His Global Adaptive standard score of 84, 14 .3 percentile rank, was below average. However, there were areas in which he demonstrated adequate skills, such as school living, health and safety, self-care, and social skills (Exhibit 12E).



See Next Page



His kindergarten teacher indicated in Teacher Questionnaire that the claimant has no problem caring for himself (Exhibit 5E). However, his mother testified that he wets the bed.

Dawn Grasso-Megyeri, M.S. CCC-SLP, noted that the test results on February 9, 2010 noted that within the area of pragmatic language, he presented with skills that would be considered appropriate for a child of his age. He was able to make his wants and needs known (Exhibit 6F).

### e.  Health and Physical Well-Being

This domain considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's health and functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. Unlike the other five domains of functional equivalence, which address a child's abilities, this domain does not address typical development and functioning. The "Health and Physical Well-Being" domain addresses how recurrent illness, the side effects of medication, and the need for ongoing treatment affect the child's health and sense of physical well-being (20 CFR 416.929a(l) and SSR 09-8p).

Social Security regulation 20 CFR 416.926a(l)(3) and SSR 09-8p set forth some examples of limited functioning in this domain that children of any age might have; however, the examples do not necessarily describe marked or extreme limitation in the domain. Some examples of difficulty children could have involving their health and physical well-being are: (i) generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of any impairment(s); (ii) somatic complaints related to an impairment (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches or insomnia); (iii) limitations in physical functioning because of need for frequent treatment or therapy (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); (iv) periodic exacerbations from an impairment(s) that interfere with physical functioning (e.g., pain crises from sickle cell anemia); or (v) medical fragility requiring intensive medical care to maintain level of health and physical well-being.

The claimant has less than marked limitation in health and physical well-being.

On February 23, 2010, the claimant underwent a consultative State agency examination. Audiogram showed speech recognition threshold of 45 bilaterally, with 84% speech discrimination in the right ear and 76% speech discrimination in the left ear. Dr. John Cevera's assessment was moderately severe symmetric loss. He noted that the claimant does get some improvement with amplification, which he should continue (Exhibit 7F).

On March 17, 2011, Kathy Hyndman, BOCES, Teach of Deaf/HH stated that the claimant has a new digital behind the ear hearing aids and he uses the Phonak Inspiro FM system in the school setting. She has recommended streamlining his services in and out of the classroom with more signing classes which would significantly improve his speech and language skills.

See Next Page



Accordingly, the claimant does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning.

5.    The claimant has not been disabled, as defined in the Social Security Act, since November 25, 2009, the date the application was filed (20 CFR 416.924(a)).

### DECISION

Based on the application for supplemental security income filed on November 25, 2009, the claimant is not disabled under section 1614(a)(3)(C) of the Social Security Act.


/s/ *Carl E Stephan*
_____
Carl E Stephan
Administrative Law Judge

April 25, 2011
_____
Date



# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1A | Disability Determination Transmittal | | 03/08/2010 | 1 |

## Jurisdictional Documents/Notices

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1B | T16 Notice of Disapproved Claim | | 03/08/2010 | 6 |
| HO 2B | Request for Hearing by ALJ | | 03/12/2010 | 1 |
| HO 3B | Request for Hearing Acknowledgement Letter | | 03/29/2010 | 10 |
| HO 4B | Personal Decision Notice | | | 1 |
| HO 5B | Hearing Notice | | 11/16/2010 | 9 |
| HO 6B | Acknowledge Notice of Hearing | | 11/21/2010 | 1 |
| HO 7B | Notice Of Hearing Reminder | | 01/11/2011 | 1 |
| HO 8B | Amended Notice of Hearing | | 01/31/2011 | 6 |
| HO 9B | Acknowledge Notice of Hearing | | 03/23/2011 | 1 |
| HO 10B | Appointment of Representative | | 03/28/2011 | 1 |

## Non-Disability Development

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1D | Application for Supplemental Security Income Benefits | | 12/10/2009 | 4 |
| HO 2D | Proof/Identity Document | | | 1 |
| HO 3D | DIBWIZ | | 10/20/2010 | 6 |

## Disability Related Development



| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1E | Function Report - Child Age 3 to 6 | | | to 12/10/2009 | 8 |
| HO 2E | Disability Report - Field Office | | | to 12/10/2009 | 4 |
| HO 3E | Work History Report | | | | 6 |
| HO 4E | Disability Report - Child | | | | 9 |
| HO 5E | Teacher Questionnaire | | Ballston Spa Central School | 01/08/2010 to 01/08/2010 | 12 |
| HO 6E | CE Appointment Reminder | | | | 1 |
| HO 7E | Education Records - Non Medical | | Wood Road Elementary School | to 03/18/2010 | 13 |
| HO 8E | Disability Report - Field Office | | | | 3 |
| HO 9E | Disability Report - Appeals | | | | 7 |
| HO 10E | Questionnaire for Children Claiming SSI Benefits | | | | 8 |
| HO 11E | Claimant Correspondence | | | 10/25/2010 to 10/25/2010 | 2 |
| HO 12E | Education Records - Non Medical | | BALLSTON SPA CSD | 10/04/2010 to 03/17/2011 | 48 |

## Medical Records

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1F | Medical Evidence of Record | | Bellevue Woman's Hospital | 10/30/2004 to 10/31/2004 | 3 |
| HO 2F | Medical Evidence of Record | | Saratoga Hospital | 12/26/2006 to 04/03/2009 | 9 |
| HO 3F | Medical Evidence of Record | | Sunnyview Hospital & Rehab Center | 08/07/2006 to 12/22/2009 | 3 |





| HO 4F | Medical Evidence of Record | | Malta Family Medicine | 01/06/2010 to 01/06/2010 | 5 |
|---|---|---|---|---|---|
| HO 5F | DDS Medical Evaluation Document | | | 01/21/2010 to 01/21/2010 | 2 |
| HO 6F | Consultative Examination Report | | Industrial Medicine Associates | 02/09/2010 to 02/09/2010 | 4 |
| HO 7F | Consultative Examination Report | | Capital Region Otolaryngology Group | 02/23/2010 to 02/23/2010 | 4 |
| HO 8F | DDS Medical Evaluation Document | | | to 03/08/2010 | 2 |
| HO 9F | Childhood Disability Evaluation Form | | | to 03/08/2010 | 6 |
| HO 10F | Attorney/Representative -Supplied Evidence | | Malta Family Medicine | 06/08/2005 to 03/29/2011 | 51 |
| HO 11F | DDS Disability Worksheet | | | 12/30/2009 to 03/08/2010 | 7 |
| HO 12F | Attorney/Representative -Supplied Evidence | Subsequent to hearing | Sunnyview Rehab Hospital | 08/07/2006 to 02/03/2011 | 8 |

SOCIAL SECURITY ADMINISTRATION

Refer to: TLC

-2899

Office of Disability Adjudication
and Review
5107 Leesburg Pike
Falls Church, VA 22041-3255
Telephone: (877) 670-2722
Date: April 3, 2012

## NOTICE OF APPEALS COUNCIL ACTION

Ballston Spa, NY 12020

This is about your request for review of the Administrative Law Judge's decision dated April 25, 2011.

### We Have Denied Your Request for Review

We found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review.

This means that the Administrative Law Judge's decision is the final decision of the Commissioner of Social Security in your case.

### Rules We Applied

We applied the laws, regulations and rulings in effect as of the date we took this action.

Under our rules, we will review your case for any of the following reasons:

- The Administrative Law Judge appears to have abused his or her discretion.

- There is an error of law.

- The decision is not supported by substantial evidence.

- There is a broad policy or procedural issue that may affect the public interest.

- We receive new and material evidence and the decision is contrary to the weight of all the evidence now in the record.

### What We Considered

In looking at your case, we considered the reasons you disagree with the decision in the material listed on the enclosed Order of Appeals Council.

Exhibit B

See Next Page


We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

## If You Disagree With Our Action

If you disagree with our action, you may ask for court review of the Administrative Law Judge's decision by filing a civil action.

If you do not ask for court review, the Administrative Law Judge's decision will be a final decision that can be changed only under special rules.

## How to File a Civil Action

You may file a civil action (ask for court review) by filing a complaint in the United States District Court for the judicial district in which you live. The complaint should name the Commissioner of Social Security as the defendant and should include the Social Security number(s) shown at the top of this letter.

You or your representative must deliver copies of your complaint and of the summons issued by the court to the U.S. Attorney for the judicial district where you file your complaint, as provided in rule 4(i) of the Federal Rules of Civil Procedure.

You or your representative must also send copies of the complaint and summons, by certified or registered mail, to the Social Security Administration's Office of the General Counsel that is responsible for the processing and handling of litigation in the particular judicial district in which the complaint is filed. The names, addresses, and jurisdictional responsibilities of these offices are published in the Federal Register (70 FR 73320, December 9, 2005), and are available on-line at the Social Security Administration's Internet site, http://policy.ssa.gov/poms.nsf/links/0203106020.

You or your representative must also send copies of the complaint and summons, by certified or registered mail, to the Attorney General of the United States, Washington, DC 20530.

## Time To File a Civil Action

- You have 60 days to file a civil action (ask for court review).

- The 60 days start the day after you receive this letter. We assume you received this letter 5 days after the date on it unless you show us that you did not receive it within the 5-day period.

- If you cannot file for court review within 60 days, you may ask the Appeals Council to extend your time to file. You must have a good reason for waiting more than 60 days to ask for court review. You must make the request in writing and give your reason(s) in the request.





You must mail your request for more time to the Appeals Council at the address shown at the top of this notice. Please put the Social Security number(s) also shown at the top of this notice on your request. We will send you a letter telling you whether your request for more time has been granted.

## About The Law

The right to court review for claims under Title II (Social Security) is provided for in Section 205(g) of the Social Security Act. This section is also Section 405(g) of Title 42 of the United States Code.

The right to court review for claims under Title XVI (Supplemental Security Income) is provided for in Section 1631(c)(3) of the Social Security Act. This section is also Section 1383(c) of Title 42 of the United States Code.

The rules on filing civil actions are Rules 4(c) and (i) in the Federal Rules of Civil Procedure.

## If You Have Any Questions

If you have any questions, you may call, write, or visit any Social Security office. If you do call or visit an office, please have this notice with you. The telephone number of the local office that serves your area is (866)964-1296. Its address is:

Social Security
One Broadway Center
8th Floor
Schenectady, NY 12305

/s/ *Penelope A. Garner*

Penelope A. Garner
Appeals Officer

Enclosure: Order of Appeals Council

cc: Mary Withington
    112 Spring Street
    Suite 109
    Saratoga Springs, NY 12866

Social Security Administration
OFFICE OF DISABILITY ADJUDICATION AND REVIEW

ORDER OF APPEALS COUNCIL

IN THE CASE OF

███████████
(Claimant)

_____
(Wage Earner)

CLAIM FOR

Supplemental Security Income

████-2899
(Social Security Number)

The Appeals Council has received additional evidence which it is making part of the record.
That evidence consists of the following exhibits:

Exhibit 13E     Brief submitted by Mary Withington Esq. dated
                December 16, 2011.

Date: April 3, 2012





LEGAL AID SOCIETY
RECEIVED
APR 1 0 2012
SARATOGA SPRINGS, NY



# SOCIAL SECURITY ADMINISTRATION

Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
12 Corporate Woods Blv
2nd Floor, Suite 200
Albany, NY 12211

Date: August 13, 2015

Trishauna L Walsh on behalf of
S███ J. █
███████████
Ballston Spa, NY 12020

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

### If You Disagree With My Decision

If you disagree with my decision, you or your representative may submit written exceptions to the Appeals Council. "Written exceptions" are your statements explaining why you disagree with my decision. Please put the Social Security number shown above on any written exceptions you send.

Please send your written exceptions to:

Appeals Council
Office of Disability Adjudication and Review
5107 Leesburg Pike
Falls Church, VA 22041-3255

If you need help, you may file in person at any Social Security or hearing office.

### Time Limit To File Written Exceptions (30 Days)

You must file your written exceptions with the Appeals Council **within 30 days** of the date you get this notice. The Appeals Council assumes that you got this notice within 5 days after the date of the notice unless you show that you did not get it within the 5-day period.

If you need more time to file your written exceptions, you must file a written request with the Appeals Council. You must file the request for an extension within 30 days of the date you get this notice. If you request more than 30 days, you must explain why you need the extra time. The Appeals Council will decide whether to grant your request for more than a 30-day extension.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline
at 1-800-269-0271 (TTY 1-866-501-2101).

See Next Page

Exhibit C





## How Written Exceptions Work

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. The Appeals Council's action may be more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 416 (Subpart N).

The Appeals Council may:

- Find that there is no reason to change my decision,
- Dismiss your case,
- Return your case to me or another administrative law judge for a new decision, or
- Issue its own decision.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council does not change my decision, my decision will become the final decision after remand. Any future claim you file will not change a final decision on this claim if the facts and issues are the same.

## The Appeals Council May Review My Decision On Its Own

The Appeals Council may review my decision even if you do not file written exceptions. The Appeals Council will notify you within 60 days of the date of this notice if it decides to review your case.

## Filing An Action In Federal District Court

If you do not file written exceptions and the Appeals Council does not review my decision on its own, my decision will become final on the 61st day following the date of this notice. After my decision becomes final, you will have 60 days to file a new civil action in Federal district court. You will lose the right to a court review if you do not file a civil action during the 60-day period starting with the day my decision becomes final. However, you can ask the Appeals Council to give you more time to file a civil action. The Appeals Council will grant your request for more time only if you can show a good reason for needing more time. We will not send you any more notices about your right to file in Federal district court.

## New Application

You have the right to file a new application at any time, but filing a new application is not the same as filing exceptions to my decision or filing a civil action in Federal court. If you disagree with my decision and you file a new application instead of filing written exceptions or appealing to Federal court, you might lose some benefits or not qualify for benefits at all. If you think my decision is wrong, you should file your exceptions within 30 days or file a new civil action between the 61st and 121st days after the date of this notice.



### If You Have Any Questions

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security. You may also call (800) 772-1213 with questions. If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office. Please have this notice and decision with you. The telephone number of the local office that serves your area is (866)964-1296. Its address is:

>Social Security
>One Broadway Center
>8th Floor
>Schenectady, NY 12305

>Carl E Stephan
>Administrative Law Judge

Enclosures:
Decision Rationale
Form HA-L39 (Exhibit List)

cc:    Mary Withington
       Legal Aid
       40 New Street
       Saratoga Springs, NY 12866



## DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
|  ██████ J. █████ | Supplemental Security Income |
| (Claimant) | |
| | ████-█████-2899 |
| (Wage Earner) | (Social Security Number) |

### JURISDICTION AND PROCEDURAL HISTORY

This case is before me on remand from the Appeals Council pursuant to a remand from the United States District Court for the Northern District of New York. The claimant appeared and testified at a hearing held on June 2, 2015, in Albany, NY. Trishauna Walsh, the claimant's mother, also appeared at the hearing. The claimant is represented by Mary Withington, an attorney.

Pursuant to the District Court remand order, the Appeals Council has directed the undersigned to consider the opinions of Dr. Merecki and Ms. Guerin in light of the treating source rule, reevaluate the credibility of the claimant's mother, and reevaluate whether the claimant's impairment medically equals section 102.10(B)(3) (Ex. 3A at 67-68).

The claimant is alleging disability since November 25, 2009.

### ISSUES

The issue is whether the claimant is disabled under section 1614(a)(3)(C) of the Social Security Act. An individual under the age of 18 will be considered disabled if he has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Notwithstanding the above, no individual under the age of 18 who engages in substantial gainful activity may be considered to be disabled.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), I have considered the complete medical history consistent with 20 CFR 416.912(d).

After careful consideration of all the evidence, I conclude the claimant has not been under a disability within the meaning of the Social Security Act since November 25, 2009, the date the application was filed.



## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled (20 CFR 416.924(a)).

At step one, I must determine whether the claimant is engaging in substantial gainful activity. Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in substantial gainful activity (20 CFR 416.974 and 416.975). If the claimant engages in SGA, he is not disabled regardless of his medical condition(s), age, education, or work experience (20 CFR 416.924(b)). If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.924(a)). For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations (20 CFR 416.924(c)). If the claimant does not have a severe medically determinable severe impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment(s), the analysis proceeds to the third step (20 CFR 416.924(a)).

At step three, I must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of a listing, or that functionally equals the listings. In making this determination, I must consider the combined effect of all medically determinable impairments, even those that are not severe (20 CFR 416.923, 416.924a(b)(4), and 416.926a(a) and (c)). If the claimant has an impairment or combination of impairments that meets or medically equals the severity of, or functionally equals, the listings, and it has lasted or is expected to last for a continuous period of at least 12 months, he is presumed to be disabled. If not, the claimant is not disabled (20 CFR 416.924(d)).

In determining whether an impairment or combination of impairments functionally equals the listings, I must assess the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. In making this assessment, I must compare how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments. To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain (20 CFR 416.926a(d)).

See Next Page


In assessing whether the claimant has "marked" or "extreme" limitations, I must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe (20 CFR 416.926a(a)). I must consider the interactive and cumulative effects of the claimant's impairment or multiple impairments in any affected domain (20 CFR 416.926a(c)).

Social Security regulation 20 CFR 416.926a(e)(2) explains that a child has a "marked limitation" in a domain when his impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. A child's day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. The regulations also explain that a "marked" limitation also means:

1. A limitation that is "more than moderate" but "less than extreme."

2. The equivalent of functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

3. A valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score.

4. For the domain of health and physical well-being, frequent episodes of illnesses because of the impairment(s) or frequent exacerbations of the impairment(s) that result in significant, documented symptoms or signs that occur: (a) on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more; (b) more often than 3 times in a year or once every 4 months, but not lasting for 2 weeks; or (c) less often than an average of 3 times a year or once every 4 months but lasting longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

Social Security regulation 20 CFR 416.926a(e)(3) explains that a child has an "extreme" limitation in a domain when his impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities. A child's day-to-day functioning may be very seriously limited when his impairment(s) limits only one activity or when the interactive and cumulative effects of his impairments(s) limit several activities. The regulations also explain that an "extreme" limitation also means:

1. A limitation that is "more than marked."

2. The equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean.

3. A valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that





domain, and his day-to-day functioning in domain-related activities is consistent with that score.

4. For the domain of health and physical well-being, episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

1. The claimant was born on ████████ 2004. Therefore, he was a preschooler on November 25, 2009, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since November 25, 2009, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bilateral moderately severe hearing loss and speech and language delays (20 CFR 416.924(c)).

Following a State agency consultative examination on February 23, 2010, John Cevera, M.D., determined that the claimant has moderately severe symmetric hearing loss based on his audiogram findings (Ex. 7F at 1). Dr. Cevera again evaluated the claimant on December 18, 2014, at which time he again concluded that the claimant has moderately severe sensorineural hearing loss, right worse than left (Ex. 13F at 2-3).

As for the claimant's speech and language delays, testing performed in 2010 by the State consultative examiner and the claimant's treating speech and language pathologist show that the claimant has delays in articulation. While tests performed by these two sources show varying level of delays in the claimant's expressive and receptive language, the record supports a conclusion that this impairment causes deficits in the claimant's age-appropriate functioning.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

Audiology testing performed pursuant to Dr. Cevera's evaluations does not show air conduction values or word recognition values that satisfy the requirements of listing 102.10 (Ex. 7F at 3; 13F at 4). I note that the most recent test shows 100 percent speech discrimination (Ex. 13F at 4). Test results from Sunnyview Hearing and Speech Center are also inconsistent with the type of findings required by the listing (Ex. 17F at 29-31, *for example*).

Likewise, the claimant's speech and language delays do not meet or medically equal the requirements of listing 102.10(B)(3), or any of the relevant listings. Following a February 2010 consultative examination, Dawn Grasso-Megyeri, M.S., CCC-SLP, concluded that the claimant

See Next Page





has a mild articulation delay, but his expressive language skills are developing within normal limits (Ex. 6F at 4). On October 9, 2010, Alison Guerin, M.S., CCC-SLP, the claimant's treating speech and language pathologist for that school year, administered a battery of tests as a part of a triennial evaluation. On a Peabody Picture Vocabulary Test, the claimant's score was greater than one standard deviation below the mean, but less than two standard deviations below the mean. The claimant's performance on an Expressive Vocabulary Test was within the average range. On a Clinical Evaluation of Language Fundamentals – 4 (CELF-4), the claimant obtained average or above average scores in "word classes," which measures his "ability to perceive relationships in the meaning of words and form word associations." The claimant demonstrated below average ability in expressive vocabulary, recalling sentences, and concepts and following directions (Ex. 12E at 11-12). Audiometry testing, however, does not show average air conduction values consistent with listing 102.10(B)(3). A hearing test administered in August 2013 by Erin Winderl, Au.D., the claimant's treating audiologist, showed mild to moderate sensorineural hearing loss in the left ear and mildly to moderately severe hearing loss on the right (Ex. 17F at 30). Therefore, I find that the claimant does not meet or medically equal the requirements of any relevant listing.

**5.   The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).**

Based on the requirements of 20 CFR 416.924a(a) and SSR 09-2p, I have considered all of the relevant evidence in the case record. "All of the relevant evidence" includes objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all settings (i.e., at home, at school, and in the community).

As provided in 20 CFR 416.926a(b) and (c) and explained in SSR 09-1p, I have evaluated the "whole child" in making findings regarding functional equivalence. I have first evaluated how the child functions in all settings and at all times, as compared to other children the same age who do not have impairments. I have also assessed the interactive and cumulative effects of all of the claimant's medically determinable impairment(s), including any impairments that are not "severe" in all of the affected domains. In evaluating the claimant's limitations, I have considered the type, extent, and frequency of help the claimant needs to function.

In determining the degree of limitation in each of the six functional equivalence domains, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929, SSRs 96-4p and 96-7p. I have considered the opinion evidence in accordance with 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and

laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

As discussed in the appropriate domain(s) below, I find that the claimant's mother's testimony regarding the claimant's limitations are generally credible, and is not consistent with "marked" or "extreme" deficits in age-appropriate functioning.

Regarding the opinion evidence, the record contains two medical source statements prepared by treating physician Eugene Merecki, M.D., the claimant's primary care provider. While deference is usually provided to opinions of treating sources under Social Security regulations, the medical evidence must support these opinions. After review of the record, I give significant weight to his January 6, 2010, statement as it was formed through a documented treatment relationship with the claimant and is generally supported by the record. I decline to provide this opinion great weight or controlling weight, however, as Dr. Merechi indicated that the claimant was "delayed" in several domains, but without explanation as to the nature or severity of those limitations (Ex. 4F).

As for Dr. Merecki's later medical source statement, prepared on March 25, 2010, I provide this great weight, as his conclusions in the domains of cognitive ability, attending and completing tasks, motor functioning, and personal care support a conclusion of no more than "less than marked" limitation in these domains, while clinical tests also support a conclusion of marked limitation in his ability to interact and relate with others. His opinion is not provided controlling weight, however, as the record does not support a conclusion that the claimant's hearing loss causes marked deficits in his health and physical well-being for the reasons described *infra*. As noted by the District Court, the claimant's representative did not appeal the previous finding of less than marked limitation in that domain as described in the prior decision (Ex. 3A at 30).

On January 8, 2010, Kristin Scott, the claimant's kindergarten teacher, prepared a questionnaire regarding his age-appropriate functioning (Ex. 5E). This document is also provided significant weight as it is based on Ms. Scott's interaction with the claimant in an educational environment. Specific medical and clinical tests, however, support a conclusion of greater limitation in some domains than estimated by Ms. Scott. Therefore, her opinion is not entitled to great weight.

I have also considered and give great weight to the Individualized Education Programs ("IEP") prepared by the Committee of Special Education of Ballston Spa Central School District. The claimant's IEPs are based on collaboration between multiple sources involved in the claimant's education and treatment, as well as his mother, and take into consideration results from clinical tests (Ex. 19E).

In the District Court remand, I have been instructed to determine whether Ms. Guerin is a "treating source" as contemplated by Social Security regulations. In her October 2010 Speech/Language Report, Ms. Guerin references multiple sessions with the claimant for speech therapy (Ex. 12E at 10). The claimant's 2010-2011 IEP shows a treatment summary from October 2010 from Ms. Guerin, which indicates that she treated the claimant during that school year three times per week, once in a group setting and twice individually (Id. at 18). Therefore, the "treating source rule" should be applied to the opinion of Ms. Guerin.

Likewise, I have applied the "treating source rule" to the opinion of Kimberly Moryl, CCC-SLP, the claimant's treating speech pathologist for the 2013-2014 school year, as set forth in an evaluation report dated October 1, 2013.

After consideration of the record, I give controlling weight to the opinions of Ms. Guerin and Ms. Moryl in terms of the claimant's speech and language delays as they were formed through their respective treatment relationships with the claimant and are based on a comprehensive battery of clinical tests, which confirm significant limitation in the claimant's ability to interact and relate with others.

The opinion of Renee Kernan, M.S., a school psychologist, who performed evaluations of the claimant in 2010 and 2013, is provided great weight as it is also based on clinical testing, which she considered valid, but noted that they should be interpreted with some caution given the claimant's needs.

The opinion of Ms. Grasso-Megyeri is provided little weight as other testing performed in 2010 and 2013 shows greater deficits in speech and language than she concluded based on her testing in February 2010.

I have also requested the opinion of medical expert Bernard Gussoff, M.D., regarding the claimant's deficits in age-appropriate functioning. The first questionnaire completed by Dr. Gussoff is provided no weight as he was incorrectly sent an adult disability evaluation, which has little probative value in determining the age-appropriate abilities of a grade school-aged child (Ex. 14F; 15F). To correct this error, a childhood disability evaluation form was submitted to Dr. Gussoff, which he prepared on June 20, 2015 (Ex. 19F). This is provided significant, but not great, weight as the record supports a conclusion that the claimant has no "marked" or "extreme" limitations in any domain, except that testing supports a conclusion that he has marked limitation for interacting and relating with others. Furthermore, Dr. Gussoff did not explain the rationale for his findings in the specific domains, and the record does not necessarily support the specific level of limitation concluded by Dr. Gussoff in each domain for the reasons discussed in detail below.

The opinion of Dr. Fuhrman, the State agency medical consultant, is also given significant weight as the record generally supports a finding of no limitation or less than marked limitation in all domains except for interacting and relating with others, but his specific findings are not entirely supported by the record for the reasons discussed below.


In terms of the six functional equivalence domains, I find the following regarding limitations caused by the claimant's impairments:

### a. Acquiring and Using Information

Acquiring and using information concerns how well a child is able to acquire or learn information, and how well a child uses the information he has learned. This domain involves how well children perceive, think about, remember, and use information in all settings, which include daily activities at home, at school, and in the community (20 CFR 416.926a(g) and SSR 09-3p).

Social Security rules provide that a preschooler (i.e., a child age 3 to attainment of age 6) without an impairment should begin to learn and use the skills that will help him to read and write and do arithmetic when he is older. For example, listening to stories, rhyming words, and matching letters are skills needed for learning to read. Counting, sorting shapes, and building with blocks are skills needed to learn math. Painting, coloring, copying shapes, and using scissors are some of the skills needed in learning to write. Using words to ask questions, give answers, follow directions, describe things, explain what he means, and tell stories allow the child to acquire and share knowledge and experience of the world around him. The child should be able to understand the order of daily routines (e.g., breakfast before lunch), understand and remember his own accomplishments, and begin to understand increasingly complex concepts such as time, as in yesterday, today, and tomorrow. All of these are called "readiness skills," and the child should have them by the time he begins first grade (20 CFR 416.926a(g)(2)(iii) and SSR 09-3p).

Social Security rules that a school-age child (i.e., a child age 6 to the attainment of age 12) without an impairment should be able to learn to read, write, and do math, and discuss history and science. The child will need to use these skills in academic situations to demonstrate what he has learned by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. The child will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). The child should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing his own ideas, and by understanding and responding to the opinions of others (20 CFR 416.926a(g)(2)(iv) and SSR 09-3p).

Social Security regulation 20 CFR 416.926a(g)(3) and SSR 09-3p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in acquiring and using information are: (i) does not understand words about space, size, or time (e.g., in/under, big/little, morning/night); (ii) cannot rhyme words or the sounds in words; (iii) has difficulty recalling important things learned in school yesterday; (iv) does not use language appropriate for age; (v) is not developing "readiness skills" the same as peers (e.g., learning to count, reciting ABCs, scribbling); (vi) has difficulty comprehending written or oral directions; (vii) struggles with

See Next Page

following simple instructions; (viii) has difficulty solving mathematics questions or computing arithmetic answers; or (ix) talks only in short, simple sentences, and has difficulty explaining what he means.

<u>The claimant has less than marked limitation in acquiring and using information</u>. The claimant's mother testified that the claimant's grades in school are "OK...for his condition," and that he receives accommodations including an FM system for hearing assistance, seating in the front of the classroom, reduced amounts of homework, and an aide to assist him in and out of the classroom. In his January 2010 medical source statement, Dr. Merechi indicated that the claimant's cognitive functioning is "age appropriate," and later assessed a "mild" limitation in March 2010 (Ex. 4F at 4; 10F at 2). Ms. Scott considered the claimant to have "an obvious problem" with comprehending oral instructions, noting that he has an FM system, needs adult support at times to repeat directions and help him get started with a word, and has low average reading ability. She otherwise considered the claimant's deficits in this domain to be, at most, "slight" (Ex. 5E at 2). Dr. Fuhrman opined that the clamant had less than marked limitation in acquiring and using information, based on low average reading skills and average written language and mathematic skills (Ex. 9F at 3). On October 13, 2010, the claimant underwent an annual Psychoeducational Reevaluation on behalf of the Committee on Special Education. As part of this evaluation, Ms. Kernan administered a Wechsler Preschool and Primary Scale of Intelligence-Third Edition (WPPSI-III), on which the claimant obtained a full scale IQ of 78, falling in the borderline range, with subtest scores ranging from 75 to 97 (Ex. 12E at 7). Ms. Kernan felt that the results of this test were ultimately valid "based on his hearing needs," but stated that his "scores should be reviewed cautiously, particularly his scores on language based tasks, as [the claimant's] impulsivity and/or language/auditory processing difficulties impaired his ability to answer language-based questions correctly" (Id. at 3). Later intelligence testing performed in September 2013 by Ms. Kernan reflects a full scale IQ of 82 with subtest scores ranging from 79 to 94. Ms. Kernan again stated that the claimant's results "should be reviewed cautiously given that it does not represent all of [the claimant's] strengths and needs." A Wechsler Individual Achievement Test – III (WAIT-III) showed average to below average functioning, but no results that were at least two standard deviations below the mean (Ex. 16F at 3-25). Based on the totality of the evidence, taking into consideration opinions from medical and educational sources, as well as clinical test results, I find that the claimant has less than marked limitation in this domain.

### b.  Attending and Completing Tasks

This domain considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities. Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and his ability to prioritize competing tasks and manage his time (20 CFR 416.926a(h) and SSR 09-4p).

Social Security rules provide that a preschooler without an impairment should be able to pay attention when he is spoken to directly, sustain attention to his play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. The child should also be able to focus long enough to do many more things independently, such as



gathering clothes and dressing, feeding, or putting away toys. The child should usually be able to wait his turn and to change his activity when a caregiver or teacher says it is time to do something else. The child should be able to play contentedly and independently without constant supervision (20 CFR 416.926a(h)(2)(iii) and SSR 09-4p).

Social Security rules provide that a school-age child without an impairment should be able to focus his attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in his work (beyond what would be expected in other children of the same age who do not have impairments). The child should be able to change activities or routines without distraction, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read by himself, and complete family chores. The child should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation (20 CFR 416.926a(h)(2)(iv) and SSR 09-4p).

Social Security regulation 20 CFR 416.926a(h)(3) and SSR 09-4p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in attending and completing tasks are: (i) is easily startled, distracted, or over-reactive to everyday sounds, sights, movements, or touch; (ii) is slow to focus on, or fails to complete, activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; (v) requires extra supervision to remain engaged in an activity; or (vi) cannot plan, manage time, or organize self in order to complete assignments or chores.

<u>The claimant has less than marked limitation in attending and completing tasks.</u> The claimant's mother testified at the hearing that the claimant is "pretty good" at paying attention and focusing on tasks. Ms. Scott generally considered the claimant to be functioning at an age-appropriate level in this domain, with the exception of "slight" problems with refocusing to task and carrying out multi-step instructions (Ex. 5E at 3). Similarly, Dr. Merechi stated that the claimant has no difficulty attending to and completing tasks (Ex. 10F at 2). The claimant's 2014-2015 IEP characterizes the claimant was a student who "works very hard in small group and [is] helpful to others. [...] [The claimant] enjoys math and works hard and careful in his computation. He successfully uses strategies while adding and subtracting single digit numbers" (Ex. 19E at 8). During her documented evaluation of the claimant, Ms. Geurin observed that the claimant needed, on occasion, to be redirected to tasks and has difficulty following multi-step instructions, but was "easily redirected" when necessary. She also described the claimant as "hardworking and very cooperative" (Ex. 12E at 13). Dr. Gussoff concluded that the claimant has less than marked limitation in this domain, which is consistent with the conclusion of Dr. Fuhrman (Ex. 9F at 3; 19F at 6). Based on the totality of the record, I find that the claimant has less than marked limitation in his ability to attend to and complete tasks at an age-appropriate level.



### c. Interacting and Relating with Others

This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. Interacting and relating with others relates to all aspects of social interaction at home, at school, and in the community. Because communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community (20 CFR 416.926a(i) and SSR 09-5p).

Social Security rules provide that a preschooler without an impairment should be able to socialize with children as well as adults. The child should begin to prefer playmates and start developing friendships with children who are his own age. The child should be able to use words instead of actions to express himself, and also be better able to share, show affection, and offer to help. The child should be able to understand and obey simple rules most of the time, and sometimes asks permission. The child should be able to relate to caregivers with increasing independence, choose his own friends, and play cooperatively with other children, one-at-a-time or in a group, without continual adult supervision. The child should be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and unfamiliar listeners can understand what he says most of the time (20 CFR 416.926a(i)(2)(iii) and SSR 09-5p).

Social Security rules provide that a school-age child without an impairment should be developing more lasting friendships with children who are of the same age. The child should begin to understand how to work in groups to create projects and solve problems. The child should have an increasing ability to understand another's point of view and to tolerate differences (e.g., playing with children from diverse backgrounds). The child should attach to adults other than parents (e.g., teachers or club leaders), and may want to please them to gain attention. The child should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand (20 CFR 416.926a(i)(2)(iv) and SSR 09-5p).

Social Security regulation 20 CFR 416.926a(i)(3) and SSR 09-5p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty that children could have in interacting and relating with others are: (i) does not reach out to be picked up and held by caregiver; (ii) has no close friends, or all friends are older or younger than the child; (iii) avoids or withdraws from people he knows, or is overly anxious or fearful of meeting new people or trying new experiences; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others (e.g., in using verbal and nonverbal skills to express himself, in carrying on a conversation, or in asking others for assistance); or (vi) has difficulty speaking intelligibly or with adequate fluency.

<u>The claimant has marked limitation in interacting and relating with others</u>. The claimant's mother testified that the claimant has friends, with whom he plays games, and often plays



outside. She also reported that his relationship with this siblings is "typical," but "a little more difficult" due to misunderstanding caused by the claimant's hearing deficits. As for his interaction with adults, the claimant's mother stated that he "gets along pretty well," but has some difficulty due to a communication barrier. She reported that the claimant used to be frustrated by this, but now will repeat himself until he is understood. From a standpoint of skills required to interact with others, Ms. Scott did not consider the claimant to have any deficits in this domain (Ex. 5E at 4). The claimant's 2014-2015 IEP is consistent with this conclusion, as it stated that the claimant does not have any social or emotional needs that should be addressed through special education, although they noted that the claimant demonstrated the ability to only have one close friend at a time, but he is "a social boy" and "has some friendships at school" (Ex. 19E at 9-10). Therefore, I find that the claimant has no significant difficulty interacting with others from a perspective of his social and emotional abilities.

The record also shows that the claimant's hearing improves significantly with amplification. A hearing evaluation administered by Dr. Cevera on February 23, 2010, showed speech discrimination of 84 and 76 percent on the right and left, respectively, with amplification (Ex. 7F at 3). Speech audiometry performed on November 23, 2010, showed 100 percent word recognition bilaterally (Ex. 12F at 7). Results of another audiometry test performed in December 2014 is consistent with the November 2010 test (Ex. 13F at 3). Testing results dated August 5, 2014, shows 100 percent word recognition on the right and 92 percent recognition on the left, while testing in April 2013 resulted in 88 percent recognition bilaterally (Ex. 17F at 30).

Ms. Grasso-Megyeri indicated that the claimant "appears to receive good benefit from his hearing aids," and that testing "indicated [the claimant] to have expressive and receptive language skills that are developing within normal limits." She also stated that the claimant's deficits in articulation "did not significantly impact his intelligibility" (Ex. 6F at 4). This opinion, however, is provided little weight as the more extensive testing performed by the claimant's treating speech pathologist, Ms. Geurin, establishes greater limitation in this domain, as does later testing of the claimant's functioning.

Testing results from Dr. Geurin show that the claimant had results in his CELF-4 that were two standard deviations below the mean, as well as below average articulation (Ex. 12E at 11-12). A later CELF-4, performed on October 1, 2013, showed that the claimant still had deficits approximately two standard deviations below the mean in expressive language and language structure index (Ex. 16F at 28).

Turning to the opinion evidence, Dr. Merechi stated that the claimant was delayed in his capacity for communication. and that he is "unable to speak clearly," has "temper tantrums out of frustration with not being able to hear (understand)" (Ex. 4F at 3-4). In his March 2010 statement, Dr. Merechi concluded that the claimant has marked social limitation secondary to "delay in communication due to profound hearing loss" (Ex. 10F at 2). Although the claimant's mother testified that the claimant no longer has tantrums when he is not understood and that his hearing aids do improve his ability, testing shows that the claimant still has significant delays. Therefore, I find that the claimant has marked deficits in this domain.



### d. Moving About and Manipulating Objects

This domain considers how well a child is able to move his body from one place to another and how a child moves and manipulates objects. These activities may require gross motor skills, fine motor skills, or a combination of both. Limitations in this domain can be associated with musculoskeletal and neurological impairments, other physical impairments, medications or treatments, or mental impairments (20 CFR 416.926a(j) and SSR 09-6p).

Social Security rules provide that a preschooler without an impairment should be able to walk and run with ease. The child's gross motor skills should let him climb stairs and playground equipment with little supervision, and let him play more independently (e.g., swing by himself and ride a tricycle). The child's fine motor skills should also be developing. The child should be able to complete puzzles easily, string beads, and build with an assortment of blocks. The child should be showing increasing control of crayons, markers, and small pieces in board games, and should be able to cut with scissors independently and manipulate buttons and other fasteners (20 CFR 416.926a(j)(2)(iii) and SSR 09-6p).

Social Security rules provide that a school-age child without an impairment should have gross motor skills that let him move at an efficient pace at school, home, and throughout the neighborhood. The child's increasing strength and coordination should expand his ability to enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching, and hitting balls in informal play or organized sports. The child's development of fine motor skills should enable him to do things like use many kitchen and household tools independently, use scissors, and to write with a pen or pencil (20 CFR 416.926a(j)(2)(iv) and SSR 09-6p).

Social Security regulation 20 CFR 416.926a(j)(3) and SSR 09-6p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in moving about and manipulating objects are: (i) difficulty with motor activities (e.g., stumbling, unintentionally dropping things) because of muscle weakness, joint stiffness, or sensory loss (e.g., spasticity, hypotonia, neuropathy, or paresthesia); (ii) difficulty with balance or climbing up and down stairs, or jerky or disorganized locomotion; (iii) difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike); (iv) difficulty with sequencing hand or finger movements (e.g., using utensils or manipulating buttons); (v) difficulty with fine motor movement (e.g., gripping or grasping objects); or (vi) poor eye-hand coordination when using a pencil or scissors.

<u>The claimant has no limitation in moving about and manipulating objects.</u> At the hearing, the claimant's mother testified that the claimant had only recently stopped receiving occupational therapy, but otherwise stated that he is able to ride a bicycle or skateboard and participate in physical activities. The claimant's 2010-2011 IEP indicates that he had "no physical or motor needs that should be addressed through special education, at this time" (Ex. 7E at 10). Ms. Scott reported that she has not observed any deficits in this domain (Ex. 5E at 5). The opinion of the



claimant's pediatrician is also consistent with no significant limitations in the claimant's fine or gross motor abilities (Ex. 4F at 3; 10F at 2). Dr. Fuhrman also considered the claimant to have no limitation in this domain (Ex. 9F at 4). While Dr. Gussoff estimated less than marked limitation in this area of functioning, he did not explain his rationale for this conclusion. After review of the record, I find that the claimant has no significant deficits in his ability to move about and manipulate objects in an age-appropriate manner.

### e. Caring for Yourself

This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways. This includes how the child copes with stress and changes in the environment and how well the child takes care of his own health, possessions, and living area (20 CFR 416.926a(k) and SSR 09-7p).

Social Security rules provide that a preschooler without an impairment should want to take care of many of his own physical needs (e.g., putting on shoes, getting a snack), and also want to try doing some things that he cannot do fully (e.g., tying shoes, climbing on a chair to reach something up high, taking a bath). Early in this age range, it may be easy for the child to agree to do what his caregiver asks. Later, that may be difficult for the child because he wants to do things his way or not at all. These changes usually mean that the child is more confident about his ideas and what he is able to do (e.g., wants to use toilet, feed self independently). The child should also begin to understand how to control behaviors that are not good for himself (e.g., crossing the street without an adult) (20 CFR 416.926a(k)(2)(iii) and SSR 09-7p).

Social Security rules provide that a school-age child without an impairment should be independent in most day-to-day activities (e.g., dressing and bathing), although he may still need to be reminded sometimes to do these routinely. The child should begin to recognize that he is competent in doing some activities but has difficulty doing others. The child should be able to identify those circumstances when he feels good about himself and when he feels bad. The child should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. The child should also begin to demonstrate consistent control over his behavior, and be able to avoid behaviors that are unsafe or otherwise not good for him. At this age, the child should begin imitating more of the behavior of adults he knows (20 CFR 416.926a(k)(2)(iv) and SSR 09-7p).

Social Security regulation 20 CFR 416.926a(k)(3) and SSR 09-7p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in caring for themselves are: (i) continues to place non-nutritive or inedible objects in the mouth (e.g., dirt, chalk); (ii) often uses self-soothing activities that are developmentally regressive (e.g., thumb-sucking or re-chewing food); (iii) does not feed, dress, toilet, or bathe self age-appropriately; (iv) engages in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take medication), or ignores safety rules; (v) does not spontaneously pursue enjoyable activities or



interests (e.g., listening to music, reading a book); (vi) has restrictive or stereotyped mannerisms (e.g., head banging, body rocking); or (vii) has disturbances in eating or sleeping patterns.

<u>The claimant has no limitation in the ability to care for himself</u>.  At the hearing, the claimant's mother testified that the claimant is able to dress himself, although he has difficulty matching his clothes due to color blindness.  Dr. Merechi opined that the claimant has no limitation in this domain (Ex. 10F at 2).  In her January 2010 teacher questionnaire, Ms. Scott stated that the claimant had "a slight problem" knowing when to ask for help, but otherwise had no problems in this area of functioning (Ex. 5E at 6).  Although Dr. Gussoff estimated less than marked limitation in this domain, he did not explain the evidence used in reaching this finding (Ex. 19F at 7).  Giving the most weight to the claimant's treating physician and teacher, I find that he has no significant deficits in his capacity to care for himself at an age-appropriate level.

### f.  Health and Physical Well-Being

This domain considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's health and functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects.  Unlike the other five domains of functional equivalence, which address a child's abilities, this domain does not address typical development and functioning.  The "Health and Physical Well-Being" domain addresses how recurrent illness, the side effects of medication, and the need for ongoing treatment affect the child's health and sense of physical well-being (20 CFR 416.929a(l) and SSR 09-8p).

Social Security regulation 20 CFR 416.926a(l)(3) and SSR 09-8p set forth some examples of limited functioning in this domain that children of any age might have; however, the examples do not necessarily describe marked or extreme limitation in the domain.  Some examples of difficulty children could have involving their health and physical well-being are: (i) generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of any impairment(s); (ii) somatic complaints related to an impairment (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches or insomnia); (iii) limitations in physical functioning because of need for frequent treatment or therapy (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); (iv) periodic exacerbations from an impairment(s) that interfere with physical functioning (e.g., pain crises from sickle cell anemia); or (v) medical fragility requiring intensive medical care to maintain level of health and physical well-being.

<u>The claimant has less than marked limitation in health and physical well-being</u>.  At the hearing, the claimant's mother testified that the claimant has some discomfort due to the moldings on his hearing aids, but they improve his hearing.  Treatment reports from the claimant's audiologist show that he has had good results since new molds were taken of his ears (Ex. 17F at 17).  Recent testing has shown 100 percent speech discrimination, with no scores lower than 88 percent since November 2010.  The record does not show that the claimant has any significant constitutional symptoms or other chronic symptoms related to his congenital hearing loss.  As noted above, the claimant's mother testified that he is able to play with his friends, ride bicycles




and skateboards, and is otherwise active, but does have a limitation against playing certain team sports due to his hearing loss. In this domain, the opinion of Dr. Merechi is provided little weight as the medical evidence does not show the type of chronic symptoms, need for ongoing treatment or therapy, or other criteria contemplated by this listing as outlined above. Medical records do not show that the claimant is taking any medication or receiving other treatment besides his hearing aids (Ex. 5E at 7, for example). Dr. Fuhrman opined that the claimant has less than marked limitation in this domain, while Dr. Gussoff estimated that he has no limitation (Ex. 9F at 4; 19F at 7). Therefore, I find that the claimant's hearing loss causes less than marked limitation in this domain.

Accordingly, the claimant does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning.

6.    The claimant has not been disabled, as defined in the Social Security Act, since November 25, 2009, the date the application was filed (20 CFR 416.924(a)).

## DECISION

Based on the application for supplemental security income filed on November 25, 2009, the claimant is not disabled under section 1614(a)(3)(C) of the Social Security Act.

/s/ *Carl E Stephan*

Carl E Stephan
Administrative Law Judge

August 13, 2015
Date

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1A | Disability Determination Transmittal | | 03/08/2010 | 1 |
| HO 2A | Summon and Complaint | | 08/24/2012 | 1 |
| HO 3A | Decision of U.S. District Court | | 03/25/2014 | 68 |
| HO 4A | AC Order | | 09/10/2014 | 3 |
| HO 5A | ALJ Hearing Decision | | 04/25/2011 | 22 |
| HO 6A | AC Denial | | 04/03/2012 | 6 |

## Jurisdictional Documents/Notices

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1B | T16 Notice of Disapproved Claim | | 03/08/2010 | 6 |
| HO 2B | Request for Hearing by ALJ | | 03/12/2010 | 1 |
| HO 3B | Request for Hearing Acknowledgement Letter | | 03/29/2010 | 10 |
| HO 4B | Personal Decision Notice | | | 1 |
| HO 5B | Hearing Notice | | 11/16/2010 | 9 |
| HO 6B | Acknowledge Notice of Hearing | | 11/21/2010 | 1 |
| HO 7B | Notice Of Hearing Reminder | | 01/11/2011 | 1 |
| HO 8B | Amended Notice of Hearing | | 01/31/2011 | 6 |
| HO 9B | Acknowledge Notice of Hearing | | 03/23/2011 | 1 |
| HO 10B | Appointment of Representative | | 03/28/2011 | 1 |
| HO 11B | Request for Hearing Acknowledgement Letter | | 09/11/2014 | 11 |
| HO 12B | Transcript of Oral Hearing | | 01/25/2011 | 9 |
| HO 13B | Transcript of Oral Hearing | | 03/30/2011 | 16 |

| HO 14B | Request for Review of Hearing Decision/Order | 06/08/2011 | 1 |
| HO 15B | AC Correspondence | 11/21/2011 | 5 |
| HO 16B | Hearing Notice | 04/17/2015 | 18 |
| HO 17B | Acknowledge Notice of Hearing | 04/21/2015 | 2 |
| HO 18B | Notice Of Hearing Reminder | 05/19/2015 | 6 |

## Non-Disability Development

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1D | Application for Supplemental Security Income Benefits | | 12/10/2009 | 4 |
| HO 2D | Proof/Identity Document | | | 1 |
| HO 3D | DIBWIZ | | 10/20/2010 | 6 |
| HO 4D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 10/29/2014 | 1 |
| HO 5D | Certified Earnings Records | | 10/29/2014 | 1 |
| HO 6D | Detailed Earnings Query | | 10/29/2014 | 1 |
| HO 7D | Summary Earnings Query | | 10/29/2014 | 1 |
| HO 8D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 05/23/2015 | 1 |

## Disability Related Development

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1E | Function Report - Child Age 3 to 6 | | | to 12/10/2009 | 8 |
| HO 2E | Disability Report - Field Office | | | to 12/10/2009 | 4 |
| HO 3E | Work History Report | | | | 6 |
| HO 4E | Disability Report - Child | | | | 9 |





| | | | | |
|---|---|---|---|---|
| HO 5E | Teacher Questionnaire | Ballston Spa Central School | 01/08/2010 to 01/08/2010 | 12 |
| HO 6E | CE Appointment Reminder | | | 1 |
| HO 7E | Education Records - Non Medical | Wood Road Elementary School | to 03/18/2010 | 13 |
| HO 8E | Disability Report - Field Office | | | 3 |
| HO 9E | Disability Report - Appeals | | | 7 |
| HO 10E | Questionnaire for Children Claiming SSI Benefits | | | 8 |
| HO 11E | Claimant Correspondence | | 10/25/2010 to 10/25/2010 | 2 |
| HO 12E | Education Records - Non Medical | BALLSTON SPA CSD | 10/04/2010 to 03/17/2011 | 48 |
| OAO 13E | Representative Correspondence | | 12/16/2011 to | 6 |
| HO 14E | Exhibit List-CD to Representative or Claimant Form # HA-L56 (03-200) | | to 10/29/2014 | 11 |
| HO 15E | Report of Contact | | to 02/04/2010 | 2 |
| HO 16E | DDS Disability Worksheet | | 11/20/2014 to 12/24/2014 | 2 |
| HO 17E | Exhibit List-CD to Representative or Claimant Form # HA-L56 (03-200) | | to 12/31/2014 | 3 |
| HO 18E | Outgoing ODAR Correspondence | | to 03/03/2015 | 3 |
| HO 19E | Education Records - Non Medical | Ballston Spa Central School District | 01/27/2012 to 06/04/2014 | 64 |


| | | | |
|---|---|---|---|
| HO 20E | Proffer Correspondence | | 3 |
| | | to 07/15/2015 | |
| HO 21E | Representative Brief | | 2 |
| | | to 07/24/2015 | |

## Medical Records

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1F | Medical Evidence of Record | | Bellevue Woman's Hospital | 10/30/2004 to 10/31/2004 | 3 |
| HO 2F | Medical Evidence of Record | | Saratoga Hospital | 12/26/2006 to 04/03/2009 | 9 |
| HO 3F | Medical Evidence of Record | | Sunnyview Hospital & Rehab Center | 08/07/2006 to 12/22/2009 | 3 |
| HO 4F | Medical Evidence of Record | | Malta Family Medicine | 01/06/2010 to 01/06/2010 | 5 |
| HO 5F | DDS Medical Evaluation Document | | | 01/21/2010 to 01/21/2010 | 2 |
| HO 6F | Consultative Examination Report | | Industrial Medicine Associates | 02/09/2010 to 02/09/2010 | 4 |
| HO 7F | Consultative Examination Report | | Capital Region Otolaryngology Group | 02/23/2010 to 02/23/2010 | 4 |
| HO 8F | DDS Medical Evaluation Document | | | to 03/08/2010 | 2 |
| HO 9F | Childhood Disability Evaluation Form | | | to 03/08/2010 | 6 |
| HO 10F | Attorney/Representative -Supplied Evidence | | Malta Family Medicine | 06/08/2005 to 03/29/2011 | 51 |
| HO 11F | DDS Disability Worksheet | | | 12/30/2009 to 03/08/2010 | 7 |



| HO 12F | Attorney/Representative -Supplied Evidence | Subsequent to hearing | Sunnyview Rehab Hospital | 08/07/2006 to 02/03/2011 | 8 |
| HO 13F | CE Audiology/Otolaryngology | | CAPITAL REG OTO HEAD & NECK GP | 12/18/2014 to 12/18/2014 | 4 |
| HO 14F | Request for Medical Interrogatory | | Bernard Gussoff MD | to 02/19/2015 | 12 |
| HO 15F | Response to Medical Interrogatory | | Bernard Gussoff MD | to 02/24/2015 | 10 |
| HO 16F | Education Records - Medical | | Ballston Spa Central School District | 08/25/2011 to 05/22/2014 | 69 |
| HO 17F | Office Treatment Records | | Sunnyview Hearing and Speech Center | 03/30/2012 to 04/02/2015 | 53 |
| HO 18F | Request for Medical Interrogatory | | Bernard Gussoff MD | to 06/17/2015 | 9 |
| HO 19F | Response to Medical Interrogatory | | Bernard Gussoff MD | to 06/20/2015 | 8 |
| HO 20F | Office Treatment Records | | Malta Family Medicine | 04/08/2012 to 01/27/2015 | 30 |



HA-L39 (03-2007)

SSA ODAR
12 Corporate Woods Blv
2nd Floor, Suite 200
Albany, NY 12211

#    000000634    I=000000   0813 IP CIT

632 3 AB 1.135



Mary Withington
Legal Aid
40 New Street
Saratoga Springs, NY 12866



LEGAL AID SOCIETY
RECEIVED
AUG 1 9 2015
SARATOGA SPRINGS, NY





SOCIAL SECURITY ADMINISTRATION

Office of Disability Adjudication
and Review
5107 Leesburg Pike
Falls Church, VA 22041-3255
Telephone: (877) 670-2722
Date: September 16, 2016



Mary Withington
Attorney at Law
40 New Street
Saratoga Springs, NY 12866

Dear Ms. Withington:

Re:    S█████ J. W████ v. Commissioner of Social Security
        U.S.D.C. for the Northern District of New York
        Civil Action Number 1:12-cv-00933

We have considered the reasons you disagree with the Administrative Law Judge's decision
dated August 13, 2015 and all of the issues in the case. We found no reason under our rules to
assume jurisdiction.

## Why We Are Taking This Action

The August 13, 2015 hearing decision complies with the remand order. This case was
remanded by the United States District Court for the Northern District of New York on
March 25, 2014 (Exhibit 3A). Upon remand, the Court instructed the Administrative Law
Judge to: 1) reconsider the opinions of Dr. Merecki and Ms. Guerin; 2) reconsider the
credibility of the claimant's mother; and 3) consider whether the claimant's impairment
equals Listing 102.10(B)(3) (Exhibit 3A, at pages 66-67). In the August 13, 2015 hearing
decision, the Administrative Law Judge properly considered the medical opinions (Decision,
at pages 6-8), properly considered the credibility of the claimant's mother (Decision, at pages
9-15) and properly considered whether the claimant equaled Listing 102.10(B)(3) (Decision,
at pages 4-5). As such, the issues for remand have been resolved.

You submitted written exceptions to the hearing decision that were dated September 17,
2015, which we exhibited at Exhibit 19B. We have considered these exceptions and find that
they do not raise any significant issues that warrant the Appeals Council to accept
jurisdiction. Specifically, the exceptions assert that the claimant meets or equals a Listing. As
noted above, we find this argument unpersuasive. Additionally, you argue that the weight
given to the medical opinions is in error. We find this argument without merit.

In sum, we have considered the reasons you disagree with the Administrative Law Judge's
decision dated August 13, 2015, and all of the issues in the case. We found no reason under
our rules to assume jurisdiction.



## What This Action Means

The Administrative Law Judge's decision is the final decision of the Commissioner of Social Security after remand by the court.

## If You Disagree With the Administrative Law Judge's Decision

The court order that sent this case back to the Commissioner ended the court's review of the earlier decision. If you want a Federal district court to review the Commissioner's final decision after remand by the court, you must file a new civil action.

If you do not ask for court review, the Commissioner's decision will be a final decision that can be changed only under special rules.

## How To File A Civil Action

You may file a civil action (ask for court review) by filing a complaint in the United States District Court for the judicial district in which you live. The complaint should name the Commissioner of Social Security as the defendant and should include the Social Security number(s) shown at the top of this letter.

You or the claimant must deliver copies of your complaint and of the summons issued by the court to the U.S. Attorney for the judicial district where you file your complaint, as provided in rule 4(i) of the Federal Rules of Civil Procedure.

You or the claimant must also send copies of the complaint and summons, by certified or registered mail, to the Social Security Administration's Office of the General Counsel that is responsible for the processing and handling of litigation in the particular judicial district in which the complaint is filed. The names, addresses, and jurisdictional responsibilities of these offices are published in the Federal Register (70 FR 73320, December 9, 2005), and are available on–line at the Social Security Administration's Internet site, http://policy.ssa.gov/poms.nsf/links/0203106020.

You or the claimant must also send copies of the complaint and summons, by certified or registered mail, to the Attorney General of the United States, Washington, DC 20530.

## Time To File A Civil Action

- You have 60 days to file a civil action (ask for court review).

- The 60 days start the day after you receive this letter. We assume you received this letter 5 days after the date on it unless you show us that you did not receive it within the 5-day period.

- If you cannot file for court review within 60 days, you may ask the Appeals Council to extend your time to file. You must have a good reason for waiting more than 60 days to


ask for court review. You must make the request in writing and give your reason(s) in the request.

You must mail your request for more time to the Appeals Council at the address shown at the top of this notice. Please put the Social Security number(s) also shown at the top of this notice on your request. We will send you a letter telling you whether your request for more time has been granted.

## About the Law

The right to court review for claims under Title II (Social Security) is provided for in Section 205(g) of the Social Security Act. This section is also Section 405(g) of Title 42 of the United States Code.

The right to court review for claims under Title XVI (Supplemental Security Income) is provided for in Section 1631(c)(3) of the Social Security Act. This section is also Section 1383(c) of Title 42 of the United States Code.

The rules on filing civil actions are Rules 4(c) and (i) in the Federal Rules of Civil Procedure.

## If You Have Any Questions

If you have any questions, you may call, write, or visit any Social Security office. If you do call or visit an office, please have this notice with you. The telephone number of the local office that serves your area is (866)964-1296. Its address is:

> Social Security
> One Broadway Center
> 8th Floor
> Schenectady, NY 12305

/s/ *Maurice A. Perry*
_____
Maurice A. Perry
Administrative Appeals Judge

cc:
Trishauna L Walsh for
S J. W
Ballston Spa, NY 12020

See Next Page



S____ J. V____
Claimant

_____

Wage Earner
_____

____2899
Social Security Number
_____

Social Security Number
_____

## AC EXHIBITS LIST

| EXHIBIT NO. | DESCRIPTION | NO. OF PAGES | COURT TRANSCRIPT PAGE NO. |
|---|---|---|---|
| Exhibit 19B | Exceptions to the Final Decision, dated September 17, 2015 (5 pages) | | |

Social Security Administration
OFFICE OF DISABILITY ADJUDICATION AND REVIEW

## ORDER OF APPEALS COUNCIL

| IN THE CASE OF | CLAIM FOR |
|---|---|
| S███ J. W███ | Supplemental Security Income |
| (Claimant) | |
| _____ | ███-██-2899 |
| (Wage Earner) | (Social Security Number) |

The Appeals Council has received additional evidence which it is making part of the record. That evidence consists of the following exhibit:

Exhibit 19B     Exceptions to the Final Decision, dated September 17, 2015 (5 pages)

Date: September 16, 2016

SOCIAL SECURITY ADMINISTRATION
OFFICE OF DISABILITY ADJUDICATION AND REVIEW
5107 LEESBURG PIKE
FALLS CHURCH VA 22041-3255

OFFICIAL BUSINESS



LEGAL AID SOCIETY
RECEIVED
SEP 3 0 2016
SARATOGA SPRINGS, NY